UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                           Plaintiff,

v.                                         Criminal Action No. 3:17-cr-37-DJH

CHEROSCO BREWER,                                              Defendant.

\* \* \* \* \*

## **MEMORANDUM OPINION AND ORDER**

Defendant Cherosco Brewer is charged with being a convicted felon in possession of a firearm; possessing marijuana and cocaine with intent to distribute them; and possessing a firearm in furtherance of a drug-trafficking crime. (Docket No. 1, PageID # 1-3) The charges arise out of two traffic stops by Louisville Metro Police Department officers on November 11 and 12, 2015. (D.N. 17, PageID # 38) Brewer has moved to suppress evidence seized by LMPD during those stops (D.N. 26) and statements made by him during the November 11 stop (D.N. 33). The latter motion is unopposed. (*See* D.N. 43, PageID # 162) The Court held a lengthy evidentiary hearing on the initial motion to suppress (*see* D.N. 42; D.N. 46; D.N. 49), and the parties submitted post-hearing briefs.[1] (D.N. 56; D.N. 57) In addition to his motions to suppress, Brewer has filed a motion to sever the felon-in-possession count or bifurcate the trial (D.N. 38) and a motion to sever Counts 2 and 3 (D.N. 39). For the reasons discussed below, the Court will deny the contested motion to suppress, grant the motion to bifurcate, and deny the motion to sever Counts 2 and 3.

---

[1] The parties were given ten days following the conclusion of the hearing within which to submit supplemental briefs. (*See* D.N. 49) Prior to the expiration of that deadline, Brewer moved for a seven-day extension (D.N. 55), and he filed his brief four days later (D.N. 57). Because the motion was filed prior to expiration of the original deadline and the requested extension is short, the Court will grant the motion for extension of time and deem Brewer's brief timely filed.

1

**I.**

On November 11, 2015, Brewer was pulled over by Detectives Holly Hogan and Tyler Holland of LMPD's Ninth Mobile Division. Hogan and Holland believed that the windows on Brewer's vehicle were excessively tinted; Hogan recalled that although the car passed under several streetlights, "[a]ll of the windows looked black," and no occupants were visible. (D.N. 43, PageID # 172; *see id.*, PageID # 171, 222) When asked to roll down his window, Brewer rolled it down only a small amount. (*Id.*, PageID # 222-23) Once the interior of the car was visible, the officers saw a towel covering the lights on the dashboard, which they construed as an attempt to further conceal the inside of the car. (*Id.*, PageID # 175, 223, 244) Holland perceived Brewer to be "nervous about something" because "a carotid artery in [Brewer's] neck was . . . pulsating pretty fast." (*Id.*, PageID # 223) Hogan thought that Brewer's passenger was also nervous. (*Id.*, PageID # 205) Other officers soon arrived on the scene, including Detective Anthony James and his canine partner, Diesel, a Belgian Malinois trained to detect illegal substances. While Hogan was checking the vehicle's registration, Diesel conducted a sniff around the outside of the vehicle and alerted at the front driver's-side door. (D.N. 43, PageID # 180-81; *see* Joint Ex. 1, Hogan bodycam recording at 7:40-9:16; Gov't Ex. 4, 11/11/15 James bodycam recording at 1:02) A subsequent sniff and search of the car's interior revealed marijuana packaged for sale and a handgun. (D.N. 43, PageID # 181)

The following night, Brewer was driving a different vehicle when he was pulled over by another Ninth Mobile Division officer, Detective Chad Stewart, again for excessive window tinting. (D.N. 47, PageID # 302-05) Stewart testified that although it was a "well-lit area," when Brewer passed him, he "couldn't tell how many people were in the car"; he "couldn't see anything." (*Id.*, PageID # 303) Stewart further testified that "[e]ven with [his] headlights shining into the vehicle, [he] couldn't see inside the vehicle, which let [him] know that the

window tint [was] excessively dark." (*Id.*) Detective James and Diesel were nearby and quickly joined Stewart at the scene; while Stewart was running the vehicle's tags and Brewer's warrant status, Diesel alerted on the exterior of the car. (D.N. 47, PageID # 307-08, 327-28; Gov't Ex. 4, 11/12/15 James bodycam recording at 2:31; Stewart bodycam recording at 4:10-4:55) Officers searched inside the car and found cocaine packaged for sale. (Gov't Ex. 4, Stewart bodycam recording at 5:59-8:00)

In connection with the November 11 stop, Brewer was charged with possessing a firearm as a convicted felon (Count 1), possessing marijuana with intent to distribute it (Count 2), and possessing a firearm in furtherance of a drug-trafficking crime (Count 3). (D.N. 1, PageID # 1-2) Count 4 of the Indictment arises out of the November 12 stop and alleges possession with intent to distribute cocaine. (*Id.*, PageID # 3) Brewer seeks to suppress any evidence seized during either stop. (D.N. 26) He also asks the Court to hold three separate trials in this matter: one for the felon-in-possession charge, one for the other two counts arising out of the November 11 stop, and one for the November 12 cocaine charge. (D.N. 38; D.N. 39) Brewer's arguments in support of these motions are largely unpersuasive.

## II.

**A.     Motions to Suppress**

The United States has conceded that statements made by Brewer during the November 11 stop should be suppressed. (D.N. 43, PageID # 162; *see* D.N. 33 (motion to suppress statements based on *Miranda* violation)) For purposes of Brewer's remaining motion, the pertinent questions are (1) whether there was reasonable suspicion for the November 11 and 12 stops and (2) whether the canine sniff impermissibly extended the November 11 stop. (*See* D.N. 26, PageID # 109; D.N. 57)

1. **Reasonable Suspicion**

Brewer contends that the LMPD officers lacked reasonable suspicion to stop him on either November 11 or November 12, 2015. The overall thrust of his argument is that excessive window tinting was not the true reason he was pulled over on those dates. (*See, e.g.*, D.N. 57, PageID # 417) But the reason behind the stops does not matter for Fourth Amendment purposes; it is well established that "[a] police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct." *United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006) (quoting *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2001)). In other words, "[t]he subjective intent of the officer making the stop is irrelevant in determining whether the stop violated the defendant's Fourth Amendment rights." *United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)). Brewer does not deny that his window tinting exceeded—or at minimum, appeared to exceed—legal limits, and as discussed below, the evidence confirms that the windows were extremely dark. Thus, to the extent he attacks the officers' credibility to establish that the stop was for a reason other than excessive window tinting, his argument is not well taken. (*See* D.N. 57, PageID # 415-17)

A police officer may lawfully stop a motorist based on reasonable suspicion of an ongoing crime. *Collazo*, 818 F.3d at 253 (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2016)). Reasonable suspicion of illegal window tinting may be provided by an officer's experience and observations.[2] *See United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008)

---

[2] Brewer complains that LMPD officers lack objective standards for measuring whether window tinting is excessive. (D.N. 57, PageID # 416, 420-21) In particular, he faults LMPD for failing to provide its officers with tint-measuring wands. (*Id.*, PageID # 416, 420) However, a "tint meter" is used to confirm a violation after a vehicle is stopped, not to establish reasonable suspicion for a stop. *See, e.g.*, *Shank*, 543 F.3d at 312 (while vehicle was stopped, one officer "was using a 'tint meter' to more specifically measure the vehicle's windows in support of the

(noting officers' "substantial prior experience enforcing this traffic regulation" and agreeing with district court that reasonable suspicion for stop existed "[d]ue to the officers' familiarity with window tinting and their estimate that the [defendant's] vehicle was tinted substantially darker than permitted by law"); *see also United States v. Moreno*, 43 F. App'x 760, 765 (6th Cir. 2002) (finding reasonable suspicion in light of "undisputed proof that the defendant's van's side windows were tinted to *some* optically discernible degree, which Officer Valentine had adjudged to appear violative of a controlling legal standard").

Detectives Hogan and Stewart testified that based on their experience, they believed Brewer's windows to be excessively tinted. (*See* D.N. 43, PageID # 173, 176; D.N. 47, PageID # 304-05) Specifically, both detectives testified that they recognize illegal tinting when the silhouettes of persons inside the vehicle are not visible, and that Brewer's windows were tinted to that extent. (*See* D.N. 43, PageID # 171-73, 195-96; D.N. 47, PageID # 302-05) The bodycam recordings confirm that each vehicle's windows were so dark that Brewer (and, on November 11, his passenger) could not be seen inside, even when headlights and streetlights were shining on the car. As the United States observes, "the videos also show the police officers approaching cautiously based on the inability to see who or what is inside the vehicle as they approach."[3] (D.N. 56, PageID # 408) Based on the officers' testimony and the video evidence, the Court finds that on both November 11 and November 12, 2015, the decision to stop Brewer was supported by reasonable suspicion that he was in violation of Kentucky's law prohibiting excessive window tinting. *See* Ky. Rev. Stat. § 189.110(9).

---

ticket [the other officer] was writing." Likewise, Detective Stewart's inability to determine a window's tinting percentage by sight is not significant. (*See* D.N. 47, PageID # 304; D.N. 57, PageID # 420-21 (challenging Stewart's credibility on ground that he could only tell tint percentages from looking at boxes when he worked in a tint shop))

[3] Holland testified that "the tint was so dark that [he] . . . stood at [his] door frame for a second" for safety reasons until Brewer rolled down his window. (D.N. 43, PageID # 222; *see id.*, PageID # 223-24)

### 2. Canine Sniff

Even if the stops were initially supported by reasonable suspicion, the officers must have reasonably suspected "more extensive criminal conduct" in order to lawfully detain Brewer beyond the time necessary to issue a citation for excessive window tinting. *Samuels*, 443 F. App'x at 159 (quoting *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002)). Thus, although "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop[] generally does not implicate legitimate privacy interests," *Illinois v. Caballes*, 543 U.S. 405, 409 (2005), a stop may not be extended for a canine sniff "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015).

Brewer maintains that the November 11 stop was impermissibly extended by Diesel's sniff because investigation of the window-tinting violation was complete once Detective Hogan made contact with Brewer's passenger. (D.N. 57, PageID # 418) Brewer misrepresents Hogan's testimony on this point, however. He quotes Hogan as stating, "It was of the window tint" in response to the question of whether her investigation of the window-tinting violation was complete at the time she began speaking to Brewer's passenger. (*Id.*, PageID # 418 (purportedly quoting D.N. 43, PageID # 196-97)) In fact, the exchange was as follows:

> Q. And at that point was your investigation of the window tint concluded?
>
> A. It was—of the window tinting*?*
>
> Q. Yes.
>
> A. *It was still ongoing.*

(D.N. 43, PageID # 197 (emphasis added))

Hogan ultimately agreed that she had "addressed" (i.e., confirmed) the window-tint issue "on contact." (*Id.*; *see id.*, PageID # 216-17) But a traffic stop typically—and properly—entails

6

tasks such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 135 S. Ct. at 1615 (citing *Delaware v. Prouse*, 440 U.S. 648, 658-60 (1979)). Several officers testified that such inquiries are a normal part of any LMPD traffic stop. (*See* D.N. 43, PageID # 226-27; D.N. 47, PageID # 277, 308-09) Hogan had not yet completed these tasks when she approached Brewer's passenger, and thus "the purpose of the initial stop had not ended," even if she had already confirmed the window-tint violation. *Samuels*, 443 F. App'x at 160. While Hogan was waiting to hear the results of the registration check and Holland was filling out a citation for excessive window tinting, Diesel indicated that there were drugs in the vehicle. (D.N. 43, PageID # 180-81, 227; *see* Joint Ex. 1, Hogan bodycam recording at 7:40-9:16; Gov't Ex. 4, 11/11/15 James bodycam recording at 1:02) The canine sniff thus did not extend the stop.[4] And because "[a]n alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle," *United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012), the subsequent search was likewise lawful.[5]

Finally, the Court rejects Brewer's argument that the Ninth Mobile Division operates as an unlawful "roaming roadblock"—a concept that, as far as the Court can tell, does not exist in Fourth Amendment jurisprudence—because a drug-sniffing dog is present for most traffic stops. (*See* D.N. 57, PageID # 421-22) Brewer cites a single case, *City of Indianapolis v. Edmond*, 531

---

[4] The Court notes that the officers would have had reasonable suspicion to extend the stop for a canine sniff in any event. Hogan and Holland viewed the towel over the vehicle's interior lights as an extreme attempt to conceal Brewer's identity; Brewer's failure to roll the window all the way down also led the officers to believe that he was hiding something illegal. (D.N. 43, PageID # 175-76, 203, 205, 223-24, 228) In addition, while not dispositive, the fact that Brewer seemed exceptionally nervous during the stop (*id.*, PageID # 205, 223-24) also supports a finding of reasonable suspicion. *See United States v. Pacheco*, 841 F.3d 384, 393 (6th Cir. 2016) (citing *Illinois v. Wardlaw*, 528 U.S. 119, 124 (2000); *United States v. Wilson*, 506 F.3d 488, 495-96 (6th Cir. 1995)). In short, there was reasonable suspicion for the canine sniff regardless of whether the window-tinting violation had already been resolved.

[5] Brewer does not challenge Diesel's training or reliability.

U.S. 32 (2000), in support of this argument. In *Edmond*, the Supreme Court held that police checkpoints whose "primary purpose . . . [was] ultimately indistinguishable from the general interest in crime control" violated the Fourth Amendment. *Id.* at 48. But the *Edmond* Court was concerned with stops conducted "in the absence of individualized suspicion of wrongdoing." *Id.* at 37. As explained above, the LMPD officers had reasonable suspicion to stop Brewer on November 11 and 12, 2015. *See supra* Part II.A.1. Moreover, Brewer's own argument recognizes that the Ninth Mobile Division's stops are not "suspicionless," *id.* at 47: he asserts that "[a]nyone traveling within the perimeter of the Ninth Mobile is subject to likely stops and searches *for any minor infraction*." (D.N. 57, PageID # 422 (emphasis added) (arguing that "failure to have a seatbelt with a visible shoulder strap, having insufficient illumination on [a] license plate, failing to signal a lane change or turn from an alley, and any other number of trivial violations of the numerous traffic regulations" could result in a stop)) Again, the officers' actual motivations for stopping Brewer are irrelevant, and the reasonable-suspicion standard applies to any "ongoing [traffic] violation, no matter how minor." *Gregory v. Burnett*, 577 F. App'x 512, 516 (6th Cir. 2014) (citing *United States v. Simpson*, 520 F.3d 531, 540-41 (6th Cir. 2008)); *see Whren*, 517 U.S. at 813; *Garrido*, 467 F.3d at 977, 979. Thus, the fact that the Ninth Mobile's overarching purpose is to reduce violent crime does not render its traffic stops unconstitutional.

**B.      Motion to Sever Felon-in-Possession Count**

Brewer argues that it would be "unduly prejudicial" for the jury to be made aware of his status as a convicted felon during trial of the other charges. (D.N. 38, PageID # 145) He therefore seeks a separate trial on Count 1 of the Indictment. In the alternative, he asks that the trial be bifurcated. (*Id.*) The United States opposes severance or bifurcation, arguing that either measure would be inefficient and unnecessary. (D.N. 41)

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Here, as in previous cases before this Court, separating the trial of the felon-in-possession count from that of the drug-trafficking charges "would be only a minor burden on the public. It would not take much time to present the evidence of the felon in possession count to the same jury after they reach a verdict on the other counts." *United States v. Robinson*, No. 3:15-CR-96-TBR, 2016 U.S. Dist. LEXIS 88637, at *4-*5 (W.D. Ky. July 8, 2016). Meanwhile, there is "real possible prejudice in the jury knowing that [Brewer] is a convicted felon." *Id.* at *5. The Court thus concludes that bifurcation is appropriate, and Brewer's motion will be granted insofar as it seeks a bifurcated trial. (*See* D.N. 38, PageID # 145)

C.  **Motion to Sever Counts 2 and 3**

Brewer also seeks to sever the drug and firearm charges arising out of the November 11 stop from the drug charge arising out of the November 12 stop. (D.N. 39) He argues that there are no facts alleged in the indictment connecting the November 11 offenses to the November 12 offense and that trying the counts together would result in a prejudicial "spillover effect." (*Id.*, PageID # 149; *see id.*, PageID # 148-50) The United States maintains that joinder was appropriate and that separate trials are unwarranted. (D.N. 41)

Pursuant to Federal Rule of Criminal Procedure 8(a),

> [t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). Thus, the test for joinder is not whether offenses are related or have overlapping facts, as Brewer suggests. (*See* D.N. 39, PageID # 148-49) Rather, "joinder of

offenses that are 'of the same or similar character' but unrelated . . . is explicitly permitted under Rule 8(a)." *United States v. Chavis*, 296 F.2d 450, 460-61 (6th Cir. 2002) (quoting Fed. R. Crim. P. 8(a)). Brewer's alleged offenses are unquestionably "of the same or similar character" and arguably "constitute parts of a common scheme or plan," namely a scheme or plan to sell drugs. *Cf. United States v. McClellan*, No. 93-4084, 1994 U.S. App. LEXIS 30790, at *8-*11 (6th Cir. 1994) (finding no misjoinder under Rule 8(a) where indictment charged drug-trafficking and firearm offenses arising out of three separate incidents over a period of one year in which police found drugs and firearms in defendant's car). Moreover, consolidation of the offenses for trial serves the interest of judicial efficiency, as even in a separate trial, the United States could offer evidence of similar incidents for any purpose permissible under Federal Rule of Evidence 404(b)(2) (e.g., to show Brewer's knowledge or intent). *Cf. United States v. Jacobs*, 244 F.3d 503, 507 (6th Cir. 2001). Any potential prejudice from trying the offenses together can be minimized by a limiting instruction. *See id.* In sum, severance under Rule 8 is not warranted.

Nor has Brewer shown that he is entitled to relief under Rule 14. (*See* D.N. 39, PageID # 149 ("If the Court decides that the Cou[n]ts are properly joined, then Mr. Brewer asks for a Rule 14 severance of the Counts.")) As discussed above, Rule 14 authorizes severance or "any other relief that justice requires" where "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Brewer cites *United States v. Soto*, 794 F.3d 635 (6th Cir. 2015), for the factors used to determine whether joinder is prejudicial, such as "whether spillover evidence would incite or arouse the jury to convict on the remaining counts, whether the evidence was intertwined, the similarities and differences between the evidence, the strength of the government's case, and the ability of the jury to separate the evidence." *Id.* at 656-57 (quoting *United States v. Dale*, 429 F. App'x 576, 579 (6th Cir. 2011)). The *Soto* panel also noted, however, that a defendant must

"offer more than conclusory statements to show that the joinder prejudiced his defense." *Id.* at 657 (citing *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006)). Here, Brewer merely asserts that he "will be prejudiced by a spillover effect" because "[t]he jury will believe that each of the drug counts makes the other count more likely to have occurred." (D.N. 39, PageID # 149) But "absent a showing of substantial prejudice, spillover of evidence from one [count] to another does not require severance." *Hang Le-Thy Tran*, 433 F.3d at 478 (alteration in original) (quoting *United States v. Johnson*, 763 F.2d 773, 777 (6th Cir. 1985)). Brewer's conclusory assertions do not establish that he would be substantially prejudiced by a consolidated trial.

### III.

For the reasons set forth above, it is hereby

**ORDERED** as follows:

(1) Brewer's motion to suppress evidence seized during the November 11, 2015 and November 12, 2015 traffic stops (D.N. 26) is **DENIED**.

(2) Brewer's unopposed motion to suppress statements made during the November 11 stop (D.N. 33) is **GRANTED**.

(3) Brewer's motion to sever the felon-in-possession count or for bifurcated trial (D.N. 38) is **GRANTED** to the extent it seeks a bifurcated trial. Count 1 of the Indictment, which charges possession of a firearm by a convicted felon, shall be tried before the same jury immediately following the return of a verdict on Counts 2-4.

(4) Brewer's motion to sever Counts 2 and 3 (D.N. 39) is **DENIED**.

(5) Brewer's motion for extension of time to file his post-hearing brief (D.N. 55) is **GRANTED**.

A pretrial conference will be set by subsequent order.

January 29, 2018

**David J. Hale, Judge**
**United States District Court**