IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Criminal Action No.: 3:17-cr-37-DJH |
| ) | |
| CHEROSCO BREWER, ) | |
| Defendant. ) | |

## **(AMENDED) MOTION TO RECONSIDER DENIAL OF DEFENDANT'S MOTION TO SUPPRESS**

*Electronically Filed*

The Defendant, Cherosco Brewer, by his attorney, David S. Mejia, moves, pursuant to Rule 12(b)(3)(C); *In re Saffady*, 524 F. 3d 799, 903 (6th Cir. 2008); *Mallory v Eyrich*, 922 F.2d 1273 (6th Cir. 1991); *Rodriguez v. Tenn Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) and *United States v. Jacobsen*, 466 U.S. 109, 124 (1984), for Reconsideration of its Memorandum Opinion & Order [D.N. 66], and, after reconsideration, for an Order granting Defendant's Motion to Suppress physical evidence consisting of a quantity of marijuana and a handgun seized by Louisville Police on November 11, 2015 in violation of his rights under the Fourth Amendment of the Constitution. Upon that Order, the Defendant requests that such evidence illegally seized be barred from introduction into evidence at his trial under the Exclusionary Rule. *Wong Sun v. United State of America*, 371 U.S. 471 (1963). In support, the following is said:

### INTRODUCTION

1. On January 29, 2018, this Court entered a Memorandum Opinion & Order [D.N. 66], granting the Defendant's unopposed Motion to Suppress Statements [D.N. 33], but denying

Defendant's Motion to Suppress Evidence [D.N. 26], seized during two traffic stops on November 11, 2015 and November 12, 2015. Thereafter, Defendant's duel trial counsel Mr. Kamenish and Barton withdrew on February 22, 2018, [D.N. 74]. Substitute Counsel Mr. Mejia filed his Appearance on May 17, 2018 [D.N. 84]. Following Substitute Counsel's review of the transcript of the suppression hearing, and the actual video recording of the November 11, 2015 stop, search and seizure (Joint Ex.1, Hogan recording; Govt Exh, 11/11/15 James recording), as well as this Court's Memorandum Opinion & Order, the defense has concluded that the present Motion is necessitated.

## WHEN RECONSIDERATION IS APPROPRIATE

2.    A district court has the power to reconsider "interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady,* 524 F.3d 799, 903 (6th Cir. 2008). While, in the interest of finality of a decision, motions such as this should be granted sparingly, *Rottmund v. Cont'l Assur., Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992), reconsideration should be granted where "the prior decision appears clearly to be legally or factually erroneous," *Mobley v. Warden London Corr. Inst.,* 2010 U.S. Dist. LEXIS 94960, 2010 WL 3586964, at *2 (S.D. Ohio Sept. 13, 2010). Typically, there are three justifications that warrant reconsideration: 1) an intervening change of controlling law; 2) new evidence available; or 3) a need to correct a clear error or prevent manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund,* 89 F. App'x 949, 959 (6th Cir. 2004).

3.    The Sixth Circuit has identified the factors this court should consider in deciding whether to grant a Motion to Reconsider Suppression; "First, the party seeking to reopen must provide a reasonable explanation for failing to present the evidence initially." *See United States v. Carter*, 374 F. 3d 399 (6th Cir. 2004); *United States v. Stennis*, 457 F. App'x 494, 502 (6th Cir.

2012). Then, timeliness of the Motion, character of the evidence, and the effect of granting the Motion should be considered. *Id.* By application of the foregoing to the present case, where Mr. Brewer's trial counsel, having substituted for previous counsel, was neither present nor participated in the Suppression Hearing, but following his entry into the case observes misinterpretation of facts and misapplication of law, such circumstances justify reconsideration of this court's decision in the interest of justice and fairness. It is urged that this Court should reconsider its previous ruling due to factual errors and misapplied authority.

    4.    In the present case, the principle argument of the Defense was: the traffic stop of November 11, 2015 was illegal because: (A) "Detectives Hogan and Holland did not have an articulable reasonable suspicion to stop Mr. Brewer" [D.N..57 #414 and #421]; (B) "…excessive window-tinting was not a reason why Mr. Brewer was stopped…" [D.N..57 #417]; (C) "the excessive window-tinting violation [was] concluded" before the K-9 alert [D.N..57 #418]; (D) "the conduct of the officers was an "an unlawful roaming road block" [D.N..57 #421-422]. The Defense did not concede that the initial stop was legal and thereafter illegally prolonged. *Rodriguez v. United States* 135 S. Ct. 1609, 1615 (2015). Abandonment of the reason for the traffic stop, delay in writing or issuing a citation and the utter lack of reasonable suspicion to justify that delay were not raised nor argued by previous counsel. To the extent that this Court addressed these facts, it is respectfully submitted that the record, the body camera video contradicts this Court's findings. This, compels reconsideration.

## PROLONGED DETENTION AND TRAFFIC STOPS

    5.    "The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver, even though the purpose of the stop is limited and the resulting detention quite brief." *Brendlin v. California*, 551 U.S. 249 at 255 (2007). When it comes to routine traffic stops, as here

for tinted windows, the Supreme Court has established a standard, and has made it "clear that a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably fringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (citing *United States v. Jacobsen*, 466 U.S. 109 124, (1984)). It is fundamental then, that "a seizure that is justified solely by the interest in issuing a [] ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete the mission." *Id*. Thus, according to this principle, if the officer or officers wish to prolong the stop they need reasonable suspicion of wrongdoing. *See e.g. United States v Perkins*, 348 F. 3d 965 (11th Cir. 2003) (holding that the officer lacked reasonable suspicion to continue detention of a motorist after the ticket had been issued); *Rodriguez* 135 S. Ct. at 1615 (2015) (holding that because a dog sniff is aimed at uncovering criminal wrongdoing, rather than determining whether a routine traffic ticket should be issued, it unreasonably prolonged the traffic stop).

6.  Furthermore, in *Rodriguez,* the Court rejected a time-based conception of reasonableness – i.e., a traffic stop that is *X* minutes is reasonable – in favor of a task-based conception, stating "[a]uthority for the seizure thus ends when *tasks tied to the traffic infraction are – or reasonably should have been – completed*." *Id.* (quoting *Caballes,* 533 U.S. at 407). (*emphasis added*). Therefore, a dog sniff can prolong a traffic stop even if it occurs prior to the issuance of a ticket. *Id.* (rejecting the argument that, so long as the dog sniff occurs before the ticket is issued, there is no reasonable delay).

7.  In this Court's Memorandum Opinion, *Rodriguez* and *Caballes* are cited, but -- the Defendant submits -- misapplied due to previous defense counsels' argument attacking the legality

4

of the instant traffic stop from its inception.[1] As a result, the Motion to Suppress was denied, but for the wrong reason

8. Furthermore, in reaching its decision, this Court relied on doubtful, inconsistent and video-impeached testimony. This Court found that Mr. Brewer's stop was not illegally prolonged because the normal tasks associated with a traffic stop, such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," were ongoing when the dog alerted on Brewer's vehicle. [D.N. 66, Page ID # 514] (Quoting *Deleware v. Prouse*, 440 U.S. 648, 658-60 (1979)). This Court noted, "[w]hile Hogan was waiting to hear the results of the registration check and Holland was filling out a Citation for excessive window tinting, Diesel (the K-9) indicated that there were drugs in the vehicle…. The canine sniff thus did not extend the stop." (*Id.*) Respectfully, the aforementioned finding is not supported by the police video. As of 11:02 Detective Hogan had not yet begun writing the Citation. Moreover, under the applicable standard whether or not these task are in progress is not the rule in determining if a canine sniff prolongs a traffic stop. See Rodriguez *v. United States*, 135 S. Ct. 1609, 1615 (2015).

### DETECTIVE HOLLAND WAS NOT FILLING OUT A TINTED WINDOW CITATION WHEN THE K-9 ALERTED ON DEFENDANT'S VEHICLE

9. This Court noted that "checking the driver's license, determining whether there are

---

[1] The thrust of counsels' theory was that the initial traffic stop of Mr. Brewer's car was illegal, lacked reasonable suspicion, and that the call to the K-9 Unit was not justified on any ground. Also, that the tint window investigation was completed *prior* to the dog sniff. In focusing on *that* argument, counsel failed to address, and thus this court failed to consider, the overarching proof that, following the stop for tinted windows, the officers engaged in inordinate delay, foot-dragging and virtually halted any normal effort toward issuing a ticket, or any other appropriate task-based step associated with the purpose for the initial stop. Inordinate delay of nearly nine minutes (Joint Ex.1, Hogan recording at 8:35; Gov't Exh 4, 11/11/15 James recording) occurred which permitted a K-9 Unit to arrive resulting in a full blown search following the K-9 alert.

outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," are typical tasks, associated with a traffic stop, and found that the dog, Diesel, alerted on the vehicle while Holland was filling out a citation. (D.N. 66, PageID # 513). However, the video evidence in this case clearly demonstrates that Detective Holland was not filling out the Citation before or while the K-9 alerted on Mr. Brewer's vehicle.

      10.      Detective Holland testified that he started writing the Citation soon after the Defendant was removed from the vehicle, but stopped when the dog alerted on the vehicle. [D.N. 43, PageID #264]. However, the video evidence clearly shows that Detective Holland did *not* begin writing the Citation until 11:05, two minutes *after* the dog alerted on the vehicle. (*See* Hogan recording at 11:02) At that moment, Detective Holland took out the Citation book, ripped out a blank Citation and began filling it out. Furthermore, this timeline is consistent with Detective Hogan's testimony:

> Q. [Defense Counsel] Now, you had stated that at one time, after Mr. Brewer's cuffed, after a gun and drugs are found, that Detective Holland starts to write out the Citation. Do you recall that part of your testimony?
>
> A. [Detective Hogan] Yes, Sir.
>
> Q. [Defense Counsel] And then, somewhere after that, you take over and do the rest of the Citation.
>
> A. [Detective Hogan] Yes, sir. [D.N. 43, PageID # 208-209; *Id.,* PageID # 183]

A CHECK FOR WARRANTS WAS NOT DONE
CONDUCTED BEFORE THE K-9 SNIFF

      11.      This Court found that checking for warrants is also a normal task associated with a traffic stop. However, at 10:00, over a minute after the dog had alerted on the vehicle, a conversation with Detective Hogan and another officer took place in which the other stated he has

*still* not run the driver and passenger's. (*See* Hogan video footage at 10:00) This was another task that was *not* yet stated nor completed, as the testimony indicated, at the time of the dog sniff.

## THE VEHICLE CHECK WAS ALSO DELAYED

12. Detective Hogan called in the vehicle information at 6:23. While the Defendant acknowledges that the K-9 alerted on the vehicle before Hogan received a call back, there is an inexplicable long delay of time in which no actions (toward completing the normal tasks) were taken.

13. At 3:43, Detective Hogan instructed Ms. Northington to stand at the back of the car. Detective Hogan then waited over 2 ½ minutes, before calling in the vehicle information. At this time, she was pursuing *no* aspect of the initial stop.[2]

14. In *United States v. Stepp,*, 680 F.3d 651 (6th Cir.), the Sixth Circuit Court found that, even though the officer was waiting to receive information about the vehicle when the dog alerted, the delays in the case ultimately amounted to an "unreasonable expansion of the initial stop." *Stepp,* 680 F.3d at 663-64 ("[t]hat the issue with the rental-care company was not resolved prior to the dog alert is not enough to establish that the officers were reasonably diligent in pursuing their investigation of the registration issue").

## SERGEANT ADAMS CALLED FOR A K-9 BEFORE ANY OTHER
## TYPICAL TASKS WERE PURSUED

15. In his testimony, Sergeant Adams *admits* he called for a K-9 before other officers checked for warrants, wrote a citation, or called in the vehicle information. [D.N. 43, PageID # 269]. Further, Sergeant Adams testified that he did help at all with the vehicle check, obtaining in

---

[2] Although Hogan was asked Northington about warrants during this time, in *Stepp,* 680 F.3d at 663, the Sixth Circuit found that that two minutes spent asking extraneous questions (unnecessary to complete the citation) prolonged the traffic stop beyond its original purpose.

information on the suspects, or with the citation. [D.N. 43, PageID # 277] Instead, he testified that he called the K-9, almost immediately, and then abandoned the window-tint matter entirely. [*Id;* D.N. 43, PageID # 269]

16. In *Commonwealth v. Smith,* 542 S.W.3d 276 (Ky. 2018), the Kentucky Supreme Court found that a canine sniff had "obviously" prolonged the defendant's detention beyond what was reasonably necessary for the purpose of the traffic stop because, although the alert came only a matter of *minutes* after the officer pulled over the suspect, the officer conducted the sniff *instead* of conducting the usual procedures incidental to a routine traffic stop. *Id.* at 282. Using a similar analysis, the Sixth Circuit has held that a K-9 sniff did *not* extended the scope of the initial stop because the officers called a K-9 unit *while waiting for the results of a license check. United STtes v. Stepp,* 630 F.3d 651 at 663 (citing *United States v. Bell,* 555 F.3d 535, 541 (6th Cir. 2012)). Here, Sergeant Adams did not conduct the usual procedures incidental to a routine traffic stop for a tinted window. Further, he did not pursue or assist with any task associated with this traffic stop.

### THESE DELAYS PROLONGED THE SEARCH RENDERING IT ILLEGAL

17. The Supreme Court has held that in determining the reasonable duration of a stop, "'it [is] appropriate to examine whether the police diligently pursued [the] investigation.'" *See United States v. Sharpe*, 470 U.S. 675, 686 (1985). In this case, the video footage and record shows that the officers did not diligently pursue the window tint investigation. There were three officers present when the stop was initiated; within minutes, there was a total of seven officers present at the scene. Nevertheless, Mr. Brewer's and his passenger's names were not called in until *after* the K-9 arrived, the vehicle call was not made until over 8 minutes[3] into the traffic stop,

---

[3] The call on the vehicle was made at 6:43, and according to Detective Hogan, the video footage began about 1- 1 ½ minutes after the initial stop.

8

and the Citation was not begun until *after* the dog alert. The only task completed diligently was the call to canine, made my Sergeant Adams. Unquestionably, these officers did not pursue the window-tint investigation, thus clearly violating the Defendant's protection against unreasonable search and seizure.

### SUSPICION WAS NOT THE CAUSE OF THE DELAY

18. In footnote 4, this Court found that, even if the initial stop had been prolonged, the officers had "reasonable suspicion to extend the stop," based on the following three factors: 1) The officers viewed a towel over the vehicles interior light as an extreme attempt to conceal Brewer's identity; 2) Brewer failed to roll the window all the way down, which led officers to believe he was hiding something illegal; 3) Brewer's car seemed exceptionally nervous during the stop. [D.N. 66, PageID # 514 n.4]

19. However, in its written response in Objection to Defendant's Motion to Suppress Evidence, the government did not assert that this stop was prolonged due to "suspicious behavior." To the contrary, the government urged that the probable cause to extend the stop was due to a properly trained K-9 alert on the exterior of a vehicle. [D.N. 56, PageID # 409] Further, the government argued, "upon the initial canine alert to the vehicle's exterior, the nature of the investigation changed from one concerning traffic violation to an investigation- now with probable cause- of suspect narcotic activity." [*Id.,* PageID # 410-11] Therefore, according to the government, the probable cause did not exist until *after* the canine alert.

20. Significantly, the testimony of Sergeant Adams clearly indicated that the calling of a K-9 was not for any particular reason, but rather, the K-9 unit is called or shows up to almost every "normal" stop. [D.N. 47, PageID # 269-270].

## K-9 WAS CALLED BEFORE ANY CLAIMED "SUSPICIOUS" BEHAVIOR

21. Even *had* the government argued that the K-9 was summoned due to "suspicious behavior," the call for the K-9 occurred before any claimed or imagined behavior was observed. Sergeant Adams called for the K-9 immediately, before Detective Holland or Hogan had gotten the two vehicle occupants out of the vehicle, stating "[w]hen the traffic stop was conducted, I believe I got on the radio and asked if the K-9 unit was available or if he was coming this way." [D.N. 47, PageID # 269] He further testified that there was nothing unusual about this traffic stop, stating "—it was just a normal traffic stop that we normally conduct as far as our specific duties." [*Id.,* PageID # 269-70]

22. In *United States v. Blair,* 524 F.3d 740 (2008), the Sixth Circuit reversed a district court's denial of the defendant's Motion to Suppress-- vacating his conviction in a firearm prosecution-- finding that even if the officer had probable cause to prolong a stop, because the officer did not know of the probable cause until *after* the stop was prolonged, it "could not serve as a basis for the prolonged detention." *Id.* at 752 (holding that because there was not reasonable articulable suspicion of criminal activity *when the dog was called,* that the remainder of the stop violated the *Fourth Amendment*). In *United States v. Beauchamp,* 659 F.2d 560 (6th Cir. 2011), the Sixth Circuit held that that reasonable suspicion could not be justified by facts discovered *after* the initial act.

23. Here, the K-9 unit was called before any "suspicion" existed. In his testimony, Sergeant Adams stated that whenever there is a stop, the dog is coming to the stop. [D.N. 47, PageID # 269] The dog was not called as a result of suspicion, but as normal protocol in a traffic stop in the Louisville Ninth Division [high crime] Mobile Unit. Thus, no officers indicated the K-9 was called due to "suspicious behavior." In sum, this is not a case where a K-9 was employed

due to a reasonable suspicion.

## THE BEHAVIOR OF BREWER AND NORTHINGTON WAS NOT SUSPICIOUS

23. Finally, even if the dog *had* been called after the claimed "suspicious" behavior was observed, it is unlikely that the facts in this case were sufficient to justify prolonging the stop.

24. Although this Court cited *United States v. Pacheco* to support its conclusion, there were multiple factors in *Pacheco* that are not present here: in *Pacheco* the officers had received a tip that two men, matching the same description of the driver and passenger (and driving the same car), were trafficking narcotics, the suspect avoided eye contact with the officer, avoided conversation with the officer, disregarded the officer's commands to exit the vehicle, shuffled through a glove box but retrieved nothing, looked under his seat, would not reveal his identity to the officer and was extremely nervous. Due to these factors, the court found that a *Terry* search was appropriate.

25. Here, Detective Hogan and Holland testified that Mr. Brewer and Ms. Northington were acting nervous and suspicious during the stop. The video footage however belies that claim: both Mr. Brewer and Ms. Northington remained clam, respectful, cooperative and even docile during the entire incident, and at no point during the stop do any officers articulate "nervous" behavior.

26. Finally, under Kentucky and 6th Circuit case law, it is unlikely that a towel over a dash and the windows not rolled down completely is sufficient to prolong a search. *See United States v. Johnson* 482 Fed. Appx. 137 (6th Cir. 2012) (Finding that extreme nervousness, "taking a vacation" without luggage, prior felony convictions, an industrial strength degreaser thought to wipe fingerprints from a gun and inconsistencies between rental agreement and suspects claimed

11

travel plans were not reasonably suspicious enough to prolong the stop); *United States v. Townsend,* 305 F.3d 537 (6th Cir. 2002) (Finding that nervous behavior, dubious travel plans, multiple cellular phones, a bible (known to deflect suspicion of drug activity), rolls of currency, previous weapon arrests, clutter of food and clothing, and repeatedly glancing back at patrol car were not reasonable suspicion to prolong a stop); *Moberly v. Commonwealth,* No. SC-000429-DG, LEXIS 184 (Ky. 2018) (Holding that nervousness, sweat on brow, blowing cigarette smoke in car's interior and looking around and over shoulder were not reasonably suspicious enough to prolong the stop).

## CONCLUSION

WHEREFORE, upon the foregoing evidence, argument and authority, it is respectfully requested that this Court conduct a rehearing, to the extent necessary, to determine whether reconsideration is appropriate and whether an Order shall issue suppressing all evidence illegally seized by Louisville Police officers on November 11, 2015.

Respectfully submitted,

/s/ David S. Mejia
David S. Mejia
Attorney at Law
*Attorney for Cheroso Brewer*
624 West Main Street, Fourth Floor
Louisville, KY 40202
(502) 584-8991
david@dmejialaw.com

**CERTIFICATE OF FILING**

It is hereby certified that the foregoing Motion to Reconsider Denial of Defendant's Motion to Suppress was electronically filed with the Court on July 25, 2018; and served upon all counsel of record by ECF electronic filing system.

/s/ David S. Mejia
David S. Mejia
Attorney at Law
*Attorney for Cheroso Brewer*
624 West Main Street, Fourth Floor
Louisville, KY  40202
(502) 584-8991
david@dmejialaw.com