UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,     Plaintiff,

v.     Criminal Action No. 3:17-cr-37-DJH

CHEROSCO BREWER,     Defendant.

\* \* \* \* \*

### ORDER

Defendant Cherosco Brewer has filed a motion to reconsider the Court's prior suppression ruling and a motion to dismiss the indictment. (Docket Nos. 93, 94)[1] Brewer, who is charged with various firearm and drug-trafficking offenses, argues that the indictment in this matter is the result of selective and vindictive prosecution and that marijuana and a handgun seized during a November 11, 2015 traffic stop should be excluded from evidence. For the reasons discussed below, both motions will be denied.

### I.

The Court previously summarized the facts of this case as follows:

> On November 11, 2015, Brewer was pulled over by Detectives Holly Hogan and Tyler Holland of [Louisville Metro Police Department]'s Ninth Mobile Division. Hogan and Holland believed that the windows on Brewer's vehicle were excessively tinted; Hogan recalled that although the car passed under several streetlights, "[a]ll of the windows looked black," and no occupants were visible. (D.N. 43, PageID # 172; *see id.*, PageID # 171, 222) When asked to roll down his window, Brewer rolled it down only a small amount. (*Id.*, PageID # 222-23) Once the interior of the car was visible, the officers saw a towel covering the lights on the dashboard, which they construed as an attempt to further conceal the inside of the car. (*Id.*, PageID # 175, 223, 244) Holland perceived Brewer to be "nervous about something" because "a carotid artery in [Brewer's] neck was . . . pulsating pretty fast." (*Id.*, PageID # 223) Hogan thought that Brewer's passenger was also nervous. (*Id.*, PageID # 205) Other officers soon arrived on

---

[1] Brewer filed an amended motion to reconsider after his initial motion was deemed deficient by the Clerk of Court. (*See* D.N. 91; D.N. 92; D.N. 93) The initial motion will be denied as moot.

the scene, including Detective Anthony James and his canine partner, Diesel, a Belgian Malinois trained to detect illegal substances. While Hogan was checking the vehicle's registration, Diesel conducted a sniff around the outside of the vehicle and alerted at the front driver's-side door. (D.N. 43, PageID # 180-81; *see* Joint Ex. 1, Hogan bodycam recording at 7:40-9:16; Gov't Ex. 4, 11/11/15 James bodycam recording at 1:02) A subsequent sniff and search of the car's interior revealed marijuana packaged for sale and a handgun. (D.N. 43, PageID # 181)

      The following night, Brewer was driving a different vehicle when he was pulled over by another Ninth Mobile Division officer, Detective Chad Stewart, again for excessive window tinting. (D.N. 47, PageID # 302-05) Stewart testified that although it was a "well-lit area," when Brewer passed him, he "couldn't tell how many people were in the car"; he "couldn't see anything." (*Id.*, PageID # 303) Stewart further testified that "[e]ven with [his] headlights shining into the vehicle, [he] couldn't see inside the vehicle, which let [him] know that the window tint [was] excessively dark." (*Id.*) Detective James and Diesel were nearby and quickly joined Stewart at the scene; while Stewart was running the vehicle's tags and Brewer's warrant status, Diesel alerted on the exterior of the car. (D.N. 47, PageID # 307-08, 327-28; Gov't Ex. 4, 11/12/15 James bodycam recording at 2:31; Stewart bodycam recording at 4:10-4:55) Officers searched inside the car and found cocaine packaged for sale. (Gov't Ex. 4, Stewart bodycam recording at 5:59-8:00)

      In connection with the November 11 stop, Brewer was charged with possessing a firearm as a convicted felon (Count 1), possessing marijuana with intent to distribute it (Count 2), and possessing a firearm in furtherance of a drug-trafficking crime (Count 3). (D.N. 1, PageID # 1-2) Count 4 of the Indictment arises out of the November 12 stop and alleges possession with intent to distribute cocaine. (*Id.*, PageID # 3)

(D.N. 66, PageID # 509-10) In its January 29, 2018 Memorandum Opinion and Order, the Court denied Brewer's motion to suppress evidence seized during the November 11 and 12 traffic stops, rejecting Brewer's arguments that the officers lacked reasonable suspicion to stop him and that the November 11 stop was impermissibly extended by the canine sniff. (*Id.*, PageID # 511-14) Brewer now seeks reconsideration of that decision. (D.N. 93) He further maintains that the entire indictment is the result of selective and vindictive prosecution and should therefore be dismissed. (D.N. 94) The United States opposes both motions. (D.N. 101; D.N. 102)

2

## II.

Because Brewer's motion to dismiss would be dispositive if granted, the Court will address it first.

### A.     Motion to Dismiss Indictment

#### 1.     Vindictive Prosecution

"A showing of vindictive prosecution requires (1) an exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; and (4) the intent to punish the defendant for exercise of the protected right." *United States v. Young*, 847 F.3d 328, 361 (6th Cir. 2017) (quoting *United States v. Meda*, 812 F.3d 502, 510 (6th Cir. 2015)). No hearing is required on a claim of vindictive prosecution unless the defendant demonstrates "a realistic likelihood of vindictiveness" through the elements listed above. *United States v. Simpson*, 226 F. App'x 556, 560 (6th Cir. 2007).

Brewer exercised a protected constitutional right by pleading not guilty to the state charges. *See, e.g.*, *United States v. Goodwin*, 457 U.S. 368, 377-84 (1982). But he fails to explain how federal prosecutors would have a stake in avoiding trial at the state level. *See United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000) ("To establish vindictive prosecution, a defendant must show that the prosecutor has some personal 'stake' in deterring the exercise of his constitutional rights . . . ." (citing *United States v. Branham*, 97 F.3d 835, 849-50 (6th Cir. 1996))). In any event, it is well established that the general prosecutorial stake in securing a guilty plea does not support a claim of vindictive prosecution; the Supreme Court has "accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *see also Young*, 847 F.3d at 362 (citing *United States v. Suarez*, 263

F.3d 468, 480 (6th Cir. 2001)).  Brewer's not-guilty plea to the state charges is thus irrelevant here.

The Court assumes for present purposes that Brewer has "adequately asserted a protected right in filing a civil rights suit." *Simpson*, 226 F. App'x at 560; *see id.* at 560-61 (concluding that defendant's "right to bring a civil action under 42 U.S.C. § 1983 is a protected right, the exercise of which may be the basis of a claim of prosecutorial vindictiveness").  He has not, however, alleged any facts establishing "a prosecutorial stake in the exercise of that right." *Young*, 847 F.3d at 361.  According to Brewer, he faces federal charges because certain LMPD officers sought revenge against him for suing them.  (*See* D.N. 94)  Yet he cites no facts suggesting that state prosecutors had a stake in his exercise of the right to file a § 1983 action, much less anyone in the United States Attorney's Office.  *Cf. Simpson*, 226 F. App'x at 561 (finding prosecutorial-stake element not met where even if action by Assistant United States Attorney whose father Simpson had sued "was undertaken for improper motives, the Government's decision to prosecute Simpson [was] not tainted by that motive because all decisions actually relating to Simpson's prosecution were made by individuals other than" the potentially conflicted AUSA).  Brewer likewise points to no evidence of unreasonableness on the part of the prosecutors in this matter or an intent by those prosecutors to punish him.[2]  *See Young*, 847 F.3d at 361.  Thus, dismissal of the indictment on the basis of vindictive prosecution is not warranted, and no hearing is necessary.  *See id.*; *Simpson*, 226 F. App'x at 560.

---

[2] As the United States observes, the federal investigation of Brewer was underway before he filed his civil-rights lawsuit; Brewer was ultimately referred for federal prosecution by the Bureau of Alcohol, Tobacco, Firearms and Explosives.  (*See* D.N. 101, PageID # 685-86; D.N. 101-1; D.N. 110-2; D.N. 101-3; D.N. 101-5; *Brewer v. Holland*, No. 3:16-cv-00014-CRS, ECF No. 1 (W.D. Ky. Jan. 7, 2016))

### 2. Selective Prosecution

Brewer offers even less to support his claim of selective prosecution.

> A prosecutor selectively prosecutes someone when three things occur. First, he must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the *group* which the defendant belongs to.

*United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) (internal citations omitted). Here, Brewer asserts that he "was singled-out" for traffic stops in November 2015 and beyond "due to his race as an African-American." (D.N. 94, PageID # 658-59) He does not argue that his race was a factor in the initiation of this federal prosecution, however, or that "similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

Brewer does assert in passing that "because [he] exercised his constitutional rights, and sued the police officers, he has been singled out for federal prosecution while others similarly situated and committing the same acts have not." (D.N. 94, PageID # 664) Yet he does not claim to be part of "an identifiable group" of persons who filed civil-rights lawsuits against police officers, nor does he claim that his prosecution was intended to, and did, result in a discriminatory effect on that group. *Anderson*, 923 F.2d at 453-54 (explaining distinction between selective and vindictive prosecution). His claim of selective prosecution therefore fails.

### B. Motion to Reconsider Suppression Ruling

In deciding whether to reconsider its ruling on a motion to suppress, the Court weighs several factors: whether the party seeking reconsideration has "provide[d] a reasonable explanation for failing to present the evidence initially," "the timeliness of the motion, the

character of the testimony, the effect of granting the motion, and whether the opposing party will be prejudiced by reopening the hearing." *United States v. White*, 455 F. App'x 647, 651 (6th Cir. 2012) (citing *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds*, *Carter v. United States*, 543 U.S. 1111 (2005); *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985)). Although the United States does not contend that it would be prejudiced if the motion were granted (*see* D.N. 102), the remaining factors weigh against reconsideration. First, Brewer seeks to present new argument, not new evidence; his motion was prompted by a change in counsel following the Court's prior ruling. (*See* D.N. 93, PageID # 646 (claiming that new counsel discovered "misinterpretation of facts and misapplication of law" in the Court's decision)) This is not a compelling reason. *See Carter*, 374 F.3d at 406 (finding mere change in defense counsel to be insufficient justification for failure to present evidence at initial suppression hearing); *see also White*, 455 F. App'x at 651 (affirming denial of motion to reconsider suppression ruling where evidence sought to be introduced by defendant "had not been previously unavailable").

Furthermore, the motion was not timely. Following a status conference involving Brewer's new counsel on May 31, 2018, the Court reset certain pretrial deadlines, allowing the parties twenty-one days from entry of the Memorandum of Conference and Order within which to seek extension—"for good cause"—of other deadlines that had already passed, including the deadline for motions to suppress. (D.N. 89, PageID # 623; *see* D.N. 16) Fifty-three days later, Brewer filed his initial motion to reconsider, with no explanation for the delay and no attempt to show the required good cause. (D.N. 91) The timeliness factor thus does not support reconsideration. *See White*, 455 F. App'x at 651. Indeed, denial of the motion would be warranted on this basis alone: "Good cause is a flexible standard heavily dependent on the facts

of the particular case as found and weighed by the district court in its equitable discretion. At a minimum, it requires the party seeking a waiver to articulate some legitimate explanation for the failure to timely file." *United States v. Walden*, 625 F.3d 961, 965 (6th Cir. 2010) (finding no abuse of discretion in district court's denial of request to file untimely motion to suppress) (citations omitted)); *see* Fed. R. Crim. P. 12(c) (providing that court may set deadline for pretrial motions and that untimely motion may be considered upon showing of good cause).

Nor would reconsideration result in a different outcome. The Court previously found that the November 11 traffic stop was not unreasonably delayed as a result of the canine sniff. (D.N. 66, PageID # 513-15 & n.4) Brewer argues that this conclusion was erroneous because the proof shows that "the officers engaged in inordinate delay[ and] foot-dragging and virtually halted any normal effort toward issuing a ticket, or any other appropriate task-based step associated with the purpose for the initial stop." (D.N. 93, PageID # 648 n.1) As an example of unnecessary delay, he points to a gap of "over 2 ½ minutes" between the time Detective Hogan instructed his passenger to stand at the rear of the car and the time she called in the vehicle information. (*Id.*, PageID # 650) Brewer acknowledges that Hogan was questioning the passenger about outstanding warrants during this time but asserts that the Sixth Circuit has found a two-minute delay for extraneous questions to be impermissible. (*Id.* n.2 (citing *United States v. Stepp*, 680 F.3d 651, 663 (6th Cir. 2012))) Neither the recording of the stop nor the case he cites supports his argument.

In *Stepp*, the defendant argued that the traffic stop at issue "was unreasonably prolonged by [the police officer's] extraneous questioning." 680 F.3d at 662. The Sixth Circuit explained that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries

7

do not measurably extend the duration of the stop." *Id.* (alteration in original) (quoting *United States v. Everett*, 601 F.3d 484, 490 (6th Cir. 2010)). "A traffic stop is not 'measurably' extended by extraneous questioning even when such questioning undeniably prolongs the stop to a minimal degree." *Id.* (citing *Everett* at 492). Ultimately, the court concluded in *Stepp* that "six minutes of questioning measurably prolonged the traffic stop beyond its original purposes because the topics covered more than just context-framing questions and the extraneous questions lasted a not insubstantial amount of time." *Id.* at 663. It reached this conclusion "by considering the totality of the circumstances, which requires considering both the duration of the extraneous questioning and its subject matter." *Id.* at 662.

Here, the extraneous questions took less than half the time found unreasonable in *Stepp*. *See id.* at 663. And although the questions were unrelated to the initial purpose of the stop, they were not "related to the investigation of a secondary crime," *id.* at 662, but instead asked as an apparent courtesy: Hogan explained that if Brewer's passenger had an outstanding warrant and the information were radioed in, she would have to be taken to jail, whereas the officers would have some discretion if Hogan checked the computer instead. (*See* Hogan video at 4:21) Nothing about this interaction suggests that Hogan abandoned or veered impermissibly from the initial purpose of the traffic stop; rather, her "overall course of action during [the] traffic stop, viewed objectively and in its totality, [was] reasonably directed toward the proper ends of the stop." *Everett*, 601 F.3d at 495 (noting that "the reasonable diligence standard does not 'require [an officer] to move at top speed'" (quoting *United States v. Turvin*, 517 F.3d 1097, 1102 (9th Cir. 2008))). Moreover, the questioning did not last as long as Brewer contends: at 5:36 on the bodycam recording, Hogan is seen adjusting her radio to call in the vehicle information, and the call begins at 6:06. (*See* D.N. 93, PageID # 651 (asserting that "[t]he call on the vehicle was

made at 6:43"))  Thus, neither the duration nor the subject matter of the extraneous questioning indicates that it unreasonably prolonged the traffic stop.  *See Stepp*, 680 F.3d at 662.  Finally, as Brewer acknowledges (D.N. 93, PageID # 650), the canine officer alerted—giving rise to probable cause—while Hogan was awaiting the results of the registration check.  *See United States v. Sharp*, 689 F.3d 616, 618 (6th Cir. 2012) ("An alert to the presence of drugs by a properly trained narcotics detection dog is sufficient to establish probable cause to search a vehicle." (citing *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994)))  Because the traffic stop was ongoing and the extension by Hogan was de minimis, no Fourth Amendment violation occurred.  *See Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015); *Stepp*, 680 F.3d at 662.  In sum, Brewer has not demonstrated that reconsideration of the Court's suppression ruling is necessary or appropriate.  *See White*, 455 F. App'x at 651.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)  Brewer's motion to dismiss the indictment (D.N. 94) is **DENIED**.

(2)  Brewer's amended motion to reconsider (D.N. 93) is **DENIED**.

(3)  Brewer's initial motion to reconsider (D.N. 91) is **DENIED** as moot.

October 25, 2018

David J. Hale, Judge
United States District Court