# MEMORANDUM

## LOUISVILLE METRO POLICE DEPARTMENT

**GREG FISCHER**
MAYOR

**STEVE CONRAD**
CHIEF OF POLICE

**TO:**       **All Personnel**

**FROM:**   **Steve Conrad**
**Chief of Police**

**DATE:**   **May 9, 2019**

**RE:**       **Traffic Stop SOP Updates and YouTube Video—Revised General Order #19-007**

The following SOPs have been revised by adding language clarifying the procedures for conducting field interviews, traffic stops, investigatory stops, Terry Stops, vehicle/dwelling searches, and pat down searches, including the use of a canine, and new sections have been added regarding violator contact, removing occupants from a vehicle, seating subjects on the ground, and subject restraint:

- SOP 3.6, Field Contacts/Pat Down Searches
- SOP 4.31, Wearable Video System (WVS)/Body-Worn Camera (BWC)
- SOP 7.12, Traffic Stops and Enforcement
- SOP 8.8, Biased Law Enforcement Practices
- SOP 8.24, Warrantless Searches
- SOP 10.5, Handcuffing and Prisoner Transportation

The title of SOP 7.12 has been changed from "Traffic Enforcement" to "Traffic Stops and Enforcement" and the title of SOP 10.5 has been changed from "Prisoner Transportation" to "Handcuffing and Prisoner Transportation."

In addition to these revisions, the Consent to Search form (LMPD #06-0036) now has a "Probable Cause Search" form on the back and has been named "Consent/Probable Cause Search" form.

Included, is a link to a YouTube video from me explaining the purpose of these policy revisions and how they will be implemented.

https://youtu.be/rINV3ah_2sA

All members having computer access are responsible for reading, understanding, and acknowledging receipt of this General Order, using the PowerDMS Document Management System. Members without computer access shall continue to sign an accountability roster, as they have in the past.

All commanding officers shall ensure that their personnel are made aware of this information.

This General Order shall be posted in each division, section, or unit for a period of ten (10) days. Please refer any questions through the appropriate chain of command.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:   3.6 |
| | Effective Date:  04/23/05 |
| | Prv. Rev. Date: 06/25/16 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: KACP: 1.4, 17.6 |
| Chapter: Communications | |
| Subject:  Field Contacts/Pat Down Searches | |

**3.6**          **FIELD CONTACTS/PAT DOWN SEARCHES** (KACP 17.6)

**3.6.1**          **PURPOSE**

Field interviews may be conducted anytime a Louisville Metro Police Department (LMPD) officer detains an individual (e.g. Terry Stop, traffic stop) for the purpose of a criminal investigation. Field interviews will be used to:

- Detect the perpetrators of past crimes.
- Deter the commission of future crimes.
- Determine if a crime, in fact, has been committed.

**3.6.2**          **POLICY**

Field interviews are an important point of contact for officers in preventing and investigating criminal activity. Field interviews may be perceived by some citizens as a means of harassment or intimidation conducted in a discriminatory manner against groups or individuals. In order to maintain the effectiveness and legitimacy of this practice and to protect the safety of officers in approaching suspicious individuals, officers will conduct field interviews and pat down searches in an impartial and courteous manner, free of bias, and in accordance with applicable laws and the Standard Operating Procedures (SOPs) of this department.

**3.6.3**          **DEFINITIONS**

**Consent:** To voluntarily agree to an act or proposal of another.

**Consent Search:** A search made by law enforcement officers based on the consent of the individual whose person or property is being searched.

**Exigent Circumstances:** Those circumstances which would cause a reasonable person to believe that a particular action is necessary to prevent physical harm to an individual, the destruction of relevant evidence, the escape of a suspect, or some other consequence impeding legitimate law enforcement efforts.

**Field Contact:** The gathering of detailed information from a person, either a possible suspect or witness, or visual observation that may provide useful information on criminal activity that has occurred, is occurring, or may occur in the future. A field interview is a component.

**Field Interview:** The brief detainment of, or consensual contact with, an individual, whether on foot or in a vehicle, based upon reasonable suspicion for the purposes of determining the individual's identity and resolving the officer's suspicions.

**Pat Down:** A "frisk," or the external feeling of the outer garments of an individual, for weapons. A pat down will only be conducted on reasonable grounds that the individual being subjected to the pat down is armed and dangerous to the officer or others. A pat down does not include manipulating, or grasping, the outer garments or reaching inside of, or opening, the garments (e.g. pockets, jackets, etc.).

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  3.6 |
| | Effective Date:  04/23/05 |
| | Prv. Rev. Date: 06/25/16 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Communications | KACP: 1.4, 17.6 |
| Subject:  Field Contacts/Pat Down Searches | |

### 3.6.3 DEFINITIONS (CONTINUED)

**Probable Cause:** The level of evidence, held by a rational and objective observer, necessary to justify logically accusing a specific suspect of a particular crime, based upon reliable objective facts.

**Reasonable Suspicion:** Articulable facts that, within the totality of the circumstances, lead an officer to reasonably suspect criminal activity has been, is being, or is about to be committed.

**Search:** An examination of an individual's premises, person, or property in which he/she has a reasonable expectation of privacy. The purpose of the search is discovering contraband, weapons, or other evidence of guilt to be used in a criminal prosecution. A search involves a prying into, or manipulating of, concealed or hidden places in order to discover something criminal in nature. Items in plain view will not constitute a search (KACP 1.4b). A search will only be conducted pursuant to a warrant, with consent, or under exigent circumstances with probable cause.

**Terry Stop:** Also known as "investigative detention." A stop of an individual by law enforcement officers based upon reasonable suspicion the individual may have been engaged, is engaging, or is about to engage in criminal activity.

**Voluntary Contact:** An encounter between a law enforcement officer and an individual that may be initiated by the officer or individual, for any reason, and during which the individual is free to discontinue contact or leave at any time.

### 3.6.4 FIELD INTERVIEW PROCEDURES

Officers will conduct a Terry Stop of individuals for the purpose of conducting a field interview only when reasonable suspicion is present. In justifying the stop, the officer must be able to point to specific facts that, when taken together with rational inferences, reasonably warrant the stop. Merely being nervous or in a high-crime area are not sufficient factors, by themselves, to conduct a Terry Stop.

Based upon an observance of suspicious circumstances or upon information from an investigation, an officer may initiate the stop of a suspect if he/she has an articulated reasonable suspicion of a crime to do so. The following should be done when making an authorized stop to conduct a field interview:

- When approaching the suspect, the officer should clearly identify himself/herself as a LMPD officer and, if in plainclothes, announce his/her identity, displaying his/her credentials.
- Officers will be courteous at all times during the contact but maintain caution and vigilance for movements to retrieve weapons, conceal or discard contraband, or other suspicious actions.
- Before approaching more than one (1) suspect, officers should determine whether the circumstances warrant a request for backup and whether the contact can, and should be, delayed until assistance arrives.
- Officers are not required to advise suspects of their Miranda rights in order to conduct field interviews unless the person is in custody and about to be interrogated.
- Suspects are not required, nor can they be compelled, to answer any questions during field interviews.
- Under no circumstances will an officer detain a suspect for longer than what is reasonably necessary to make reasonable inquiries and either confirm or refute his/her suspicions of criminal activity.

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  3.6 |
| | Effective Date:  04/23/05 |
| | Prv. Rev. Date: 06/25/16 |
| | Revised Date:   08/01/19 |
| Chapter: Communications | Accreditation Standards: |
| | KACP: 1.4, 17.6 |
| Subject:  Field Contacts/Pat Down Searches | |

**3.6.5          SEATING SUBJECTS ON THE GROUND**

For the safety of the officer and the subject, an officer may occasionally need to order a person to sit on the ground. Officers will not instruct subjects to sit on the ground as a matter of routine. Requiring subjects to be seated on the ground may cause the subject concerns and elicit negative attitudes towards law enforcement. Therefore, officers should use sound judgement when ordering a person to sit on the ground. Officers should only do so when the officer has a reasonable and articulable belief the subject is a danger to the officer or another person or presents indicators of flight. Officers should consider other options, such as having another officer monitor the subject, if available.

Factors the officer may consider include:

- The subject's physical behavior.
- The officer's and subject's physical size and ability.
- The subject's statements.
- Prior knowledge of the individual subject's history of flight.
- Prior knowledge of the individual subject's history of assaulting law enforcement officers.
- The presence and number of backup officers on-scene.
- The presence and number of other subjects on-scene.

Merely being nervous, in a high-crime area, or being the subject of an investigative stop are not sufficient factors, by themselves, to require a person to be seated on the ground.

Officers should only require the person to be seated for the time reasonable to mitigate danger to the officer or others.

**3.6.6          PAT DOWN SEARCH PROCEDURES** (KACP 1.4c)

An officer only has the right to perform a pat down search of the outer garments of a suspect for weapons if he/she has been legitimately stopped with reasonable suspicion of a crime and the officer has reasonable grounds to believe the suspect is armed and dangerous.

Not every field interview poses a justification for conducting a pat down search. The following are some of the criteria that may provide the justification for conducting a pat down search. These criteria include, but are not limited to, the following:

- The type of crime suspected, particularly in crimes of violence where the use or threat of deadly weapons is involved.
- Prior knowledge of the suspect's use of force and/or propensity to carry deadly weapons.
- The demeanor of the suspect.
- Visual indications that suggest the suspect is carrying a firearm or other weapon.

Merely being nervous or in a high-crime area are not sufficient factors, by themselves, to conduct a pat down search. Pat downs will not be conducted as a matter of routine.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:  3.6 |
| | Effective Date:  04/23/05 |
| | Prv. Rev. Date: 06/25/16 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Communications | KACP: 1.4, 17.6 |
| Subject:  Field Contacts/Pat Down Searches | |

**3.6.6        PAT DOWN SEARCH PROCEDURES (CONTINUED)**

When reasonable grounds exist to perform a pat down search, it should be performed with due caution, restraint, and sensitivity. These searches are only justifiable and can only be performed to protect officers, or others, from concealed weapons and will never be used as a pretext for obtaining evidence. Pat down searches will be conducted in the following manner:

- If the suspect has a disability, the officer will conduct the pat down in such a manner to accommodate the disability.
- In a pat down search, officers are only permitted to feel the outer clothing of a suspect. Officers will not manipulate items, grasp the outer garments, or reach into or open garments (e.g. pockets, jackets, etc.) unless they feel an object that could reasonably be a weapon, such as a firearm, knife, club, or other item.
- If the suspect is carrying an object, such as a handbag, suitcase, briefcase, sack/bag, or any other item that may conceal a weapon, the officer will not open the item but instead place it out of the suspect's reach. These objects will only be searched with probable cause or consent.
- If the feeling of the suspect's outer clothing fails to disclose evidence of a weapon, no further search will be made without further legal justification. If evidence of a weapon is present, an officer will retrieve that item only. If the item is a weapon, of which the possession constitutes a crime, the officer may arrest the suspect and complete a full custodial search of the suspect.
- If an officer discovers contraband, through the plain feel doctrine, during a pat down search, the contraband will be seized (refer to SOP 8.24).

**3.6.7        FIELD CONTACT**

Detailed information on criminal activity is sometimes gained via other means (e.g. suspicious location, suspicious vehicle, etc.). In these situations, a Field Contact Report may be filled out, whenever an officer has a reasonable suspicion that a crime has occurred, is occurring, or is about to occur, for the following:

- Suspicious persons.
- Vehicles.
- Witnesses.
- Businesses (this may include notes taken during a business check).
- Residences.
- Any other locations (e.g. street corners, blocks, parks, parking lots, etc.).
- Information received from an individual during a Terry Stop or voluntary contact about possible criminal activity.

When identifying criminal activity at any location, detailed information on the activity and times will be provided in the "Remarks" section.

**3.6.8        ELECTRONIC FIELD CONTACT REPORTS**

The Records Management System (RMS) is the system of record for all Field Contact Reports. All field contacts will be entered into the RMS in the "Field Contact" module, utilizing the following fields:

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   3.6 |
| | Effective Date:  04/23/05 |
| | Prv. Rev. Date: 06/25/16 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Communications | KACP: 1.4, 17.6 |
| Subject:  Field Contacts/Pat Down Searches | |

**3.6.8          ELECTRONIC FIELD CONTACT REPORTS (CONTINUED)**

- Location.
- Suspect.
- Vehicle.
- Administrative information (code number and assignment).
- Narrative, in the "Remarks" section of the RMS (reasonable suspicion for the stop). The narrative of the Field Contact Report needs to include the detailed reason for the suspicion.

If more than one (1) person is interviewed during a stop, only one (1) Field Contact Report will be completed for the stop. The first person stopped will be entered through the "Names" module of the Field Contact Report. Additional persons will be entered through the "Related Names" function of the Field Contact Report.

Each Field Contact Report will contain a narrative describing the reasonable suspicion or consent and any behaviors that led the officer to initiate contact with the suspect. If the officer conducts a pat down of the suspect, the narrative will include the reasonable suspicion that led the officer to believe that the suspect was armed and dangerous. If the suspect is searched, the narrative will include the probable cause that led the officer to conduct a search of the suspect.

Field Contact Reports will not be completed on suspects, victims, or other individuals associated with an existing offense report, collision report, or citation unless the field contact provides new information on other criminal activity unrelated to the existing report(s) (e.g. a person involved in a traffic accident has property that the officer suspects may be stolen).

Field Contact Reports do not require an incident number when submitted into the RMS.

Upon completion, the Field Contact Report will be submitted by the officer and approved to "Approval Level: 1."

Field Contact Reports will be retained pursuant to applicable records retention schedules.

# Louisville Metro Police Department

| | |
|---|---|
| | SOP Number:   4.31 |
| **Standard Operating Procedures** | Effective Date:  04/30/15 |
| | Prv. Rev. Date: 02/10/19 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Uniforms and Equipment | KACP: 17.13, 20.2, 20.5 |
| Subject:  Wearable Video System/Body-Worn Camera | |

**4.31          WEARABLE VIDEO SYSTEM (WVS)/BODY-WORN CAMERA (BWC)**

**4.31.1          POLICY**

The Louisville Metro Police Department (LMPD) has adopted the use of wearable, on-officer cameras to further the mission of the department and enhance service to the community by accurately documenting events, actions, conditions, and statements made during citizen encounters, traffic stops, arrests, and other incidents in order to promote officer and public safety. The Wearable Video System (WVS) allows hands-free video and audio recording of important or critical incidents from the perspective of the user as they are occurring. This allows the officer to record locations and activities that are not available to in-car recording equipment. The WVS may be used as a stand-alone recorder or in conjunction with, and to supplement, the Mobile Video System (MVS) (refer to SOP 4.1). Officers will only utilize the WVS issued by the LMPD. The WVS will only be used by officers working in an official law enforcement capacity. This policy does not govern the use of covert recording devices, such as those used in undercover operations.

**4.31.2          PURPOSE**

The LMPD has adopted the use of the WVS to accomplish the following objectives:

- Enhance officer safety.
- Document statements and events during the course of an incident.
- Enhance the officer's ability to document statements and actions for both internal reporting requirements and for court preparation/presentation.
- Preserve visual and audio information for use in current and future investigations.
- Provide an impartial measurement for self-critique and field evaluation during officer training.
- Enhance the public's trust by preserving factual representations of officer-citizen interactions in the form of video and audio recordings, strengthening departmental transparency, and reducing complaints.
- Allow for the supervisory review of officer-citizen contacts, critical incidents, and other police operations.

**4.31.3          DEFINITIONS**

**Law Enforcement Activity:** Any activity performed by an officer in an official capacity for the purposes of maintaining public order and enforcing the law, particularly the activities of prevention, detection, and investigation of crime and the apprehension of criminals.

**Wearable Video System (WVS):** Body-worn camera system with secured internal memory for the storage of recorded video and audio.

**WVS Issue Tracking Form:** Form that will be completed by supervisors, or acting supervisors, when notified of a malfunction with the officer's WVS.

**WVS Audit Log:** Form that will be completed by supervisors to verify compliance with WVS standards, departmental policy, and to assess overall officer performance.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:  4.31 |
| | Effective Date:  04/30/15 |
| | Prv. Rev. Date: 02/10/19 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: KACP: 17.13, 20.2, 20.5 |
| Chapter: Uniforms and Equipment | |
| Subject:  Wearable Video System/Body-Worn Camera | |

**4.31.4**          **TRAINING** (KACP 17.13a)

Officers will successfully complete WVS training regarding the activation, use, uploading of data, inspection, and storage for each device prior to being deployed with a WVS.

**4.31.5**          **PROCEDURES** (KACP 17.13a-b)

WVS equipment is the responsibility of the individual officer to whom it is assigned. WVS devices will only be stored in designated, secured locations at LMPD facilities, inside of the officer's home, or in secured LMPD vehicles when they are not in use. Officers are to exercise reasonable care and maintenance of the WVS equipment. During their tour of duty, or while engaged in uniformed law enforcement-related secondary employment, officers will maintain their WVS in a constant state of operational readiness. The WVS will be used to record all calls for service and law enforcement activities/encounters (e.g. arrests, citations, stops, pursuits, Code 3 operations/responses, searches, seizures, interviews, identifications, use of force incidents, collisions, transports, warrants, etc.). Officers will immediately activate their WVS in recording mode when they acknowledge all calls for service. Officers will also immediately activate their WVS in recording mode prior to engaging in all law enforcement activities or encounters, including law enforcement activities or encounters occurring when traveling to and from work in uniform. Officers will verify their WVS is functioning in recording mode by listening for the audible tone and/or checking the visible light indicator. In extremely rare situations, an encounter may be sudden and unanticipated. If an officer is involved in a sudden and unanticipated incident where exigent safety concerns prevent the immediate activation of his/her WVS, he/she will activate the WVS at the first opportunity, when it is safe to do so, in order to capture the immediate aftermath of the situation.

Officers will utilize their WVS when assisting other law enforcement or governmental agencies engaged in any official law enforcement activities.

The WVS may not be used to record the following:

- Activities of officers on federal task forces, at the request of the host agency and with the approval of the Chief of Police, or his/her designee;
- Activities of the Bomb Squad, Dignitary Protection Team (DPT), Hostage Negotiating Team (HNT), or Special Weapons and Tactics (SWAT) Team command posts; or
- Incidents where the Bomb Squad Commander, Hazardous Incident Response Team (HIRT) Commander, or chief fire official believes the use of the WVS may create a danger of fire, explosion, or other risk to public safety.

If the officer neglects to activate his/her WVS at a scene which requires recording, fails to record the complete incident, or interrupts the recording, he/she will notify his/her supervisor, prior to the end of his/her tour of duty, and complete a Failure to Activate Wearable Video System form (LMPD #17-0002). The form will be forwarded, through the chain of command, to the appropriate Bureau Commander by the end of the officer's next tour of duty. If data is lost, the officer will document the reason in a memorandum and forward it, through the appropriate chain of command, to his/her Bureau Commander by the end of the officer's next tour of duty.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   4.31 |
| | Effective Date:  04/30/15<br>Prv. Rev. Date: 02/10/19<br>Revised Date:   08/01/19 |
| | Accreditation Standards:<br>KACP: 17.13, 20.2, 20.5 |
| Chapter: Uniforms and Equipment | |
| Subject:  Wearable Video System/Body-Worn Camera | |

### 4.31.5        PROCEDURES (CONTINUED)

When an officer activates his/her WVS and such activation is not required by policy and the circumstances do not require continued recording, he/she may use his/her discretion when deciding to deactivate the WVS (KACP 17.13c).

The WVS will not be used for non-law enforcement/personal use or to record personal activities. Officers will not post recordings to any website, including social media websites (KACP 20.5b-c). Officers will not use other devices (e.g. cell phones, cameras, etc.) to record video and/or audio from the WVS. Members will only access their own WVS recordings or those they have a legitimate purpose to review (e.g. review by detectives involved in the case, review by LMPD Open Records as a result of an open records request, etc.).

Supervisors should refer to SOP 4.31.13 regarding WVS supervisory review procedures. The evidence.com storage system maintains an audit log that documents the videos that have been viewed and any actions taken by LMPD members. Officers are prohibited from using the WVS to record conversations of departmental members without their knowledge during routine, non-law enforcement-related activities. This includes, but is not limited to, the following:

- Casual conversations
- Roll calls
- Meetings
- Training
- Supervisor reviews
- Performance evaluations
- Employee coaching
- Restroom areas
- Meals

The WVS will not be used inside of Louisville Metro Youth Detention Services (LMYDS). Officers are required to turn off their WVS prior to entering the facility.

School Resource Officers (SROs) who are issued a WVS will only record legitimate law enforcement activities while on school property or during school-related events. SROs will maintain their WVS in a constant state of operational readiness during their tour of duty. SROs will activate their WVS in recording mode when called for assistance on the school's radio system.

The WVS will not be used in places where an exceptional expectation of privacy exists (e.g. restrooms, locker rooms, dressing rooms, etc.) unless the recording is required for a specific law enforcement activity. Officers have the right to record if they have a legal right to be at, or in, the location (e.g. responding to a call for service, pursuant to a valid search warrant, consent of the resident, etc.).

Officers may be required to turn off their WVS at any hospital or medical facility at the request of the medical staff, unless they are engaging in a law enforcement activity or encounter (e.g. active shooter, unruly patient/visitor, etc.).

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  4.31 |
| | Effective Date:  04/30/15<br>Prv. Rev. Date: 02/10/19<br>Revised Date:   08/01/19 |
| | Accreditation Standards:<br>KACP: 17.13, 20.2, 20.5 |
| Chapter: Uniforms and Equipment | |
| Subject:  Wearable Video System/Body-Worn Camera | |

**4.31.5        PROCEDURES (CONTINUED)**

The WVS camera will routinely be positioned to record video and audio from the officer's point of view. Officers will not routinely record undercover officers or confidential informants in order to protect their identities; however, this is at the discretion of the officer in control of the WVS. If it is necessary to record a confidential informant, the officer may wish to record the audio portion only by positioning the camera away from the informant. Officers will categorize video containing recordings of confidential informants as both the type of crime being investigated (e.g. felony, misdemeanor/violation) and as "Special Circumstances" in evidence.com.

Officers will use their WVS to record all consent searches in their entirety. This includes recording the subject giving consent to the search.

When conducting strip searches, officers will video and audio record a 360 degree view of the location where the strip search is taking place. However, officers will only record the audio portion of the actual strip search by positioning the camera away from the person on whom the strip search is being conducted.

Officers will not intentionally obstruct the view of the WVS camera except in the situations outlined above.

Officers should inform their commanding officer of any recording that may be of evidentiary value (with the exception of DUI, which is covered in SOP 4.31.7).

**4.31.6        OPERATION** (KACP 17.13a)

Officers will inspect their WVS to verify it is fully-charged and does not contain any recordings from a prior tour of duty. Officers will immediately upload any prior recordings. Officers will inspect their WVS and its components for damage and verify it is functioning properly prior to, and during, their tour of duty. Officers should refer to SOP 4.31.12 regarding the procedures for handling any lost, stolen, defective, damaged, or malfunctioning WVS component.

The WVS camera will either be worn on the officer's head or positioned on the collar of the officer's uniform or plainclothes attire, using only the departmentally-issued mounting equipment, at the beginning of his/her tour of duty and will be worn throughout his/her tour of duty. Officers will not wear the WVS on the same side as their radio microphone. Officers will maintain their WVS in a constant state of operational readiness. Officers will make certain their WVS is not pointed excessively high or low. Officers will not remove, dismantle, or tamper with any hardware/software component or part associated with the WVS.

If the audio portion of a law enforcement activity or encounter is captured by the WVS, the use of the officer's MVS microphone to capture the audio is not necessary.

Officers will not discontinue recording based solely on a person's verbal request, unless the person wishes to submit an anonymous tip, in which the decision to record is at the discretion of the officer. The officer may contact his/her commanding officer for further guidance in these situations, if needed. Officers will not be required to discontinue recording an event, situation, or circumstance for anyone other than a commanding officer.

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  4.31 |
| | Effective Date:  04/30/15<br>Prv. Rev. Date: 02/10/19<br>Revised Date:   08/01/19 |
| | Accreditation Standards:<br>KACP: 17.13, 20.2, 20.5 |
| Chapter: Uniforms and Equipment | |
| Subject:  Wearable Video System/Body-Worn Camera | |

## 4.31.6      OPERATION (CONTINUED)

If a member is on an extended scene with a low likelihood of taking law enforcement action (e.g. downed power lines, downed tree, blocking intersection, etc.), a commanding officer may authorize him/her to discontinue recording. He/she will reactivate his/her WVS during any public contact at the scene.

At the conclusion of a recorded event, officers will choose the appropriate storage category for their WVS recording in order to allow for later review and appropriate retention. The proper categorization of recordings determines how long the recordings are retained, to whom access is granted, and whether the recording can be released to the public/media. The recordings will be reviewed by a sergeant in order to verify they have been properly placed into the appropriate tagging categories in the WVS software.

WVS recordings are not a replacement/substitution for written reports. Officers will notate that a recording was made in the narrative section of the Administrative Incident Report (AIR) in BlueTeam, Uniform Incident Report, Kentucky Uniform Citation, or Kentucky Uniform Collision Report. The notation will state "WVS activated."

Officers should refer to SOP 4.31.11 regarding the procedures for recharging the WVS and uploading recordings.

## 4.31.7      STATUTORY PROVISIONS FOR DUI CASES (KACP 17.13b-d)

Kentucky Revised Statutes (KRS) 189A.100 specifically addresses the procedures for securing, reviewing, maintaining, and destroying video and audio evidence in DUI cases.

Recordings of field sobriety tests, administered at the scene of an arrest, for a violation of KRS 189A.010 (DUI) or such tests at a police station, jail, or other facility will be subject to the following conditions:

- The testing is recorded in its entirety (except for blood alcohol and analysis testing); and
- The recording will be used for official purposes only, which includes:

  o  Viewing in court;
  o  Viewing by the prosecution and defense in preparation for a trial; and
  o  Viewing for purposes of administrative proceedings.

Recordings will otherwise be considered confidential records.

Recordings taken as a result of a DUI will, upon order of the District Court, be destroyed after the latter of any of the following:

- 14 months, if there is no appeal of any criminal or traffic case filed as a result of the recording, or if the recording does not depict the actual happening of an accident involving a motor vehicle.
- 14 months after a decision has been made not to prosecute any case upon which an arrest has been made or a citation issued as a result of the recording, if the recording does not depict the actual happening of an accident involving a motor vehicle.

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  4.31 |
| | Effective Date:  04/30/15 |
| | Prv. Rev. Date: 02/10/19 |
| | Revised Date:   08/01/19 |
| Chapter: Uniforms and Equipment | Accreditation Standards: KACP: 17.13, 20.2, 20.5 |
| Subject:  Wearable Video System/Body-Worn Camera | |

#### 4.31.7       STATUTORY PROVISIONS FOR DUI CASES (CONTINUED)

- 26 months, if there is no appeal of any criminal or traffic case filed as a result of the recording, if the recording depicts the actual happening of an accident involving a motor vehicle.
- After all appeals have been exhausted, arising from any criminal or traffic case filed as a result of the recording.
- At the conclusion of any civil case, arising from the events depicted on the recording.
- At the conclusion of all appeals from any law enforcement agency's administrative proceedings, arising from events depicted on the recording.

Officers utilizing, or showing, recordings of DUI arrests, other than as permitted in this section, or permitting others to do so, are in violation of KRS 189A.100(2)(g).

#### 4.31.8       COURT/CIVIL PROCEEDINGS (KACP 17.13d)

The WVS will not be used to record any court proceedings or conferences with prosecutors or defense attorneys. The WVS will not be used to record any civil depositions or proceedings.

#### 4.31.9       SPECIAL EVENTS (KACP 17.13b)

The use of the WVS for recording official activities at special events will be at the discretion of the Support Bureau Commander, Community Services Division Commander, Special Events Unit Commander, or the commander of the special event. The commander will instruct officers on the types of activities that will be recorded. Officers will record citizen contacts as described in SOP 4.31.5.

#### 4.31.10       SECONDARY EMPLOYMENT (KACP 17.13b)

Officers who are issued a WVS and wear an official departmental uniform while working secondary employment will record official law enforcement activities with the WVS pursuant to this SOP.

#### 4.31.11       UPLOADING VIDEO

Officers will turn off and recharge their controller/power pack at the end of their tour of duty. The WVS will not be removed from the charger until the video and audio has been uploaded. All WVS recordings will be uploaded prior to, or at the beginning of, the officer's next tour of duty, including when an officer is working secondary employment. The use of overtime may be authorized for situations other than the normal, routine uploading of WVS video. WVS recordings should be uploaded immediately following a critical incident or use of force incident. A commanding officer may order an officer to upload WVS recordings at any time during his/her shift or following a critical incident or use of force incident.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   4.31 |
| | Effective Date:  04/30/15 |
| | Prv. Rev. Date: 02/10/19 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Uniforms and Equipment | KACP: 17.13, 20.2, 20.5 |
| Subject:  Wearable Video System/Body-Worn Camera | |

**4.31.12        LOST/STOLEN/DEFECTIVE/DAMAGED/MALFUNCTIONING WVS COMPONENTS**
(KACP 17.13a, c)

Officers will inspect their WVS for damage and verify it is functioning properly prior to, during, and after their tour of duty. Any WVS component that needs to be replaced due to being lost, stolen, defective, damaged, or malfunctioning will immediately be reported to his/her commanding officer. The officer is required to complete a Report of Lost/Stolen/Defective/Damaged Uniform Articles and Equipment form (LMPD #03-04-0180). The officer will forward the original form, through his/her chain of command, to the appropriate Bureau Commander. The officer will then take a copy of the form and the WVS component, if not lost or stolen, to the Evidence and Property Unit (EPU) for replacement.

A Uniform Incident Report will be completed when a WVS has been lost, stolen, or damaged as a result of criminal activity. If criminal charges are filed, damage to any property will be notated in the arrest/citation narrative (refer to SOP 4.18). Officers will complete the report using violation code *03024 Property Lost* or the appropriate theft charge report. The report will be forwarded to the National Crime Information Center (NCIC) Unit for entry pursuant to SOP 8.11.

If the WVS eyewear is lost, stolen, or damaged, the officer will complete a Report of Lost/Stolen/Defective/Damaged Uniform Articles and Equipment form and forward it to the Technical Services Lieutenant for replacement.

If the WVS camera or controller/power pack is damaged/malfunctioning, the officer will notify his/her supervisor, who will complete the WVS Issue Tracking documenting the circumstances surrounding the time of the damage/malfunction and if any video has been captured on the damaged/malfunctioning WVS. This form is located on the LMPD Intranet. Click on the "Administrative" button and click on the "WVS Issue Tracking" link. Technical Services will attempt to retrieve any captured video from the damaged/malfunctioning WVS.

If the captured video is unable to be retrieved from the damaged/malfunctioning WVS, officers are required to forward a memorandum, through the appropriate chain of command, to the Technical Services Lieutenant by the end of the officer's next tour of duty. This memorandum will include a description of the activity that was captured by the video that was unable to be retrieved. This will verify evidentiary standards are met (refer to SOP 4.31.15). If the captured video was successfully downloaded from the damaged/malfunctioning camera, the officer is responsible for the proper categorization of the video.

If the WVS camera is lost or stolen, officers are required to forward a memorandum, through the appropriate chain of command, to the Technical Services Lieutenant by the end of the officer's next tour of duty. This memorandum will include a description of the activity that was captured by the lost or stolen WVS and the circumstances surrounding its loss or theft.

**4.31.13        SUPERVISOR RESPONSIBILITIES** (KACP 17.13a)

Supervisors will verify the WVSs of officers under their command are operating properly. Supervisors will also verify officers are wearing their camera in a manner to capture incidents and their WVS is not pointed excessively high or low. This will be included in the supervisor's monthly personnel inspection (refer to SOP 4.18).

# Louisville Metro Police Department

| | |
|---|---|
| | SOP Number:  4.31 |
| Standard Operating Procedures | Effective Date:  04/30/15 |
| | Prv. Rev. Date: 02/10/19 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Uniforms and Equipment | KACP: 17.13, 20.2, 20.5 |
| Subject:  Wearable Video System/Body-Worn Camera | |

**4.31.13      SUPERVISOR RESPONSIBILITIES (CONTINUED)**

If an officer is involved in a critical incident, the commanding officer who responds to the scene will verbally inform the involved officer to turn off his/her WVS after the scene is safe and the incident is under control. This command will be captured by the WVS prior to the WVS being turned off.

At least quarterly, commanding officers will be notified, via reports downloaded from the WVS Issue Tracking form, of officers under their command who fail to activate their WVS and were not in compliance with this policy.

**4.31.14      REVIEW** (KACP 17.13c)

Supervisors will review the WVS recordings of officers under their command in the following situations:

- The investigation of a complaint against an officer or to review a specific incident (e.g. critical incident) in which the officer was involved.
- Obtaining videos for training purposes/instructional use.
- The evaluation of a probationary officer by a Police Training Evaluator (PTE) during his/her probationary period.
- WVS video will be reviewed during the performance evaluation process to provide feedback (positive and negative).
- The investigation of an officer who has a pattern of allegations of misconduct or poor performance.
- When an AIR is required to be completed, via the BlueTeam link, located on the LMPD Intranet (refer to SOP 3.1).
- On a routine basis in order to verify compliance with WVS standards, departmental policy, and to assess overall officer performance. These reviews will be documented on the WVS Audit Log on the LMPD Intranet. Click on the "Administrative" button and click on the "WVS Audit Log" link. Reviewing videos for AIRs or complaints will not count as routine reviews.
- A lieutenant will review recordings when a canine search is conducted for the search of a vehicle where the canine sniff generates the probable cause for the search. The lieutenant will document the review on the WVS Audit Log.

Officers will be permitted to review their WVS footage of any incident in which they were involved prior to making a statement or report regarding the incident.

**4.31.15      RETENTION/DISTRIBUTION** (KACP 17.13d)

Officers will not delete/erase, destroy, copy, reuse, alter/modify, or tamper with WVS recordings. Recordings generated on departmental equipment are the exclusive property of the LMPD and will be available for departmental use in accordance with applicable legal restrictions, or upon direct authority of the Chief of Police, or his/her designee (Deputy Chief of Police or Assistant Chief of Police). WVS recordings will be used for official law enforcement purposes only.

WVS recordings that include exculpatory evidence (*Brady* material) will be retained and turned over to the appropriate prosecutor (refer to SOP 11.7).

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  4.31 |
| | Effective Date:  04/30/15 |
| | Prv. Rev. Date: 02/10/19 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: KACP: 17.13, 20.2, 20.5 |
| Chapter: Uniforms and Equipment | |
| Subject:  Wearable Video System/Body-Worn Camera | |

**4.31.15        RETENTION/DISTRIBUTION (CONTINUED)**

WVS recordings that contain a record of a confidential informant will be labeled as "Special Circumstances" on the disk and given to the officers and the prosecutors. LMPD Open Records will notify the Jefferson County Attorney's Office and the Office of the Commonwealth's Attorney of any open records requests for a video containing a confidential informant prior to any release.

Copying or reproducing any recording, or segment of any recording, generated by the LMPD, or the removal of any recording outside of the LMPD, without the written authorization of the Chief of Police, or his/her designee (Deputy Chief of Police or Assistant Chief of Police), is prohibited.

Open records requests for copies of recordings, from persons or agencies outside of the LMPD, will be directed, in writing, to LMPD Open Records. Open records requests submitted by the media will be directed, in writing, to the Media and Public Relations Office (KACP 20.2b). Anyone may request a copy of a WVS recording by emailing a completed Video System Request form (LMPD #15-0013) to "LMPD Video System Request," located in the department's email distribution list. Any parts of a recording that infringe on an individual's privacy rights or may compromise an investigation may be redacted.

Recordings provided to persons or agencies outside of the LMPD will be duplicated on discs and will be provided by the department for a reasonable fee. The unauthorized duplication of recordings is prohibited.

Only the portion of a recording which contains a specific contact in question may be reproduced.

Nothing in this section prevents officers from securing, or releasing, copies of WVS recordings to the United States Attorney's Office, Jefferson County Attorney's Office, or Office of the Commonwealth's Attorney for official purposes.

WVS recordings will be retained for a minimum of 30 days (non-evidentiary recordings), with the exception of those recordings which need to be retained longer (evidentiary recordings) due to an investigation (including criminal, administrative, AIR, etc.), litigation, or open records request. These recordings will be maintained until all investigative or legal activity is completed, pursuant to KRS or applicable records retention schedules. Recordings containing DUI video evidence will be maintained and destroyed pursuant to KRS 189A.100.

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  7.12 |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12**          **TRAFFIC STOPS AND ENFORCEMENT** (KACP 22.1)


**7.12.1**          **TYPES OF TRAFFIC STOPS AND ENFORCEMENT** (KACP 22.3, 22.4a-b, 23.2)

Traffic enforcement serves a legitimate community purpose. The primary goal of traffic enforcement is to enhance public safety through voluntary compliance with traffic laws. Traffic enforcement can help reduce factors, such as speeding, intoxicated driving, inattentive driving, or other violations that contribute to crashes or other dangerous situations for the public. It is the policy of the Louisville Metro Police Department (LMPD) that traffic stops and enforcement are conducted in an impartial and courteous manner, free of bias, and in accordance with applicable laws and the Standard Operating Procedures (SOPs) of this department.

All officers, regardless of rank or assignment, may enforce traffic laws. Officer discretion is encouraged when enforcing traffic laws. In general, traffic stops should be focused on traffic safety. An officer should consider the severity of the violation and the safety of the location of the stop when making the decision to stop a motorist.

For the safety of officers and the public, generally two (2) units should respond to a traffic stop. Having too many officers on-scene can cause undo public concern. If the officers on-scene of a traffic stop have a reasonable belief that an elevated safety risk exists, additional units may be requested to respond. Only the number of officers needed to deal with the individual situation should be on-scene.

Traffic stops are divided into two (2) categories:

- **Safety Stops:** Safety stops are conducted with the goal of enforcing the rules of the road to decrease the likelihood of collisions or other traffic safety concerns. These types of stops include offenses such as speeding, disregarding a traffic control device, reckless driving, Driving Under the Influence (DUI), etc. In addition, specially-trained officers may stop and inspect commercial vehicles to ensure public safety through the enforcement of commercial vehicle laws and regulations. All safety stops must be based upon a reasonable suspicion the person is committing, or has committed, a traffic violation.

- **Investigatory Stops:** Investigatory stops are conducted to provide an officer the opportunity to stop the motorist to investigate a potential crime other than a mere traffic violation. Investigative stops must be based upon a reasonable suspicion the person has committed, is committing, or is about to commit a crime. Officers must evaluate the totality of the circumstances. Stops based upon the subject's nervousness alone, the suspect's prior criminal history alone, or presence in a high-crime area alone are not sufficient factors, by themselves, to establish a reasonable suspicion.

Based upon an officer's experience, observations, and the totality of the circumstances, a safety stop may evolve into an investigatory stop.

Officers may choose to give a verbal or written warning, issue a citation, or arrest a violator. Officers will consider the totality of the circumstances, the uniqueness of the violation, the driver's state of mind, and the seriousness of the violation when deciding which enforcement option to exercise. Any actions taken by the officer will be commensurate with applicable laws and LMPD SOPs.

Officers should refer to the Kentucky Revised Statutes (KRS) regularly in order to stay informed of newly enacted laws and/or regulations concerning motor vehicle violations and citations.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  7.12 |
| --- | --- |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: |
| | KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.1**          **TYPES OF TRAFFIC STOPS AND ENFORCEMENT (CONTINUED)**

To help decrease the number of traffic violations and accident fatalities, traffic safety tips are available on the LMPD website.

**7.12.2**          **VIOLATOR CONTACT** (KACP 22.5)

Traffic stops can be very serious situations for officers and the people they stop. Unknown and high-risk situations can create tensions for both officers and violators. As a result, officer discretion and caution should be exercised while conducting traffic stops. Officers will be vigilant to factors that pose a threat to officer or public safety. Officers will use caution while approaching violators in order to evaluate the behavior of the violator and the seriousness of the situation. The officer will always maintain a professional attitude and demeanor. Verbal contact should be accomplished in a fair, impartial, and courteous manner.

Providing citizens with an explanation as to why they were stopped allows citizens to understand why police officers took an action, reduces the potential perception of bias, and improves relations with the community. Therefore, officers should make a reasonable effort to explain to the citizen why they were stopped, unless doing so would unreasonably undermine an investigation or jeopardize the officer's safety.

Officers making contact with violators during a traffic stop will observe the following during the course of the stop, whenever possible:

- The officer will greet the violator and identify himself/herself by name.
- The officer should explain the reason for stopping the violator.
- The officer will ask the operator of the vehicle if there was a legitimate reason for doing what he/she did.
- The officer will ask where the driver's license, insurance, and registration information is located before asking him/her to retrieve any of them.
- The officer will give instructions to the violator to follow (e.g. remain in the vehicle and buckle up) as he/she reviews documentation and decides what action to take.
- The officer will issue the appropriate warning or citation and let the violator know the traffic stop is over.

**7.12.3**          **REMOVING OCCUPANTS FROM A VEHICLE**

For the safety of the officer and the subject, occasionally an officer may need to remove an occupant from the vehicle. Officers will not remove occupants as a matter of routine. Requiring subjects to be removed from the vehicle may cause the subject concern and elicit negative attitudes towards law enforcement. Therefore, officers should use sound judgement when ordering a person out of the vehicle. Officers should only remove an occupant from the vehicle when the officer has a reasonable and articulable belief that:

- The subject is armed and/or presents a danger to the officer or another person.
- The officer has probable cause to believe the subject has committed an arrestable offense or pursuant to a warrant.

Officers may also remove an occupant from a vehicle for the following:

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:   7.12 |
| --- | --- |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Traffic Control and Collisions | KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.3        REMOVING OCCUPANTS FROM A VEHICLE (CONTINUED)**

- To administer field sobriety tests.
- To conduct a commercial vehicle inspection.
- To conduct a search of the vehicle (refer to SOP 8.24).
- When a potentially dangerous situation exists that endangers the officer or another person.

Officers will only remove the person from the vehicle for the time reasonably needed to mitigate the danger, complete the search, field sobriety testing, or commercial vehicle inspection.

Factors the officer may consider include:

- The subject's physical behavior.
- The officer and subject's physical size and ability.
- The subject's statements.
- Prior knowledge of the subject's history of flight in a vehicle.
- Prior knowledge of the subject's history of assaulting law enforcement officers.
- Probable cause to believe the subject has committed an arrestable offense.
- The presence and number of backup officers on-scene.
- The presence and number of subjects on-scene.

Officers may only conduct a pat down search of a subject based upon a reasonable belief the subject is armed and dangerous, in accordance with SOP 3.6 (Field Contacts/Pat Down Searches) and SOP 8.24 (Warrantless Searches). Officers will not conduct pat down searches as a matter of routine. Merely being nervous, in a high-crime area, or being the subject of an investigative stop are not sufficient factors, by themselves, to remove a person from a vehicle or conduct a pat down search.

Officers should not routinely seat subjects on the ground. Requiring subjects to be seated on the ground may cause the subject concern and elicit negative attitudes towards law enforcement. Therefore, officers should use sound judgement when ordering a person to sit on the ground. Officers should refer to SOP 3.6 (Field Contacts/Pat Down Searches) for the limited circumstances which an officer may require a person to be seated on the ground.

Officers should inform the person they are not under arrest. If circumstances change and the subject does become under arrest, the officer should inform the person they are now under arrest.

**7.12.4        SEARCHES OF STOPPED VEHICLES**

All searches of stopped vehicles, including canine searches, will be conducted pursuant to a search warrant or in accordance with SOP 3.6 (Field Contacts/Pat Down Searches) and SOP 8.24 (Warrantless Searches).

**7.12.5        CITATIONS**

Members authorized to issue citations are responsible for the accountability for electronic or paper citations issued to them. Officers may issue a citation electronically, using the Kentucky Open Portal Solution (KYOPS)

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:  7.12 |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

### 7.12.5        CITATIONS (CONTINUED)

system, to any motor vehicle operator found to be in violation of any of the offenses listed in KRS chapters 186 and 189. While individual members are responsible for citations issued to him/her, the Kentucky State Police (KSP) has the final authority for accountability for issued and voided eCitations. KRS 431.455 prohibits members from invalidating, or attempting to invalidate, destroying, or attempting to destroy, a uniform citation which has been lawfully issued.

Paper citations, which should only be used if the KYOPS system is down or the officer does not have access to a Mobile Data Terminal (MDT), are issued to officers from their respective division/section/unit. All officers must sign the Citation Accountability Log (LMPD #06-0017) for all paper citations issued to them. Any voided paper citations must be turned in to the division/section/unit and logged on the Voided Citation Log (LMPD #06-0048) (KACP 22.4a). Unused paper citations will be stored in a secure location in each division/section/unit.

Traffic enforcement data is kept by the KSP and retained in the KYOPS system. The KYOPS system allows for daily reporting of crime data and the ability to query all data that is contributed to the repository. The Traffic Unit can retrieve this data at any time, using queries based on location, in order to better utilize resources.

Officers issuing a citation will complete the "Post-Arrest Complaint" narrative of the Kentucky Uniform Citation. The officer will specify the offense(s) being charged and enter a detailed statement of probable cause in the narrative section of the Kentucky Uniform Citation. The statement of probable cause must sufficiently describe the actions of the accused that the officer relied on to meet the elements of the offense(s). Merely re-stating the charges or making a reference to an incident report number is not sufficient for establishing probable cause or meeting the elements of the offense (refer to Kentucky Rules of Criminal Procedure [(RCr) 3.02(2)].

Traffic citations for non-residents of Jefferson County are processed in the same manner as citations for local residents. Pursuant to KRS 189.999, traffic citations issued to juvenile drivers, under the age of 18, are not pre-payable. An officer issuing a citation to a juvenile driver will appropriately mark the "Court" box on the citation and issue a valid court date based on the court assignment calendar and Jefferson County Office of the Circuit Court Clerk (OCCC) guidelines.

When citing a driver for multiple traffic violations, officers will list all applicable charges in the "Charges" section of the traffic citation. Each line in the "Charges" section must be completed before moving to the next citation to list additional violations. Officers are prohibited from writing multiple traffic citations to one (1) operator when all of the charges would appropriately fit on one (1) citation. Any motor vehicle operator receiving citation(s) for multiple violations, either simultaneously or at different times, is required to satisfy the requirements of the citation(s).

Civilian members who have limited authority to issue citations for non-moving violations (e.g. Traffic Control Officers (TCOs), Tow-In Equipment Operators, Storage Equipment Operators) will not issue citations while off-duty or working secondary employment, unless authorized, in writing, by the Chief of Police, or his/her designee.

### 7.12.6        METROCALL COMPLAINTS

MetroCall complaints regarding traffic violations on surface streets are forwarded to the appropriate division/section/unit for assignment, investigation, and handling. An officer assigned a complaint will evaluate

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  7.12 |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.6          METROCALL COMPLAINTS (CONTINUED)**

the complaint and take appropriate enforcement action. A log will be maintained, indicating the date and time the complaint is received, the officer assigned, and any action taken. MetroCall complaints will be returned by the assigned suspense date with documentation of the action taken. The Traffic Unit handles complaints on the interstate system.

**7.12.7          RECERTIFICATION BY LICENSING AUTHORITY**

If an officer observes an operator who demonstrates physical or mental infirmities that render him/her unsafe to operate a motor vehicle, the officer may request the state to recertify the operator.

To request recertification, the officer will complete a Medical Review Board Affidavit. In the statement section, the officer will list any known, or suspected, medical impairment (e.g. low visual acuity, hearing problems, incoherency, etc.). The officer will also report his/her observations and reasons for the request. If it is the officer's opinion the operator has caused a motor vehicle collision, the officer will attach a photocopy of the collision report to the request form. A copy of this form and its attachments will be retained in the division/section/unit files.

The officer will forward the completed form and its attachments to the appropriate Bureau Commander within his/her chain of command. The commander will forward the information to the Division of Driver Licensing, located in Frankfort, Kentucky. The Division of Driver Licensing will notify the operator of the pending recertification.

**7.12.8          TRAFFIC COLLISIONS** (KACP 23.2)

Officers issuing a citation or making an arrest as a result of a traffic collision will record the assigned incident control number (ICN) on the citation. In the case of injury collisions, the severity of the injuries will be noted in the post arrest complaint section. Information of other persons involved may be listed in the witness section.

Traffic collision data is maintained by Records Management. Electronically-entered traffic collision data will be reviewed and approved by the Data Resolution Unit of Records Management in the KSP Accident Database (refer to SOP 7.2, SOP 7.3, and SOP 7.4). Officers should refer to SOP 7.1 on the requirements for writing these reports.

The Traffic Unit reviews traffic collision data to identify the locations where traffic engineering issues may need to be improved or corrected. The Traffic Unit also reviews traffic collision data and traffic enforcement data to see if increased enforcement results in the reduction of the number of collisions at identified locations.

TRIMARC holds quarterly Freeway Incident Management meetings for District 5 (Jefferson County, Bullitt County, Franklin County, Henry County, Oldham County, Shelby County, and Trimble County) in Kentucky. The Traffic Unit, Louisville Metro Emergency Medical Services (LMEMS), KSP, towing agencies, etc. participate in these meetings to discuss highway closures and traffic-related issues.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  7.12 |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.9**      **DRIVING UNDER THE INFLUENCE (DUI)** (KACP 21.1c, 23.1d)

DUI presents a grave danger to public safety. Given this danger, it is the policy of the LMPD that officers arrest operators where probable cause exists that a violation of DUI has occurred. There are certain circumstances where it is not possible to arrest an operator who has violated these statutes (e.g. hospitalization). In these circumstances, blood evidence will be drawn and an officer will request the approval of a commanding officer before a suspect may be cited in lieu of arrest. Under no circumstances may an officer issue a warning to operators who have committed a DUI violation.

When an officer's observations lead him/her to believe an operator may be committing a DUI offense, the officer will conduct standardized field sobriety tests. If conducting the field sobriety tests poses a danger to the safety of the officer or the operator, the officer may elect not to use them and should make note of such reasons in the post arrest complaint. The officer will take appropriate enforcement action based upon the results of the field sobriety tests and his/her observations.

If the officer arrests the operator and has reason to believe alcohol is the primary influencing factor, he/she will transport the subject, as soon as possible, to the Louisville Metro Department of Corrections (LMDC), if medical attention is not required, and present him/her to the Breath Alcohol Technician (BAT). The technician will take custody of the prisoner. He/she is responsible for requesting the individual take a chemical test and offering the individual the chance to contact an attorney. Officers will not be present during the BAT's observation period of the prisoner. The BAT will prompt the officer by reminding him/her the observation period is about to begin. At this time, the officer will exit the room and remain in the sally port until the testing is complete. After the technician completes the testing, he/she will turn the prisoner back over to the officer, along with the results of the test.

If the officer arrests the operator and has reason to believe the primary influencing substance is not alcohol, or the operator's actions are not consistent with his/her physical condition, he/she will transport the suspect, as soon as possible, to the LMDC, if medical attention is not required, and present him/her to a BAT. If the subject's breath alcohol level is below .08, the arresting officer should consider contacting a Drug Recognition Expert (DRE), through MetroSafe, to evaluate the suspect's condition. Officers will obtain approval of a Traffic Unit commanding officer before contacting a DRE. A blood and/or urine sample may be requested by the BAT, the DRE (if present), or the arresting officer, following the evaluation. The operator must consent to any and all blood, breath, and/or urine tests requested by the officer or he/she will be charged with refusal to submit to a chemical test (KRS 189A.105).

In instances where a subject is suspected of operating a vehicle under the influence of alcohol and his/her breath alcohol level is below .05 at the LMDC, it shall be presumed the defendant was not under the influence of alcohol (KRS 189A.010). The officer will notify a commanding officer and determine the appropriateness of continuing with an arrest. If the decision is made to release the operator, an Administrative Incident Report (AIR) will be completed, via the BlueTeam link, located on the LMPD Intranet, pursuant to SOP 3.1.

Only after complying with all tests requested by the officer, may the operator request, at his/her own expense, to have an independent blood test (IBT) conducted by an authorized medical technician (refer to SOP 7.6).

An operator may only be cited and released for a DUI offense when all of the following conditions are met:

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:   7.12 |
| | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.9         DRIVING UNDER THE INFLUENCE (DUI) (CONTINUED)**

- The operator is to be hospitalized. Hospitalization is defined as placing a person in the hospital as a patient for a period of time. Treatment in the emergency room (ER) does not constitute hospitalization.
- The operator is physically injured to such a degree that he/she is no longer a danger to himself/herself or others due to intoxication and cannot voluntarily leave the hospital. If the operator is still physically capable of leaving the hospital, the officer must remain with the operator until he/she is no longer a danger to himself/herself or others due to intoxication, before citing the operator in lieu of arrest.
- Blood evidence has been drawn. This may be done at the request of the officer or for treatment purposes.
- A commanding officer has granted approval for the operator to be cited in lieu of arrest. In these circumstances, the commanding officer will complete an AIR, via the BlueTeam link, located on the LMPD Intranet (refer to SOP 3.1). For the purpose of determining the appropriateness of issuing a citation in lieu of arrest, an acting sergeant is not considered a commanding officer. An acting sergeant may complete the AIR, listing the commanding officer who authorized issuing a citation in lieu of arrest.

**7.12.10         MOBILE RADAR TRAILERS AND FIXED RADAR SIGNS**

The LMPD utilizes mobile radar trailers to promote roadway safety. Some communities have installed fixed radar signs in problem areas. These devices inform drivers of their current speed and alert drivers when their speed exceeds the posted speed limit. The devices are to be used for informational purposes only and should not be used as a measurement of speed when issuing a citation to a violator.

**7.12.11         HAZARDOUS ROADWAY CONDITIONS**

All officers encountering hazardous roadway conditions are responsible for reporting these conditions to the appropriate agency for corrective action. If an officer discovers a visual obstruction (e.g. debris, defects in the roadway, missing or damaged road signs, lighting, traffic control devices, or roadside hazards), the officer will immediately contact MetroSafe, via radio or telephone. The officer will report the nature of the problem and the exact location. MetroSafe will contact the appropriate agency responsible for addressing or correcting the problem. If the roadway hazard presents a potential danger to motorists, the officer should take the necessary action to address the safety of the motorists and expedite the flow of traffic. If the officer is off-duty, then the officer will request assistance from on-duty personnel. The action taken may require the manual direction of traffic, using temporary control devices requested through MetroSafe or physically removing the obstruction or hazard from the roadway.

Citizen complaints or suggestions regarding traffic engineering deficiencies (e.g. signs, potholes, markings, traffic lights, etc.) should be referred to MetroCall at (502) 574-5000 or 311. MetroCall is responsible for notifying the appropriate agency for improvement or correction.

The Traffic Unit and MetroSafe are responsible for reporting traffic engineering deficiencies and traffic enforcement data to the appropriate agency (e.g. Public Works and Assets, Kentucky Transportation Cabinet, etc.) for improvement or correction.

# Louisville Metro Police Department

| | SOP Number:  7.12 |
|---|---|
| Standard Operating Procedures | Effective Date:  08/09/04 |
| | Prv. Rev. Date: 08/06/18 |
| | Revised Date:   08/01/19 |
| Chapter: Traffic Control and Collisions | Accreditation Standards: KACP: 21.1, 22.1, 22.3, 22.4, 22.5, 23.1, 23.2 |
| Subject:  Traffic Stops and Enforcement | |

**7.12.12          RADIO PROCEDURES**

Members should notify MetroSafe, via a monitored dispatch channel, as soon as possible, of any traffic stop in accordance with SOP 3.8 (Communications Equipment Usage).

**7.12.13          VEHICLE STOP REPORTING FORMS**

Officers will complete a Vehicle Stop Reporting form for every traffic stop, regardless of whether a citation is written or an arrest is made. Officers will complete the form in accordance with SOP 8.8 (Biased Law Enforcement Practices).

**7.12.14          SUPERVISORY REVIEW**

Commanding officers will review the paper citations and arrest slips issued by the officers under their direct supervision. The commanding officer will place his/her code number on the upper right hand corner of the citation, indicating he/she has reviewed the citation. The citation review includes, but is not limited to, the following:

- Missing/incomplete personal information of the offender
- The Vehicle Stop Reporting form control number (if applicable)
- The appropriate charges
- The arrest or citation date, time, and location
- The arrest or citation narrative, statement of probable cause, and elements of the crime
- The valid court date, time, and location
- The report number, if the citation or arrest is related to clearing a reported incident
- Language indicating how the defendant posed a risk of danger (if applicable) (refer to SOP 10.1)
- Language describing how the defendant failed to follow the officer's reasonable instructions (if applicable) (refer to SOP 10.1)
- Language indicating why there are reasonable grounds to believe the defendant will not appear in court (if applicable) (refer to SOP 10.1)
- Legible handwriting

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:  8.8 |
| | Effective Date:  07/20/03 |
| | Prv. Rev. Date: 11/10/17 |
| | Revised Date:  08/01/19 |
| | Accreditation Standards: |
| Chapter: Field Operations | KACP: 30.2 |
| Subject:  Biased Law Enforcement Practices | |

**8.8        BIASED LAW ENFORCEMENT PRACTICES** (KACP 30.2)

**8.8.1        POLICY**

Biased law enforcement practices impair investigative effectiveness, alienate citizens, foster a distrust of law enforcement, and may subject officers to civil or criminal liability. Most importantly, biased law enforcement practices are unethical. The protection and preservation of the constitutional rights of individuals remains one of the paramount concerns of government and law enforcement. Therefore, it is the policy of the Louisville Metro Police Department (LMPD) that all practices are conducted in an impartial and courteous manner, free of bias, and in accordance with applicable laws and the Standard Operating Procedures (SOPs) of this department. The LMPD prohibits any type of biased law enforcement practices.

**8.8.2        DEFINITIONS**

**Biased Law Enforcement Practices:** Engaging in any of the following activities, based solely on an individual's actual or perceived race, ethnicity/national origin, immigration status, language fluency, gender, gender identity/expression, sexual orientation, religion, socio-economic status, housing status, occupation, disability, age, politics, or other similar personal characteristics attributed to an individual as a member of such a group:

- Making discretionary decisions during the course of an enforcement activity
- Initiating a traffic stop, surveillance, detention, or other law enforcement activity
- Targeting particular individuals or groups

**Probable Cause:** The level of evidence, held by a rational and objective observer, necessary to justify logically accusing a specific suspect of a particular crime, based upon reliable objective facts.

**Reasonable Suspicion:** Articulable facts which, within the totality of the circumstances, lead an officer to reasonably suspect criminal activity has been, is being, or is about to be committed.

**8.8.3        OFFICER RESPONSIBILITY**

All investigative detentions, traffic stops, searches, seizures, and arrests will be based upon reasonable suspicion or probable cause.

It is not improper to target suspected criminals based on their conduct, nor is it improper to focus on a person of a particular actual or perceived race, ethnicity/national origin, immigration status, language fluency, gender, gender identity/expression, sexual orientation, religion, socio-economic status, housing status, occupation, disability, age, politics, or other similar characteristics if the officer has suspect information pertaining to any of these characteristics. These characteristics will never be used as the sole basis for reasonable suspicion or probable cause.

Suspect information must be:

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  8.8 |
|---|---|
| | Effective Date:  07/20/03 |
| | Prv. Rev. Date: 11/10/17 |
| | Revised Date:   08/01/19 |
| Chapter: Field Operations | Accreditation Standards: |
| Subject:  Biased Law Enforcement Practices | KACP: 30.2 |

### 8.8.3 OFFICER RESPONSIBILITY (CONTINUED)

- From a credible source.
- Specific characteristic-based information.
- Relevant to the locality or time frame of the criminal activity.
- Specific to particular suspects, incidents, or related to ongoing criminal activities.
- Reasonably merited under the totality of the circumstances.

Providing citizens with an explanation as to why they were stopped improves relations with the community and reduces the perception of bias on the part of the police. Therefore, officers should make a reasonable effort to provide an explanation as to why the citizen was stopped, unless doing so would undermine an investigation or jeopardize the officer's safety (refer to SOP 3.6 and SOP 7.12).

Under no circumstances will an officer detain a suspect for longer than what is reasonably necessary to make reasonable inquiries and either confirm or refute his/her suspicions of criminal activity. Officers will not inquire into the immigration or citizenship status of an individual, except where the inquiry relates to a specific criminal or homeland security investigation.

### 8.8.4 SUPERVISORY RESPONSIBILITY

Supervisors will:

- Familiarize their personnel with this policy and support its provisions.
- Observe officer behavior to identify, and prevent, biased law enforcement practices.
- Immediately report any biased law enforcement practice, in writing, through the appropriate chain of command, to the Chief of Police.

### 8.8.5 REPORTING REQUIRED

All members are required to immediately report any biased law enforcement practice, in writing, through the appropriate chain of command, to the Chief of Police.

### 8.8.6 DISCIPLINE

The LMPD does not condone, or tolerate, biased law enforcement practices. Officers engaging in such conduct will be subject to disciplinary action.

### 8.8.7 VEHICLE STOP REPORTING FORMS

Officers are required to complete a Vehicle Stop Reporting form for every traffic stop, regardless of whether a citation is written or an arrest is made. The only exceptions are motorist assists, road blocks, and traffic accidents. If an eCitation is issued for a traffic accident, members will check "Other" in the Disposition area of

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   8.8 |
| | Effective Date:  07/20/03 |
| | Prv. Rev. Date: 11/10/17 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Field Operations | KACP: 30.2 |
| Subject:  Biased Law Enforcement Practices | |

**8.8.7**        **VEHICLE STOP REPORTING FORMS (CONTINUED)**

the Vehicle Stop Reporting form and enter "accident" in the box. This will amend the information in the Vehicle Stop Reporting form database. Officers should use the following descriptions for searches:

- Consent
- Pat down
- Incident to arrest
- Probable cause
- Other

For traffic stops where a warning or a paper citation is issued in lieu of an eCitation, the officer will complete an electronic Vehicle Stop Reporting form on the LMPD Intranet by clicking on the "Vehicle Stop Form" link. Officers will complete the electronic Vehicle Stop Reporting form by the end of his/her tour of duty. If the officer conducts a stop while off-duty, the officer will complete a Vehicle Stop Reporting form electronically by the end of his/her next tour of duty. Officers will record the control number of the electronic Vehicle Stop Reporting form in the upper right hand corner of their paper citation.

Officers will complete the Vehicle Stop Reporting form, via the Kentucky Open Portal Solution (KYOPS) system, when using the eCitation system. A separate electronic version of the Vehicle Stop Reporting form must be submitted, in lieu of the KYOPS version, if an eCitation is voided.

**8.8.8**        **TRAINING**

Recruits receive training on the various aspects of recognizing and preventing biased law enforcement practices. Training Bulletins are disseminated to officers in order to inform them of legal updates and recent issues regarding biased law enforcement practices. Annual in-service classes are offered on topics relating to biased law enforcement practices.

**8.8.9**        **ANALYSIS**

The Professional Standards Unit (PSU) is responsible for thoroughly investigating complaints of biased law enforcement practices. All findings of the PSU are forwarded to the Chief of Police for final disposition.

The department is responsible for reviewing its biased law enforcement practices SOP on an annual basis in order to identify legal updates, recent issues, and/or citizen concerns which may necessitate a policy revision.

The Vehicle Stop Reporting form data is analyzed and compiled into a report on an annual basis. This report includes a summary of all stops by officers and also includes recommendations for improvement.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:  8.24 |
| | Effective Date:  08/23/04 |
| | Prv. Rev. Date: 11/12/17 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: KACP: 1.4, 30.9 |
| Chapter: Field Operations | |
| Subject:  Warrantless Searches | |

## 8.24        WARRANTLESS SEARCHES

### 8.24.1        POLICY

In special circumstances and limited emergency situations, justification may exist for a Louisville Metro Police Department (LMPD) officer to conduct a search without a warrant. While search warrants are preferred from a legal standpoint, officers are authorized to conduct warrantless searches as outlined in this policy and by existing law. When searching without a warrant, officers must be able to articulate their justification for the search. Warrantless searches will be conducted in an impartial and courteous manner, free of bias, and in accordance with applicable laws and the Standard Operating Procedures (SOPs) of this department.

### 8.24.2        DEFINITIONS

**Consent Search:** A search made by law enforcement officers based on the consent of the individual whose person or property is being searched.

**Exigent Circumstances:** Those circumstances which would cause a reasonable person to believe that a particular action is necessary to prevent physical harm to an individual, the destruction of relevant evidence, the escape of a suspect, or some other consequence impeding legitimate law enforcement efforts.

**Pat Down:** A "frisk," or the external feeling of the outer garments of an individual, for weapons. A pat down will only be conducted on reasonable grounds the individual being subjected to the pat down is armed and dangerous to the officer or others. A pat down does not include manipulating, or grasping, the outer garments or reaching inside of, or opening, the garments (e.g. pockets, jackets, etc.).

**Physical Arrest:** Taking a person into police custody based upon a warrant or, with probable cause, on open criminal charges in accordance with law and this policy.

**Probable Cause:** The level of evidence, held by a rational and objective observer, necessary to justify logically accusing a specific suspect of a particular crime, based upon reliable objective facts.

**Reasonable Suspicion:** Articulable facts that, within the totality of the circumstances, lead an officer to reasonably suspect criminal activity has been, is being, or is about to be committed.

**Search:** An examination of an individual's premises, person, or property in which he/she has a reasonable expectation of privacy. The purpose of the search is discovering contraband, weapons, or other evidence of guilt to be used in a criminal prosecution. A search involves a prying into, or the manipulation of, concealed or hidden places trying to discover something inconspicuous. Items in plain view do not constitute a search (KACP 1.4b). A search will only be conducted pursuant to a warrant, with consent, or under exigent circumstances with probable cause.

**Terry Stop:** A stop of an individual by law enforcement officers based upon reasonable suspicion the individual may have been engaged, is engaging, or is about to engage in criminal activity.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  8.24 |
| --- | --- |
| | Effective Date:  08/23/04 |
| | Prv. Rev. Date: 11/12/17 |
| | Revised Date:   08/01/19 |
| Chapter: Field Operations | Accreditation Standards: KACP: 1.4, 30.9 |
| Subject:  Warrantless Searches | |

**8.24.3      SPECIAL CIRCUMSTANCES** (KACP 1.4c)

**Pat Down Search during a Terry Stop**

Officers may conduct a pat down search of an individual during a Terry Stop if there is reason to believe the subject is armed and dangerous (refer to SOP 3.6). Merely being nervous or in a high-crime area are not sufficient, by themselves, to conduct a pat down search. If, during the pat down, the officer feels something solid which could reasonably be, or contain, a weapon, he/she may reach inside of the clothing and seize the object.

Additionally, if through the officer's touch and experience, he/she immediately recognizes the object as contraband, then he/she may seize it.

If the Terry Stop involves a person in a vehicle and the officer has reason to believe the suspect is armed and dangerous and might gain control of weapons within the vehicle, the officer may search the subject as outlined above and search the passenger compartment of the vehicle, looking only in places where weapons may be hidden. Merely being nervous or in a high-crime area are not sufficient, by themselves, to conduct a search of a vehicle for weapons.

Prior to searching a person, a person's premises, or a person's vehicle, the officer may inquire as to the presence of needles or other sharp objects, in the areas to be searched, that may cut or puncture the officer and offer to not charge a person with possession of drug paraphernalia if the person declares to the officer the presence of the needle or other sharp object (Kentucky Revised Statute (KRS) 218A.500(6)(a)).

If the person admits to the presence of a needle or other sharp object prior to the search, the person shall not be charged with, or prosecuted for, possession of drug paraphernalia for the needle or sharp object or for possession of a controlled substance for residual or trace drug amounts present on the needle or sharp object.

**Search Incident to a Lawful Arrest**

An officer may search a subject immediately after a physical arrest. The officer may search the entire person of the subject and the nearby area from which the subject might have been able to handle a weapon or destructible evidence.

An officer may search a vehicle, incident to a recent occupant's arrest, only if it is reasonable to believe the arrestee might access the vehicle at the time of the search or the vehicle contains evidence of the offense of the arrest (Arizona v Gant). The officer will not search the trunk, motor compartment, or other areas of the vehicle without a warrant, probable cause, or consent.

**Search of a Vehicle Based on Probable Cause**

While search warrants are preferred in any search situation, an officer who has probable cause to believe a vehicle contains evidence of a crime may search the vehicle before, or after, an arrest or without making an arrest. The officer may search the vehicle at the scene where he/she stops it, or otherwise locates it in a public place, or after it has been moved elsewhere by the authorities. In such instances, the officer must be able to explain the exigency of the circumstances.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  8.24 |
| --- | --- |
| | Effective Date:  08/23/04<br>Prv. Rev. Date: 11/12/17<br>Revised Date:   08/01/19 |
| Chapter: Field Operations | Accreditation Standards:<br>KACP: 1.4, 30.9 |
| Subject:  Warrantless Searches | |

**8.24.3       SPECIAL CIRCUMSTANCES (CONTINUED)**

In order to establish probable cause using a detector dog, the canine must be from a law enforcement agency. The Supreme Court of the United States has ruled police officers may only hold a vehicle stopped for a traffic violation while waiting for a canine to search for the amount of time reasonable to conduct the normal business of the traffic stop. Officers may not hold a vehicle for a canine search longer than the time it would reasonably take to conduct the normal business of the traffic stop (e.g. writing citation, running subject's operator's license).

If probable cause is found, the officer may search the entire vehicle, including the glove compartment, trunk, hubcaps, hood area, and containers found within (e.g. bags, boxes, suitcases, etc.), providing only he/she limit his/her search to those areas/containers which could physically contain the seizable item he/she has probable cause to believe is in the vehicle.

If an officer has probable cause to believe a container in a vehicle contains evidence of a crime, but his/her probable cause does not extend to the vehicle itself, the officer is allowed to stop the vehicle, seize the specific container, and search within it, without obtaining a warrant.

For all probable cause searches, including canine searches, the officer will notate on a uniform citation (either for a citation or arrest) the probable cause which led him/her to search the vehicle. If the officer does not complete a uniform citation, the officer will clearly notate on the Consent/Probable Cause Search form (LMPD #06-0036) the probable cause which led him/her to search the vehicle.

A copy of the Consent/Probable Cause Search form will be maintained in the Legal Advisor's Office.

**Entry of Premises without a Warrant**

Officers may legally enter premises without a warrant, or consent, if any of the following exigent circumstances exist:

- Entry of premises in fresh pursuit to arrest: when chasing a suspect after a crime has been committed and the suspect enters a building shortly before the police arrive (KACP 30.9).
- Entry of premises to protect life or health: when there is probable cause to believe someone is injured and needs help or is threatened with injury or death.
- Entry of premises to prevent destruction of evidence: when there is probable cause to believe evidence that could be easily destroyed is on the premises and there is good reason to believe the evidence is being, or is about to be, destroyed.

**Protective Sweeps**

Officers may conduct a protective sweep of a dwelling:

- With consent; or
- Incident to arrest if there is reasonable suspicion other persons may be present; or
- If probable cause exists and there are exigent circumstances.

A "knock and talk" does not automatically give an officer the justification to perform a protective sweep. When a search is authorized by consent, the scope of the search is limited by the terms of its authorization. Any objects

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  8.24 |
| --- | --- |
| | Effective Date:  08/23/04 |
| | Prv. Rev. Date: 11/12/17 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: KACP: 1.4, 30.9 |
| Chapter: Field Operations | |
| Subject:  Warrantless Searches | |

**8.24.3        SPECIAL CIRCUMSTANCES (CONTINUED)**

found and seized in the area/room where a consent to search has been given are admissible at trial as an exception to the warrant requirement. In the absence of consent, officers may not conduct a warrantless search or seizure of additional areas/rooms without both probable cause and exigent circumstances.

In order for a protective sweep to be justified, one (1) of the following must be present:

- Consent
- Reasonable suspicion (must be incident to an arrest)
- Probable cause and exigent circumstances

**8.24.4        CONSENT SEARCH** (KACP 1.4d)

**Persons**

Consent searches of an individual's person can be granted only by the individual to be searched.

**Vehicles and Dwellings**

The use of the Consent/Probable Cause Search form is mandatory for all consent searches of premises or vehicles. An exception to this order would be situations where verbal consent is given to search a vehicle or home and the consent is recorded using one (1) of the following:

- Mobile Video System (MVS) camera (refer to SOP 4.1); or
- Wearable Video System (WVS) camera (refer to SOP 4.31).

If the officer is equipped with either a Mobile Video System (MVS) camera or a Wearable Video System (WVS) camera, the officer may record the verbal consent to search a vehicle in lieu of a form using either system. When recording the verbal consent, the officer will:

- Advise the occupant or owner they have a constitutional right to refuse a search of his/her vehicle.
- Ask the occupant or owner for his/her consent to search the vehicle.

Officers may only ask for consent when they have a reasonable suspicion the person has committed, is in the process of committing, or is about to commit a criminal act. Officers may not ask for consent as a matter of routine. The officer will note on a uniform citation (either for a citation or an arrest) the reasonable suspicion which led him/her to ask for consent to search the vehicle. If the officer does not complete a uniform citation, the officer will clearly notate on the Consent/Probable Cause Search form the reasonable suspicion which led him/her to ask for consent to search the vehicle. Merely being nervous or in a high-crime area are not sufficient factors, by themselves, to ask for consent to search a vehicle.

A copy of the Consent/Probable Cause Search form will be maintained in the Legal Advisor's Office.

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:  8.24 |
| | Effective Date:  08/23/04<br>Prv. Rev. Date: 11/12/17<br>Revised Date:   08/01/19 |
| | Accreditation Standards:<br>KACP: 1.4, 30.9 |
| Chapter: Field Operations | |
| Subject:  Warrantless Searches | |

**8.24.4        CONSENT SEARCH (CONTINUED)**

**Coercion**

Consent searches are only considered legal when consent is given voluntarily by a person with the authority to consent. The person must be aware of what he/she is doing, the area(s) to be searched, and provide consent of his/her own free will.

Officers will not force, threaten, or deceive an individual into consenting to a search (e.g. threatening to seize a vehicle or dwelling while a warrant is obtained and no probable cause exists for obtaining a warrant, etc.). If possible, no more than two (2) officers should be present when obtaining consent.

**Limiting/Withdrawing Consent**

An individual may limit his/her consent to cover only certain areas or may withdraw his/her consent at any time. As soon as the subject indicates he/she wants the search to stop, no further search may be justified as a consent search.

**Consent/Probable Cause Search Form Retention/Submission**

The original hardcopy of the Consent/Probable Cause Search form will be retained by the officer for inclusion in a case file (refer to SOP 8.35). A copy will be forwarded to the Legal Advisor's Office, via interdepartmental mail, for filing. Consent/Probable Cause Search forms are retained pursuant to applicable records retention schedules.

**8.24.5        SEARCH SITUATIONS NOT PROTECTED BY THE FOURTH AMENDMENT**

The following situations are not protected by the Fourth Amendment:

**Open Fields**

An open field is any land area, whether open, wooded, or otherwise, which is not included in the curtilage. An officer may search an open field without a warrant, without probable cause, despite notices or other efforts showing an expectation of privacy and despite the fact the search may constitute a technical trespass.

When in an open field area, the officer may not, on that account alone, search a building, person, or non-abandoned car.

**Public Area**

An officer may search public areas such as roads, sidewalks, public parks, etc. Various commercial establishments, such as bars and retail stores, may also be searched by an officer in areas where prospective customers are allowed, at times when they are allowed to be there and making no closer examination of things therein than an ordinary customer would. However, individuals in public areas have a reasonable expectation of privacy, on their persons and in their luggage and vehicles, while in a public area.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:  8.24 |
| | Effective Date:  08/23/04 |
| | Prv. Rev. Date: 11/12/17 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: KACP: 1.4, 30.9 |
| Chapter: Field Operations | |
| Subject:  Warrantless Searches | |

**8.24.5    SEARCH SITUATIONS NOT PROTECTED BY THE FOURTH AMENDMENT (CONTINUED)**

**Abandoned Property**

An expectation of privacy may be lost either by discarding property in a place where others would have access to it or by disclaiming ownership of the property.

**8.24.6    IMPOUNDED VEHICLES**

Mere legal custody of an impounded vehicle does not automatically create a right to search. In order to search a lawfully impounded vehicle, an officer must have the consent of the owner, exigent circumstances, or a search warrant based on the officer's affidavit the vehicle contains evidence or constitutes the fruit or instrumentality of a crime (KACP 1.4c-d).

Routine inventory searches of impounded vehicles are not permitted. However, any evidence in plain view, seizable under the Plain View Doctrine, may be seized as evidence (KACP 1.4b). Other articles in plain view which are not evidence, but are considered valuable personal property, must be removed and taken to the Evidence and Property Unit (EPU) or removed from plain view within a secured vehicle.

**8.24.7    EXTRACTING EVIDENCE FROM A SUSPECT'S MOUTH**

The use of physical force to search a suspect's mouth for contraband is prohibited, unless:

- A lawful arrest of the person has been made, based upon probable cause;
- There is probable cause to believe the suspect has hidden a seizable item (e.g. illegal drugs) within his/her mouth;
- There is a clear indication a seizable item will be found within the suspect's mouth; and
- Either a search warrant has been issued authorizing an intrusion into the suspect's mouth or exigent circumstances (e.g. imminent destruction of evidence or a medical emergency) exist (KACP 1.4a, c).

Once all of the prerequisites listed above have been satisfied, an officer may use reasonable force to extract the contraband hidden in the suspect's mouth. A commanding officer will be notified and will complete an Administrative Incident Report (AIR), via the BlueTeam link, located on the LMPD Intranet, whenever force is used in these situations (refer to SOP 3.1).

The Conducted Electrical Weapon (CEW) will not be utilized to prevent the swallowing of evidence nor will it be utilized to dislodge or retrieve evidence from a suspect's mouth or other body cavities (refer to SOP 9.1).

If an officer reasonably believes an arrestee has swallowed contraband that could have a negative effect upon his/her health, the officer will seek medical attention for the arrestee as soon as reasonably possible.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   10.5 |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: |
| Subject:  ==Handcuffing and== Prisoner Transportation | KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |

**10.5        ==HANDCUFFING AND== PRISONER TRANSPORTATION**

**10.5.1        POLICY**

This policy establishes guidelines pertaining to ==handcuffing and== prisoner transportation, including on-duty, off-duty, and secondary employment situations. Officers should remember the safety of the prisoner ==or other persons== in their care is their primary responsibility.

**10.5.2        SEARCH OF PRISONERS** (KACP 1.7b)

A person under arrest ==will== be thoroughly searched by each transporting officer.

**10.5.3        INSPECTIONS OF TRANSPORTING VEHICLE** (KACP 1.7c)

The prisoner area of a transporting vehicle ==will== be thoroughly searched for evidence and contraband before, and after, transportation and at the beginning, and end, of each tour of duty.

**10.5.4        TRANSPORTATION EQUIPMENT**

The rear doors of all vehicles used to transport prisoners are modified to prevent opening from the inside and the rear windows are modified to prevent opening from any place other than the driver's seat.

All marked vehicles used for prisoner transport are equipped with a safety barrier separating the prisoner from the officer. Any conversation between the officer and prisoner will not be impeded by the barrier.

Police vehicles that are not equipped with a safety barrier may be utilized as a prisoner transport vehicle based on the severity of the offense, the prisoner's demeanor or the transporting officer's discretion.

**10.5.5        SEATING OF PRISONERS**

In the absence of unusual circumstances, no prisoner should be permitted to sit in the front seat of any transporting vehicle.

In a vehicle without a safety barrier, a single officer ==will== only transport one (1) prisoner. The prisoner ==will== be placed in the passenger-side rear seat. Under no circumstances ==will== a prisoner be placed behind the driver while being transported without a safety barrier.

In vehicles equipped with a safety barrier, no more than three (3) prisoners may be transported at one (1) time.

Any prisoner being transported in a departmental vehicle should be secured with a seatbelt, unless physical handicap or officer safety issues prevent the proper use of a seatbelt (KACP 21.4). This applies to all

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:   10.5 |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: |
| Subject:  Handcuffing and Prisoner Transportation | KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |

**10.5.5          SEATING OF PRISONERS (CONTINUED)**

departmental vehicles, including booking vans. If a seatbelt cannot be properly secured, members should request his/her commanding officer's assistance with arranging alternate transportation.

**10.5.6          PRISONER OF OPPOSITE SEX**

A female prisoner and a male prisoner will not occupy the same vehicle without a commanding officer's approval.

When an officer transports a prisoner of the opposite sex, he/she will notify MetroSafe of his/her beginning and ending odometer readings.

**10.5.7          JUVENILE PRISONERS**

Juvenile prisoners will not be transported in direct contact with adults.

**10.5.8          DECONTAMINATION OF PRISONERS**

Prisoners who have come in contact with hazardous materials (HAZMAT) (e.g. HAZMAT incident, weapons of mass destruction, terrorist attack, clandestine lab) will be decontaminated by the responding HAZMAT or fire department personnel, prior to being placed in the vehicle.

Officers handling contaminated prisoners will use flex cuffs and appropriate personal protective equipment (PPE) gear, when practical, to prevent cross contamination (refer to SOP 12.2).

Commanding officers will complete an Administrative Incident Report (AIR), via the BlueTeam link, located on the Louisville Metro Police Department (LMPD) Intranet, on all contaminated prisoners outlining the type and nature of the exposure (refer to SOP 3.1) and contact a Health and Safety Officer (HSO) to respond to the scene. The (HSO) and the responding HAZMAT or fire department personnel will make the determination as to whether the prisoner requires additional treatment at a medical facility.

**10.5.9          PRISONER TRANSPORTED TO MEDICAL FACILITY** (KACP 1.7f, i)

Prisoners transported to a medical facility by an officer remain the officer's responsibility. The officer will:

- Keep the prisoner in view, whenever possible.
- Accompany the prisoner to the treatment room.

The type and degree of authorized restraint utilized is at the discretion of the officer.  However, prisoners should not be completely unrestrained, unless directed by a physician, because of medical necessity.

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:   10.5 |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: |
| Subject:  Handcuffing and Prisoner Transportation | KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |

**10.5.9        PRISONER TRANSPORTED TO MEDICAL FACILITY (CONTINUED)**

Upon completion of treatment, a medical clearance signed by the physician needs to be obtained and presented to Louisville Metro Department of Corrections (LMDC) personnel.

**10.5.10        PRISONER ADMITTED TO MEDICAL FACILITY** (KACP 1.7f, i)

If a prisoner transported to a medical facility by an officer is to be admitted for treatment, the officer will notify his/her commanding officer. The officer will maintain a vigilant guard as near as possible to the prisoner. The officer should remain in the room with the prisoner, if possible. If medical personnel advises the officer to leave the room, the officer will assume a position immediately outside of the door (refer to SOP 10.3).

The officer will not relinquish custody of his/her prisoner until properly relieved.

**10.5.11        TRANSPORTATION DELAY**

MetroSafe will be advised when an officer transports his/her prisoner by informing MetroSafe of his/her destination, beginning time, and current odometer reading (KACP 1.7d). MetroSafe will also be notified of any delay enroute. The officer will not initiate, or assist in, a vehicular pursuit or other Code 3 response while transporting a prisoner. Only where the risk to third parties is both clear and grave, and the risk of escape or injury to the prisoner is minimal, should an officer stop to render assistance or take other enforcement action (KACP 25.1). Otherwise, an officer transporting a prisoner will proceed directly to his/her official destination without any intermediate stops. Upon arrival, the officer will notify MetroSafe with the ending location, time, and current odometer reading (KACP 1.7e).

**10.5.12        TRANSPORTING DISABLED PRISONERS** (KACP 1.7f)

If the nature of a prisoner's disability prevents the use of a vehicle equipped with a safety barrier for transportation, the officer will request his/her commanding officer's assistance with arranging alternate transportation.

**10.5.13        VISUAL OBSERVATION OF PRISONER**

In order to promote the security and safety of officers, prisoners, and the public, an officer will maintain visual observation of his/her prisoner. Appropriate exceptions may be made to allow the prisoner to use the restroom or to receive medical treatment (KACP 1.7i).

In patrol divisions equipped with temporary detention rooms, a Temporary Detention Room Observation form (LMPD #03-08-0125) will be completed by the custodial officer whenever a prisoner is placed in the temporary detention room. The prisoner's name should be recorded on the Temporary Detention Room Observation form, along with the date and time the prisoner was placed in the temporary detention room and the initials of the

# Louisville Metro Police Department

| | SOP Number:   10.5 |
| Standard Operating Procedures | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| | Accreditation Standards: |
| Chapter: Arrests | KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |
| Subject:  Handcuffing and Prisoner Transportation | |

**10.5.13       VISUAL OBSERVATION OF PRISONER (CONTINUED)**

custodial officer. Officers responsible for the custody of the prisoner will visually observe the prisoner in the temporary detention room and check on his/her welfare at intervals not to exceed 30 minutes. Each observation is to be recorded on the form. The Temporary Detention Room Observation forms are maintained in close proximity to the temporary detention room and filed with the division commander upon final removal of the prisoner from the temporary detention room. Juvenile prisoners will not be placed in a departmental temporary detention room with adults.

**10.5.14       MEALS/RESTROOM**

Under ordinary circumstances, the officer is not responsible for providing a prisoner with a meal or multiple uses of a restroom. If the officer is escorting a prisoner on a long trip (e.g. extraditions), meals and restroom stops should be taken at random times and locations for security reasons.

No prisoner will be directly observed using the restroom unless an officer has reason to believe the observation would prevent harm to the officer or the prisoner, or the opportunity exists for the destruction of evidence or contraband.

**10.5.15       COMMUNICATIONS WITH OTHERS**

Prisoners under escort are not permitted unauthorized visitors or communications.

**10.5.16       RESTRAINING DEVICES** (KACP 1.5, 1.7a)

All persons will be restrained when taken into custody and remain restrained during all phases of transportation. Exceptions are permissible if the investigating officer has reason to believe a greater degree of cooperation may be achieved from the person by being unrestrained. When a prisoner is not restrained, the officer should exercise extreme caution.

The preferred method of restraint is to handcuff an individual behind the back, with his/her palms facing outward. Exceptions are permissible if the officer in charge of the detention feels another accepted method is more appropriate (e.g. extradition, physical impairment). Officers will only use departmentally-approved handcuffs or other departmentally-approved restraining device.

Handcuffs should only be tightened enough to effectively secure the person's wrists. The wrists should be checked for cutting and swelling and the handcuffs loosened, if necessary. All handcuffs will be double-locked. In special circumstances (e.g. patrol divisions without temporary detention rooms), an adult may be handcuffed to a fixed object for a reasonable period of time. Under no circumstances will a juvenile be handcuffed, or secured, to a fixed object.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   10.5 |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: |
| Subject:  Handcuffing and Prisoner Transportation | KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |

**10.5.16        RESTRAINING DEVICES (CONTINUED)**

Age, sex, or physical conditions alone are not the deciding factors as to whether or not to restrain an individual. Officers will consider the nature of a physical or mental disability, sickness, or injury and the severity of the offense charged in determining which authorized restraints should be applied (KACP 30.8).

The following should be considered prior to the application of restraints on such prisoners:

- The potential for escape
- The degree of threat posed by the prisoner to the officer or others
- Whether the use of restraints would increase the severity of injury or aggravate an existing illness or condition

When the use of regular handcuffs is not sufficient (e.g. combative prisoners, prisoners presenting a high escape risk), officers may apply approved leg restraints. Approved leg restraints include the following:

- Hobble restraints
- Padded leather restraints
- Key-locked metal leg cuffs (shackles)
- LR-2 leg restraints

Flex-cuffs may be used as handcuffs or leg restraints, if necessary. All restraints will be used in accordance with LMPD training guidelines. The hog-tying of prisoners is strictly prohibited.

Restraints are to be removed from the in-custody individual at the direction of the LMDC.

**10.5.17        RESTRAINT OF SUBJECTS NOT UNDER ARREST**

For the safety of the officer and the subject, an officer may occasionally need to restrain a person who is not under arrest. Officers will not restrain subjects who are not under arrest as a matter of routine. Restraining subjects who are not under arrest may cause the subject concern and elicit negative attitudes towards law enforcement. Therefore, officers should use sound judgement when restraining subjects who are not under arrest. Officers should only do so when the officer has a reasonable and articulable belief the subject presents a danger to the officer or another person. Factors the officer may consider include:

- The subject's physical behavior.
- The officer's and subject's physical size and ability.
- The subject's statements.
- The presence and number of other subjects on-scene.
- The subject's interactions with witnesses or other bystanders.
- Prior knowledge of the subject's history of assaulting law enforcement officers.
- Prior knowledge of the subject's history of flight from law enforcement officers.
- Probable cause to believe the subject has committed an arrestable offense.
- The nature and underlying potential charges of a search warrant being served.
- Physical or verbal indicators the subject may tamper with or destroy evidence of a crime.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:   10.5 |
| --- | --- |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |
| Subject:  Handcuffing and Prisoner Transportation | |

**10.5.17        RESTRAINT OF SUBJECTS NOT UNDER ARREST (CONTINUED)**

- The presence and number of backup officers on-scene.

Merely being in a high-crime area or being the subject of an investigative stop are not sufficient factors, by themselves, to restrain a person who is not under arrest. Officers will not restrain persons who are not under arrest as a matter of routine.

Officers should inform the person they are not under arrest prior to restraining the subject. If circumstances change and the subject does become under arrest, the officer should inform the person they are now under arrest.

Officers should only restrain the subject for the time reasonable to mitigate danger to the officer or others.

**10.5.18        CARE OF SUBDUED PRISONER** (KACP 1.5)

Care must be taken when it becomes necessary to subdue an unruly prisoner or a prisoner who may be under the influence of alcohol or drugs. It is important to understand pre-existing factors, along with a subject's body position when subdued or in transit, can compound the risk of sudden death.

The inappropriate placement of a person may obstruct the airway and cause positional asphyxia. A person in the face down position or leaning over may experience trouble breathing. The person's anatomy (body type), mental condition, and/or drug and alcohol use may also increase the risk of breathing difficulty. These conditions, coupled with a prior violent struggle and the prisoner being handcuffed behind the back, can make him/her vulnerable to death by positional asphyxia.

A prisoner will not be placed in control restraints and allowed to remain lying on his/her back or stomach. A prisoner will not be placed leaning forward in a sitting position with hands and legs restrained together. Either of these positions can contribute to obstruction of the airway, resulting in positional asphyxia. Officers should not put weight on a person's back, such as with their knees, for a prolonged period of time, as this adds stress to the respiratory muscles and inhibits movement of the diaphragm and rib cage.

In order to minimize the potential for positional asphyxia death, officers should take the following precautions:

- As soon as a person is handcuffed, move him/her off of his/her stomach.
- Ask if he/she has used drugs or alcohol or suffers from a disease that can cause breathing difficulties.
- Monitor the person carefully and obtain medical treatment, if necessary. Monitor the person by watching the three (3) ABCs: airway, breathing, and circulation:

  o  Airway – path is free of obstruction and allows the flow of air to the lungs
  o  Breathing – air flows to, and from, the lungs
  o  Circulation – heartbeat and pulse are present

- When the prisoner is turned over to the LMDC facility or another authority, the officer will notify the receiving authority of existing medical problems.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:   10.5 |
| --- | --- |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |
| Subject:  Handcuffing and Prisoner Transportation | |

**10.5.18        CARE OF SUBDUED PRISONER (CONTINUED)**

It is not necessary to complete an AIR for each occurrence where a person is restrained in the absence of unusual circumstances. In the event a restrained individual is the subject of an AIR, care should be taken to include the following information in the description section (refer to SOP 3.1):

- Type of restrained position
- How long the subject was face down or restrained
- How the subject was transported and in what position
- What observations were made of the subject
- Duration of the struggle, if any
- Emergency Room (ER) observations

In the event an unruly prisoner has been subdued, a commanding officer should be contacted to determine if an uninvolved officer should transport the prisoner.

**10.5.19        DELIVERY TO LMDC** (KACP 1.7g)

No officer will carry firearms into a detention facility. Firearms will be secured in designated storage areas.

Prisoners will be delivered to the LMDC after administrative, investigative, and medical needs are fulfilled. All necessary paperwork will be given to the LMDC.

If a prisoner under the custody of one (1) officer is released for transport to another officer, the transporting officer will place his/her code number and initials in the lower right corner of the citation.

Officers driving unmarked departmental vehicles to transport prisoners to the LMDC will give their name, rank, and agency, via the intercom, before access to the sally port is granted. Moreover, officers not in their official uniform or in plainclothes will be required to display their official credentials to the exterior control room officer prior to access.

Once a prisoner has been delivered to the LMDC, an arrest history can be printed by accessing the Inmate Management System (IMS) at the LMDC and printing the Master Card Summary. This can be used to document the transfer of custody to the LMDC.

**10.5.20        DEFERRAL OF PRISONER BY LMDC DUE TO INTOXICATION**

Officers will not cite an arrestee who has been refused admittance to the LMDC due to drug or alcohol intoxication levels, regardless of the charges placed on the individual. The arresting officer will take the arrestee to the hospital for treatment purposes. After the officer has received a medical clearance from the hospital, he/she will take the arrestee back to the LMDC.

A medical clearance does not mean the arrestee is no longer a danger to himself/herself or others. The medical clearance serves to document the arrestee's life is no longer in danger due to his/her intoxication level.

# Louisville Metro Police Department

| Standard Operating Procedures | SOP Number:   10.5 |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |
| Subject:  Handcuffing and Prisoner Transportation | |

**10.5.21**       **SECURITY RISKS** (KACP 1.7h)

Should the arresting officer determine his/her prisoner poses a security or suicide risk, the officer will clearly note that fact on the face of the Uniform Citation.

Should the arresting officer surrender his/her prisoner for transportation, the officer will make the transporting officer aware of the security or suicide risk. When security risks dictate, two (2) officers may be assigned for transport.

**10.5.22**       **INTERSTATE TRANSPORTATION**

If a prisoner is to be transported interstate, the documentation will include either a properly executed Governor's warrant or a properly executed waiver (refer to SOP 10.1).

If a prisoner poses an escape threat, suicide risk, or other security risk, that information will be clearly indicated on all transportation documents.

Appropriate arrest and transportation documentation will accompany all prisoners.

**10.5.23**       **ESCAPE OF PRISONER** (KACP 1.7k)

Officers are required to take every precaution in order to prevent the escape of prisoners in their custody.

If an escape should occur, the following steps will be taken:

- An immediate attempt to capture the escapee by the officer(s) involved, if doing so does not pose a threat to the safety of the officer(s) or the general public.
- The officer will notify MetroSafe and his/her commanding officer of the escape.
- MetroSafe will notify patrol units of the following:

  o  Name of escapee
  o  Description of escapee
  o  Last known direction of escapee
  o  Local address of escapee
  o  Charges on escapee
  o  Description of any accomplices
  o  Vehicle descriptions

- Patrol cars will set up a search pattern, if appropriate.
- Obtain appropriate warrant(s) for the escapee.
- Significant activity notification email is sent.

# Louisville Metro Police Department

| | |
|---|---|
| **Standard Operating Procedures** | SOP Number:   10.5 |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: |
| Subject:  Handcuffing and Prisoner Transportation | KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |

**10.5.23      ESCAPE OF PRISONER (CONTINUED)**

In the event of an actual escape, the commanding officer will respond and take command of the situation. If the escape occurs out of the custodial officer's assigned division, a commanding officer from the affected division will be advised of the escape and will respond to the scene.

When a prisoner escapes custody, the custodial officer will submit a memorandum and a commanding officer will complete an AIR, via the BlueTeam link, located on the LMPD Intranet, advising of the escape (refer to SOP 3.1).

**10.5.24      LOUISVILLE METRO EMERGENCY MEDICAL SERVICES (LMEMS) TRANSPORTS**
          (KACP 1.7i)

When a prisoner must be transported by LMEMS, an officer may accompany the prisoner in the LMEMS vehicle when requested by LMEMS, or if deemed necessary by the officer. Officers will maintain custody of the prisoner while he/she is transported to the medical facility (refer to SOP 10.5.9 and SOP 10.5.10).

**10.5.25      TRANSPORTING PRISONERS FOR OFF-DUTY OFFICERS**

If an officer makes an off-duty arrest that is not the result of secondary employment, an on-duty officer will take charge of the prisoner for transportation purposes.

**10.5.26      TRANSPORTATION OF PRISONERS RESULTING FROM SECONDARY EMPLOYMENT**

In the absence of exigent circumstances, all persons arrested by an officer as a result of secondary employment will be transported by the arresting officer. If the arresting officer has received permission to use a departmental vehicle for secondary employment and the arresting officer drove a departmental vehicle to the secondary job, the officer will transport the prisoner. In situations where an officer working secondary employment did not drive a departmental vehicle to the secondary job, on-duty LMPD personnel will transport the prisoner. The arresting officer who is working secondary employment will immediately drive to the booking clerk to relieve the transporting officer. The department will not transport those individuals arrested by other law enforcement agencies as a result of secondary employment.

**10.5.27      AWOL PERSONS**

If a subject is found by an officer to be a walk-away from a mental treatment facility, a Crisis Intervention Team (CIT) officer will be notified and respond to the scene (KACP 30.8).

If an officer encounters a juvenile who is absent without leave (AWOL) from a facility, the officer has the option of returning the juvenile to the facility or detaining him/her and taking him/her to Louisville Metro Youth Detention Services (LMYDS), located at 720 West Jefferson Street, placing the appropriate charges on the juvenile. The

# Louisville Metro Police Department

| | |
|---|---|
| Standard Operating Procedures | SOP Number:   10.5 |
| | Effective Date:  06/11/03 |
| | Prv. Rev. Date: 01/23/17 |
| | Revised Date:   08/01/19 |
| Chapter: Arrests | Accreditation Standards: KACP: 1.5, 1.7, 21.4, 25.1, 30.8 |
| Subject:  Handcuffing and Prisoner Transportation | |

**10.5.27       AWOL PERSONS (CONTINUED)**

officer will notify the National Crime Information Center (NCIC) Unit at (502) 572-3480 that the juvenile has been located.

**10.5.28       PRISONER IDENTIFICATION (**KACP 1.7j)

Before transporting a prisoner to another location or facility, the transporting officer will view the prisoner's identification through booking records, identification numbers, photographs, or other appropriate means to verify the proper person is being transported. The appropriate documentation will accompany the prisoner during transport.




# Louisville Metro Police Department
## Consent Search Form

Date: _____

Time: _____

I, _____ , knowing that I have a constitutional right to refuse a

search of my:  ☐  Premises located at: _____

and/or  ☐  Vehicle described as follows: _____

hereby authorize Officer: _____

of the Louisville Metro Police Department (LMPD) to conduct a complete search of these premises
and/or vehicle concerning:

<br>
<br>

and take from there any evidence pertaining to this investigation or stop.


Signed: _____

Witness: _____

Witness: _____


| | | |
|---|---|---|
| Was the Wearable Video System (WVS) used to record? | ☐ Yes | ☐ No |
| Was the Mobile Video System (MVS) used to record? | ☐ Yes | ☐ No |
| Was the subject removed from the vehicle? | ☐ Yes | ☐ No |
| Was the subject handcuffed/restrained? | ☐ Yes | ☐ No |
| Was the subject seated on the ground? | ☐ Yes | ☐ No |
| Was a canine used to search? | ☐ Yes | ☐ No |

List all property removed from the premises and/or vehicle below:

| |
|---|
| |
| |
| |
| |
| |
| |


Officer's Signature: _____   Code #: _____

Sergeant's Signature: _____   Code #: _____

Does the search meet departmental policy?  ☐ Yes  ☐ No
If applicable, did the lieutenant review the video of the canine search?  ☐ Yes  ☐ No

Lieutenant's  Signature: _____   Code #: _____

LMPD #06-0036
Rev. 08/19

 

# Louisville Metro Police Department
## Probable Cause Search Form

Date: _____

Time: _____

Officer: _____     Code #: _____

I have probable cause to search the vehicle described as follows and take from there any evidence pertaining to this investigation or stop:

Officers will sufficiently describe the probable cause for conducting the search (including the use of a canine):

| | Yes | No |
|---|---|---|
| Was the Wearable Video System (WVS) used to record? | ☐ | ☐ |
| Was the Mobile Video System (MVS) used to record? | ☐ | ☐ |
| Was the subject removed from the vehicle? | ☐ | ☐ |
| Was the subject handcuffed/restrained? | ☐ | ☐ |
| Was the subject seated on the ground? | ☐ | ☐ |
| Was a canine used to search? | ☐ | ☐ |

List all property removed from the premises and/or vehicle below:

| |
|---|
| |
| |
| |
| |
| |
| |
| |

Officer's Signature: _____

Sergeant's Signature: _____     Code #: _____

Does the search meet departmental policy?     ☐ Yes   ☐ No
If applicable, did the lieutenant review the video of the canine search?   ☐ Yes   ☐ No

Lieutenant's  Signature: _____     Code #: _____

LMPD #06-0036
Rev. 08/19