```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF KENTUCKY
                         LOUISVILLE DIVISION


UNITED STATES OF AMERICA,     )    Case No. 3:17-CR-00037-DJH
                              )
         Plaintiff,           )
                              )
v.                            )
                              )
CHEROSCO BREWER,              )
                              )    January 3, 2019
         Defendant.           )    Louisville, Kentucky


                          * * * * *

             TRANSCRIPT OF FINAL PRETRIAL CONFERENCE
                 BEFORE HONORABLE DAVID J. HALE
                   UNITED STATES DISTRICT JUDGE

                          * * * * *

APPEARANCES:

For United States:         Erin G. McKenzie
                           Corinne E. Keel
                           U.S. Attorney's Office
                           717 West Broadway
                           Louisville, KY 40202

For Defendant:             David S. Mejia
                           310 East Broadway, Suite 201
                           Louisville, KY 40202



[Defendant present.]



                    Dena Legg, RDR, CRR, CCR-KY
                       Official Court Reporter
                       232 U.S. Courthouse
                       Louisville, KY 40202
                         (502) 625-3778

Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

1      (Begin proceedings in open court at 10:14 a.m.)

2          DEPUTY CLERK:  3:17-CR-37, United States of America
3  versus Brewer.

4          MS. MCKENZIE:  Good morning, Your Honor.  Erin
5  McKenzie and Corinne Keel on behalf of the United States.

6          MR. MEJIA:  Good morning, Judge.  Happy new year.  I'm
7  David Mejia.  Cherosco Brewer is seated to my left.

8          THE COURT:  Good morning.  We're here for our final
9  pretrial conference, and I presume that both sides at this point
10  are ready to go to trial next week; is that correct?

11          MS. MCKENZIE:  We are, Your Honor.

12          MR. MEJIA:  Yes, sir.

13          THE COURT:  So we have a number of items that we need
14  to talk about.  Some that I have in mind, typical pretrial
15  issues and housekeeping issues that we need to walk through, and
16  then we'll take some time to hear from you-all as to what, if
17  any, issues you have identified that we need to discuss.

18     Let's just start with jury selection.  I understand at this
19  point we have 55 jury pool members that have received notice
20  that they need to come in on the 7th.  That's a fairly typical
21  number.  I expect the yield on that 55 to be somewhere in the
22  neighborhood of 51 or 52.  We always lose two or three for
23  unforeseen reasons.

24     Now, I think you-all have said that you expect this to be a
25  two to three-day trial; is that right?

1    MR. MEJIA:  Yes, sir.

2    MS. MCKENZIE:  Yes.

3    THE COURT:  So I think we will seat only 13 with one alternate, unless you-all have a reason that you think we need to seat an additional alternate.

6    MS. MCKENZIE:  I'm fine with 13.

7    MR. MEJIA:  Thirteen sounds right.

8    THE COURT:  So under Rule 24 then, that will give each side one additional peremptory, a total of seven for the Government and 11 for the defendant.

11   I think you-all are largely familiar with how I typically conduct jury selection.  I will do the questioning.  I will review the submitted questions.  I typically find at least a few helpful suggested questions.  I will include those.

15   We will -- on questions that call for sensitive or personal information, we will ask the members of the pool to approach the bench.  The defendant will be afforded a listening device so that he can hear any exchanges that occur at the bench.

19   The lawyers will approach for those responses at the bench, and I will allow, when appropriate, some limited follow-up questions from counsel at the bench.

22   It's my practice to not release individuals in the jury pool during the process.  My preference is, I believe, based upon a best practice approach, which is to ask you-all to take very good notes.  I will be taking notes and I will ask you-all to

1    take very good notes.  And then we will work through all of the
2    reasons given for non -- well, all the reasons given for
3    scheduling issues, or family, or medical-related issues that
4    might supply a basis for a potential juror to be released, but I
5    will not release them during the process.
6        We will -- I like to tell the jury pool that there are,
7    essentially, three ways that they will not be on the jury.  One
8    is that they are excused for cause, either supplied by them as a
9    result of a conflict or supplied by them in terms of an
10   inability to be fair to either one or both sides; and the second
11   being the use of a peremptory, for which no reason need be
12   given; and the third being simply the luck of the draw.
13       And I tell the jury pool members those are the three ways
14   that one does not -- the three ways that one -- any one of which
15   would cause one to not be selected, but it will not be specific.
16   In other words, they will not leave the courtroom knowing why
17   specifically they were not selected.  So I will remind you next
18   week to take good notes.
19       We will seat the 13 members of the jury.  We will not
20   identify the alternate.  My preference, again -- I think it's
21   most fair to the jury.  I think it is a better -- again, a best
22   practice for all 13 to believe that they are fully responsible
23   jurors.  And I think it's better for the parties to have 13
24   fully engaged, rather than having 12 engaged and one
25   disappointed that they're sitting there in an alternate status.

1    That alternate will then be selected, again, by random draw on
2    the wheel at the close of the final instructions.
3        So any objections to the voir dire procedure that I've just
4    outlined?
5              MR. MEJIA:  None here.
6              MS. MCKENZIE:  None.
7              THE COURT:  I don't have anything else to add with
8    respect to jury selection.
9        Let's talk, Mr. Mejia, about *Missouri v. Fry*.  I think it
10   would be appropriate for us to put into the record, first of
11   all, whether a plea offer has been made by the Government to
12   Mr. Brewer.  Mr. Brewer, obviously, is present here in the
13   courtroom.
14       I do not need to get into the substance of that offer, but I
15   think, under *Missouri v. Fry*, we would be well served to make a
16   record that a plea offer has been communicated, that Mr. Brewer
17   has been advised of that plea offer and has declined the plea
18   offer in favor of a trial.  So can you confirm that a plea offer
19   has been made to Mr. Brewer?
20             MS. MCKENZIE:  Yes, Your Honor.  This predates even
21   Mr. Mejia's appearance on the case.  I had negotiated with
22   Mr. Kamenish and Mr. Barton.  I had communicated an offer.  That
23   offer was rejected.  When Mr. Mejia got on the case, we had
24   discussions about that offer.  I let him know what the offer had
25   been and that while I didn't consider it to still be on the

```
 1   table, if that was something that he thought was worth pursuing
 2   after talking to Mr. Brewer to let me know.
 3           THE COURT:  Mr. Mejia, do you have anything to add to
 4   that?
 5           MR. MEJIA:  I just confirm what she's just described.
 6   When I filed my appearance substituting for Mr. Kamenish and
 7   Mr. Barton, I was made aware by both of them, as well as
 8   Mr. Brewer, that an offer had been made and rejected.
 9   Mr. Brewer and I discussed that offer, and he confirmed to me
10   that that was his position, that he was aware of what was being
11   offered and he was rejecting that, both through Mr. Kamenish and
12   Barton and through me.  Should we say what that was?
13           THE COURT:  No.  I don't think that the court should
14   get involved --
15           MR. MEJIA:  Okay.
16           THE COURT:  -- in plea negotiations.  And so I want
17   Mr. Brewer to understand that the purpose of my inquiry is not
18   to flesh out what the offer was.  That's not my role.  The
19   purpose of the inquiry is simply to ensure for purposes of the
20   record that if an offer was made -- and the Government and you
21   have confirmed that -- that it was communicated to Mr. Brewer,
22   and so you've confirmed that as well.
23       And, Mr. Mejia, I will simply ask you if you believe that
24   your client's rejection of that offer was an informed rejection
25   and was done with the benefit of counsel.
```

```
1              MR. MEJIA:  I believe it was informed by prior
2    counsel, and I would inform the court that we've had an adequate
3    opportunity to discuss the charges, to discuss the consequence
4    of a conviction in terms of mandatory minimum punishment
5    applicable to his case.  And with that awareness, he chooses to
6    go forward to trial by jury.
7              THE COURT:  That's fine.
8        Mr. Brewer, I'm not going to ask you to respond to me, but
9    if at this point you need to speak with Mr. Mejia, I'm happy to
10   take a break.
11       You've now heard this exchange.  There is a Supreme Court
12   case which holds -- well, I won't get into all of that.  I'm
13   just -- I'll leave that part for Mr. Mejia, but, essentially,
14   trial courts like this one are guided by that, directed by that
15   holding.  And so we want to make sure that if an offer was made,
16   you are aware of it, and that if you have decided not to accept
17   it, that you have done so knowingly, that is you received the
18   information from your counsel that you needed in order to decide
19   not to accept the plea offer.
20       The nature of the plea offer is not my concern, and so I'm
21   not going to get into all of that.  But if you need a minute or
22   longer to confer now with Mr. Mejia, I'll ask you to do that.
23             MR. MEJIA:  Why don't you just give us a moment,
24   Judge.
25             THE COURT:  Sure.
```

1          MR. MEJIA: Why don't we just -- I would -- in
2    caution, why don't we take a five-minute break.
3          THE COURT: That will be fine.
4          MR. MEJIA: I'll talk to him. Thank you, sir.
5          THE COURT: I'll step out for five minutes.
6       (Recess at 10:26 a.m. until 10:36 a.m.)
7          THE COURT: Mr. Mejia, anything else we need to talk
8    about with respect to the issues presented by *Missouri v. Fry?*
9          MR. MEJIA: No. I can reconfirm, Your Honor, our
10   previous conversation that he is aware of the offer that was
11   given. He understands the colloquy now as I've explained it to
12   him, and he elects to go forward to trial by jury.
13         THE COURT: That's fine. Let's then talk about a
14   couple of other procedural issues. Back some time ago -- I
15   believe it's Docket Number 66 -- I granted the defense motion to
16   bifurcate. So I believe that what we will do here is we will
17   try counts -- let's see -- 2 through 4 in front of the jury
18   without mentioning Count 1, without any proof being offered of
19   the defendant's prior felony conviction in the Government's
20   case-in-chief.
21      And then after receiving the jury's verdict on those counts,
22   we can at that point inform the jury that there is one more
23   matter for them to decide, and we can then put the issue of the
24   felon in possession count in front of them. I believe it's
25   Count 1; is that right?

1          MR. MEJIA:  Yes, sir.

2          THE COURT:  We can discuss it during the jury's

3    deliberation, how you-all wish to proceed at that point.  I

4    think we probably should not decide every aspect of that process

5    now.  I think it will be informed a little better by how the

6    proof comes in and the Government's position at that point, but

7    it seems to me that there shouldn't be very much more to come in

8    on a felon in possession.  It is the same firearm that is the

9    subject of the other counts; is that correct?

10         MS. MCKENZIE:  That's correct, Your Honor.

11         THE COURT:  So that proof will have come in.  The only

12   proof, it seems to me, that would be necessary would be the

13   defendant's status as a prohibited felon.

14      And, Mr. Mejia, I will ask you at that point whether you-all

15   intend to stipulate to that or, if not, then the jury will need

16   to hear proof.

17      I'll wait -- you know, if counsel thinks that it's

18   necessary, to proceed in an orderly manner, to have a second-

19   round, very brief opening statements in order to frame the

20   remaining issue for the jury, that's something I will consider

21   at the time.  I'm not sure it will be.  I think we'll talk about

22   that then.

23      I think, also, it will not be necessary -- it seems to me it

24   will not be necessary for me to repeat all of the procedural and

25   many of the substantive instructions that the jury will have

1    just received.  There will be some specific to that count and a
2    reminder of the prior instructions given, but this will be, I
3    think, informed also by the schedule.
4        If we have to come back the next morning to do this, then
5    that might change our thinking on the extent to which we repeat
6    ourselves versus a jury returning a verdict on the first counts
7    in the morning and then in the afternoon being asked to deal
8    with the remaining count.
9        Any questions about that?  Any suggestions to that likely
10   scenario?
11            MR. MEJIA:  We've already discussed it and I think
12   that we'll be looking towards a stipulation and a swifter end to
13   the case in less time and complication than will be needed.
14            THE COURT:  That's fine.  That may be the most
15   efficient way to do it.  And if both sides agree to that, I'm
16   not going to have any problem with that.
17       Let's see.  Let's talk about jury instructions.  I've
18   received the Government's instructions.  What I anticipate doing
19   is we will get you a -- we will, of course, utilize the new
20   Sixth Circuit pattern instructions, and I will consider what's
21   been submitted.
22       I will get you draft instructions as early as possible
23   during the trial.  I know it will be difficult for you to review
24   them while the trial is ongoing, but I'll get them to you as
25   early as possible.  They will contain the very typical form

```
 1   general instructions, as well as the pattern instructions
 2   addressing the substantive counts, and then we will schedule a
 3   conference outside the hearing of the jury to discuss
 4   instructions, hear any objections and have those ready to go.
 5        I typically like to give -- to divide the instructions and
 6   give the general instructions and substantive instructions with
 7   respect to the counts first, and then allow counsel to close,
 8   and then give final procedural instructions to the jury after
 9   closing.  I typically send them back with one copy of the jury
10   instructions and the verdict form, and I think that that works
11   well.
12        Any questions or objections about that process?
13             MS. MCKENZIE:  No.
14             MR. MEJIA:  No, not from this side.  Probably in line
15   with the circuit's and conforming instructions to proof, I will
16   be drafting a theory of defense instruction.  Obviously, it's an
17   option to do that, and I will be providing that to the court
18   before the close of evidence.
19             THE COURT:  Well, I'm going to need it before the
20   close of evidence.
21             MR. MEJIA:  Okay.  I'll get it to you during the
22   trial.
23             THE COURT:  I think it's late now, so I'm going to
24   need you to get that submitted as soon as you can.  If it needs
25   to be modified as a result of the proof, then obviously --
```

1     MR. MEJIA: I'll have a draft for you either today or
2  by latest tomorrow.
3     THE COURT: That will be fine.
4  I have reviewed the Government's proposed exhibit list. Are
5  there any anticipated evidentiary issues with respect to any --
6  anything that's on the list?
7     MS. MCKENZIE: The only issue that we have regarding
8  the exhibit list -- the Government intends to play some portions
9  of the body camera video for some of the officers testifying,
10 and Mr. Mejia had indicated that he was working on transcribing
11 his copies of that video so that he could identify anything that
12 he finds objectionable. So I have not -- I've not burned clips
13 to disks. I don't have those clips ready at this time because
14 I'm waiting to hear from the defense about any material that
15 they think needs to be excluded.
16    MR. MEJIA: I did broach the subject with the
17 Government just recently. There are comments made by officers
18 during the course of the stop that I think should not be played,
19 and the Government, I think, agrees with me should not and will
20 not be played. I just need to identify those specifically for
21 the Government. Comments by police officers such as "There's a
22 lot of shootings in this area. There's a lot of -- there's a
23 lot of homicides here. You'll have to assist us, if you will,
24 we ask you." The dialogue about searching for weapons and the
25 officers' comments about a lot of shootings recently, I don't

1 think that that's something that needs to be presented to this
2 jury, and I think that we can agree upon that.
3     The transcriptions that I'm doing, it's a process. And if
4 we can complete those by tomorrow, I'll have them to the
5 Government. As Your Honor I'm sure is aware, they're given to
6 the jury by agreement of the parties as aid and are not evidence
7 and are not exhibits and don't go to the jury in deliberation.
8 They're simply an aid as they listen to an audio recording.
9     MS. MCKENZIE: And I can't state a position on whether
10 they should be given to the jury until I see them.
11     THE COURT: We're awfully late in the process --
12     MR. MEJIA: Okay.
13     THE COURT: -- to be hashing out transcripts of video
14 surveillance.
15     MR. MEJIA: If we can't agree then, of course, it's
16 moot. We won't be using them.
17     THE COURT: That's fine. Everything else you
18 anticipate having the proper foundation and otherwise unaware of
19 any likely objections to come?
20     MS. MCKENZIE: Yes, Your Honor, and we've examined the
21 physical evidence together. I submitted a couple of proposed
22 stipulations to the defense that may help streamline parts of
23 the trial, and my understanding is that we're going to be able
24 to have an agreement on those.
25     One would be regarding the firearm's functionality and the

1    fact that it has crossed state lines.  Another would be that --
2    the chain of custody and weight on the narcotics.  We discussed
3    that before we went on the record.  I just -- I'm waiting to get
4    confirmation.
5            THE COURT:  Do you need to prove chain of custody?
6            MS. MCKENZIE:  No.  It just -- it helps cut out some
7    witnesses.
8            THE COURT:  I see.  Typically, of course, all you need
9    to do is prove --
10           MS. MCKENZIE:  It is the same drugs that --
11           THE COURT:  Right, and not tick a box for everyone
12   who's possessed it --
13           MS. MCKENZIE:  Right.
14           THE COURT:  -- on the law enforcement side during the
15   interim period but --
16           MS. MCKENZIE:  Right.
17           THE COURT:  That's fine.  If the parties choose to
18   proceed by stipulation in order to streamline certain parts of
19   the trial, that's fine.  I would ask you to submit what you have
20   by close of business tomorrow, along with any suggestion.
21       A stipulation can be handled in a couple of different ways.
22   My suggestion is typically -- I'm not wed to this, but I think
23   the cleanest way to handle a stipulation is, either at the point
24   in the trial when it is most relevant to the context, simply
25   inform the jury that the parties have agreed, inform them that

1  it is called a stipulation, and read what the parties have
2  submitted as an agreed upon fact and tell the jury they can
3  accept that as true based upon the agreement of the parties.
4  It's really just that simple.
5       In a shorter trial, when there are multiple sort of
6  technical stipulations, it's also just as easy and efficient to
7  read them at the end of the proof.  And, again, it really
8  doesn't matter to me if counsel has a preference as to when we
9  do that.  I'm open to that.  We can wait and talk about that
10 Monday morning.  But to the extent that you have that tomorrow,
11 I would ask you to submit it.  Anything else with respect to
12 exhibits or physical evidence?
13           MS. MCKENZIE:  I don't believe so.
14           MR. MEJIA:  Nothing here.
15           THE COURT:  I've also reviewed the Government's
16 witness list.  It shows about 10 names.  And I'm guessing that
17 we're talking somewhere in the neighborhood of about six hours
18 for these witnesses; is that right?
19           MS. MCKENZIE:  Yeah, that's my best guess.
20           THE COURT:  And, Mr. Mejia, I will ask you if you are
21 able to tell me at this point -- or if you're not or don't want
22 to, that's fine too -- whether you anticipate having any
23 witnesses to offer?
24           MR. MEJIA:  If I have a witness, it will be very short
25 and it will be one or two.

1               THE COURT:  All right.  That's all I have on my list.
2    Do you-all have anything that you would like to bring up?
3               MR. MEJIA:  I'm wondering, as to the first point, the
4    jury list that you had referred to, whether that's available to
5    us today, tomorrow, or before Monday?
6               THE COURT:  I'm sure it will be.
7               MR. MEJIA:  Okay.
8               DEPUTY CLERK:  They're ready.
9               THE COURT:  They're ready?  Okay.  Anything else?
10              MS. MCKENZIE:  Your Honor, I don't know if you want to
11   address -- Mr. Mejia had approached me regarding a possible
12   agreement to limit some of the witness testimony.  We don't have
13   an agreement to present to the court.  I think there are certain
14   things that he would like witnesses not to say.  I'd asked him
15   to put something in writing regarding that so that --
16              THE COURT:  I'm not sure I'm following exactly.
17   What --
18              MR. MEJIA:  I'll try to articulate it.  I had asked
19   the Government if they would instruct the officers, different
20   from the motion to suppress where it's material and relevant,
21   not at trial to describe these two places where the vehicle
22   stops occurred as high crime areas of a lot of shootings, and
23   violence, and homicides, and drug trafficking.  I don't believe
24   that that's proper in the trial of the case itself.
25          While it may be entirely relevant and material on the

1  suppression issue, my experience is that these kinds of comments
2  by arresting officers aren't allowed, and I thought they would
3  agree to that. I can certainly put it in writing for them.
4        MS. MCKENZIE: And, Your Honor, I raise it just
5  because if it comes up -- I'm not sure that this is something in
6  the end that we will disagree on. It's just hard for me to
7  agree to something that I don't have in writing.
8     I do not intend to ask the witnesses or elicit testimony
9  from the witnesses to the effect of, you know, these locations
10 are locations where there are a lot of murders or drug
11 trafficking, but I hesitate just to sort of in the abstract
12 agree that there won't be any discussion about -- I mean, the
13 detectives in this case all work for a division of the police
14 department that doesn't have a specific geographic area that
15 they're assigned to. They're deployed each week to different
16 areas based on crime statistics, and they're sent to patrol hot
17 spots.
18    So to the extent that the jury needs to understand that, I'm
19 hesitant to agree, but I don't know that we're really at odds.
20 If what he's asking to exclude is really that narrow, it's not
21 something that I intend to elicit. I just would feel more
22 comfortable if he could reduce it to writing and we would know
23 exactly what the witnesses are not to say.
24       THE COURT: Well, if you-all reach some sort of
25 agreement to limit police witness testimony, then that's up to

1  you-all.  If it devolves into a disagreement, one that I have to
2  resolve, then I'll do that.  And it sounds like -- given we're
3  here at the eleventh hour before trial, it sounds like that's
4  going to be something that will have to be done on the spot.
5     So I appreciate the heads-up, but I do not anticipate
6  approving an agreement.  If you-all have an agreement, so be it.
7  You can inform me of it.  If you don't have an agreement and
8  that leads to an objection, I trust you will make that
9  objection.
10         MR. MEJIA:  Right.
11         THE COURT:  And I trust that the objection will be
12  consistent with the court's prior rulings.  This would typically
13  have been the subject of a motion in limine.  So if there is no
14  agreement and that results in a dispute at trial, then we'll
15  just have to take it up as it comes.  Anything else?
16         MR. MEJIA:  Nothing more, Judge.
17         THE COURT:  We'll see you Monday.  Thank you.
18         MR. MEJIA:  Thank you.
19     (Proceedings concluded at 10:58 a.m.)
20              C E R T I F I C A T E
21    I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM
22  THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
23
         s/Dena Legg                          October 16, 2020
24  Certified Court Reporter No. 20042A157    Date
    Official Court Reporter
25