```
                     UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF KENTUCKY
                          LOUISVILLE DIVISION


UNITED STATES OF AMERICA,    )    Case No. 3:17-CR-00037-DJH
                             )
          Plaintiff,         )
                             )
v.                           )
                             )
CHEROSCO BREWER,             )
                             )    May 15, 2019
          Defendant.         )    Louisville, Kentucky


                            * * * * *

              TRANSCRIPT OF SENTENCING HEARING
              BEFORE HONORABLE DAVID J. HALE
                UNITED STATES DISTRICT JUDGE

                            * * * * *

APPEARANCES:

For United States:        Erin G. McKenzie
                          Corinne E. Keel
                          U.S. Attorney's Office
                          717 West Broadway
                          Louisville, KY 40202

For Defendant:            David S. Mejia
                          310 East Broadway, Suite 201
                          Louisville, KY 40202



[Defendant present.]



                    Dena Legg, RDR, CRR, CCR-KY
                       Official Court Reporter
                       232 U.S. Courthouse
                       Louisville, KY 40202
                          (502) 625-3778

Proceedings recorded by mechanical stenography, transcript
produced by computer.
```

1    (Begin proceedings in open court at 11:37 a.m.)

2    DEPUTY CLERK: 3:17-CR-37, United States of America versus Brewer.

3    

4    MS. MCKENZIE: Good morning, Your Honor. Erin McKenzie and Corinne Keel on behalf of the United States.

5    

6    MR. MEJIA: Good morning, Your Honor. I'm David Mejia. This is Cherosco Brewer seated to my left.

7    

8    THE COURT: And why don't you have Mr. Brewer join you there at the podium for the balance of the hearing.

9    

10   And, Mr. Mejia, have you and Mr. Brewer had enough time to review the presentence investigation report?

11   

12   MR. MEJIA: We have. Your Honor, if I could just -- with the court's leave, may I bring a matter up with respect to posttrial motions so that I make the record clear, in case we need to do that in the Court of Appeals?

13   

14   

15   

16   THE COURT: Yes.

17   MR. MEJIA: I don't mean to interrupt things, but it came to my attention this morning that in ruling on the Rule 29/Rule 33 posttrial motion, Your Honor refused the motion and denied it on the merits, but Your Honor made a comment in your written order that the motion wasn't filed within 14 days and, therefore, untimely.

18   

19   

20   

21   

22   

23   It's both the Government's recollection and mine that when the verdict came in, I moved for 21 days, an enlargement of time within the 14, and Your Honor said -- I believe you granted the

24   

25

1   motion and said, "We'll go by what the rules are or the rules
2   will be imposed," and the record is what it is.
3       And I would just point out to Your Honor for the record that
4   Rule 45 of the Federal Rules of Criminal Procedure allows for an
5   enlargement of time on Rule 29 and Rule 33 motions.
6           THE COURT:  I'm well aware of that, Mr. Mejia, well
7   aware of that.
8           MR. MEJIA:  And I'm just making that --
9           THE COURT:  I'm not sure why we're doing this now at
10  the beginning of this hearing instead of in writing.
11          MR. MEJIA:  Well, I should have.  He brought it up to
12  me today.  I said I'll bring it up to the court and go on.  I
13  don't mean to do anything other than that.
14          THE COURT:  The rules are clear.  You are correct, it
15  is possible to enlarge the time.  We checked and what I said was
16  what I typically say.  It was nothing unusual.  I typically do
17  not enlarge time frames for posttrial motions unless a motion is
18  made in writing.  I'm sure I have on occasions departed from
19  that, but that's my general practice.
20      And so at the conclusion of the case, when you asked for 21
21  days, I said, "We're going to go with the time period permitted
22  by the rules."  The motion was filed without any request to
23  enlarge the time frame.  That's why I noted in my order that it
24  was outside the 14 days.
25          MR. MEJIA:  Yes, sir.

1    THE COURT:  So to address that, I would have expected
2 it, again, to be in writing, rather than at the outset of the
3 sentencing hearing here.
4    I think it's adequately addressed in the motion.  It is not,
5 of course, as you saw and as I'm sure your client saw, the
6 primary basis for my decisions with respect to the issues that
7 you raised in the posttrial motions.  Do we need to talk any
8 further about that at this point?
9    MR. MEJIA:  No, sir.  We do acknowledge the PSR.  I
10 have stated the objections in writing and --
11    THE COURT:  Before we take those objections up, let's
12 make sure the record is clear as to the guidelines contained in
13 the PSR.  They are found beginning on page six, the offense
14 level computation there.  The base offense level is 24.  The
15 Chapter 4 enhancements are detailed in paragraphs 26 through 29.
16    Now, that results in the adjusted offense level of 24 going
17 to a 37, and that ultimately is the total offense level
18 applicable here.
19    The guidelines or the PSR documents that Mr. Brewer
20 qualifies both as an armed career criminal, as well as a career
21 offender under Guideline 4B1.1.
22    So while the details set out in the PSR cover the career
23 offender enhancement, as well as the armed career criminal
24 enhancement under 18 U.S.C. 924(e), the resulting offense level
25 is 37.  That results in a guideline custody range of 360 months

1  to life on Counts -- let's see -- 1 and 4, 60 months as to Count
2  2, and 60 months consecutive as to Count 3, which is the 924(c)
3  charge.
4      So the guideline range here would be 360 to life, plus five
5  years' consecutive custody, a supervised release range of two to
6  five years with respect to Counts 1, 3 -- 1 and 3, 2 to 3 and 3
7  on Counts 2 and 4, respectively, a fine range of 40,000 to one
8  million.  Have I stated that correctly, Mr. Mejia?
9              MR. MEJIA:  Yes, sir.
10             THE COURT:  And Ms. McKenzie?
11             MS. MCKENZIE:  I believe so, Your Honor.
12             THE COURT:  Now, with those calculations as our
13 baseline, we're now ready to take up any objections that either
14 side has.
15     Mr. Mejia.
16             MR. MEJIA:  Yes, Your Honor.  The probation report
17 indicates that there is no indication that a variance is
18 warranted, and I've made my statement with respect to that in
19 that it is the position of the defense that the criminal history
20 category and guidelines as calculated exaggerate his conduct,
21 and I have cited the provisions and authority that I think are
22 relevant thereto.
23     And I believe, based upon the conduct as prosecuted, I
24 believe that based upon his character and history, the nature
25 and character of the offense itself, and taking into account the

1   previous prosecution of the same set of facts in state court
2   that called for far less punishment, while not controlling at
3   all and while the guidelines are not controlling, these are
4   factors that the court should take into account with respect to
5   3553.
6      It's the position of the defense then that effectively
7   doubling the mandatory minimum from 15 years to 30 years is just
8   unduly harsh.
9      It is the position of the defense that in terms of the
10  conduct itself, his activity was one that is best characterized
11  as a passive offense.  The firearm was concealed, as Your Honor
12  will recall, under a dashboard and behind a steering wheel.  It
13  was neither in his hand, in his belt, nor was it brandished, nor
14  was it ever used in the objectively literal sense.  It was
15  there.
16     The narcotics as well, while packaged in a way that the jury
17  concluded were intended for distribution, the quantities
18  themselves were relatively small, small enough the evidence
19  demonstrated, I believe, by one witness to indicate personal use
20  quantities.  There was no evidence with regard to his actively
21  selling/distributing.  There was no one from whom he purchased,
22  nor was there no one whom he delivered or intended to
23  distribute.
24     The offense itself arises out of now this very, very
25  controversial police technique of stopping motorists, calling in

1   K-9 dogs, handcuffing motorists in certain areas of the city.
2   We see now that this is a practice that the police department
3   may very well abandoned as somewhat of a municipal embarrassment
4   to Louisville.  While very well intended to keep guns off the
5   street, the technique used against a certain demographic,
6   against a certain racial group, against a certain geographic
7   location, I think, has created somewhat of a public outcry.
8       Here we know that this was initiated from a tinted window
9   stop, and we know also that each and every one of those times
10  that that was done, including this case, those charges have been
11  dismissed.
12      Finally, because this case was first brought in state court
13  and then brought to this court, obviously, with the result that
14  it has of a 15-year mandatory minimum, we now know, based upon
15  your rulings, a consecutive five to that 15, we look statutorily
16  at what looks to be a 20-year sentence.
17      We know from federal case law that the guidelines are not
18  mandatory, that you have discretion, that you can vary when the
19  guidelines themselves create an anomaly or disparity, if you
20  will.  A 10-year anomaly here, a 10-year disparity between what
21  is mandatory statutory minimum or a 15-year disparity between
22  the mandatory statutory minimum and the guideline minimum of
23  360, I think, calls for a close examination of the case, the
24  history, the facts, and the individual here, and those things I
25  submit do warrant a variance, all those factors taken into

1 account.

2 He has asked me repeatedly and I told him I would. I know
3 Mr. Brewer has filed a couple of pro se pleadings. He has given
4 me another one today. I've given it to the Government. I'm
5 asking leave to give it to the clerk. I've instructed --

6 THE COURT: I'm going to strike that again as I struck
7 the last one.

8 MR. MEJIA: I've instructed him that that's what Your
9 Honor does and that's what the procedure calls for.

10 THE COURT: I'll just repeat in his presence what you
11 already know, Mr. Mejia, which is that Mr. Brewer is represented
12 by able counsel.

13 You are not your own co-counsel, Mr. Brewer. Mr. Mejia is
14 your lawyer and you speak to the court through him. It is not
15 personal. It is not as a result of annoyance or aggravation.
16 It's simply that's the way that it needs to work. It best works
17 when criminal defendants are represented by counsel. And,
18 again, you are represented by able and experienced counsel. You
19 need to speak to the court only through him, not through pro se
20 motions that he hasn't seen, approved, and submitted himself.

21 And so it's, again, standard, typical policy for a court to
22 strike those filings and have before the court only the motions
23 and materials that are filed by counsel.

24 And so I'm not prepared today -- Mr. Mejia, unless you are
25 telling me that you are adopting and submitting them over your

1  signature to the court for consideration, I'm not prepared to
2  take up any of those matters, which as I understand it, the most
3  recent one was just filed either yesterday or today.
4           MR. MEJIA:  I believe they are redundant to what I
5  have objected to pretrial, during trial, and after trial, which
6  Your Honor has considered and Your Honor has denied.
7           THE COURT:  And there is an adequate record and one
8  can presume here that this matter will be reviewed in the Court
9  of Appeals.  And the record that will be presented to the Court
10 of Appeals is a full trial record, a full posttrial motion
11 record, and so I -- we're having a full sentencing hearing now.
12 I am confident that all of the matters that have been properly
13 preserved for review on appeal are adequately represented in the
14 record.
15          MR. MEJIA:  He will simply ask to speak before you
16 impose sentencing.
17          THE COURT:  That is your right, Mr. Brewer, to
18 allocution.  I will give you that opportunity.  We're not there
19 yet.
20     Now, do you need some time?
21          THE DEFENDANT:  Yeah, yeah, because I was --
22          THE COURT:  I'm not talking to you.  I'm talking to
23 Mr. Mejia.
24     Do you need some time with your client, Mr. Mejia?
25          MR. MEJIA:  I don't believe so.  We've conferred and

1    I've --
2           THE COURT:  He seemed to indicate that he -- he seemed
3    to indicate that he needed your attention, so that's why I
4    asked.
5           MR. MEJIA:  Just give me --
6           THE COURT:  That's fine.  Sure, absolutely.
7       (Mr. Mejia conferring with defendant off the record.)
8           MR. MEJIA:  I should address the court, Your Honor.  I
9    have advised Mr. Brewer before today of his rights under the
10   *Faretta* case to represent himself, to represent -- to seek
11   appointed counsel, to be side counsel with him.  I told him that
12   his decisions are to plead guilty or not, to have a jury or not,
13   and to testify or not, and all other decisions must be mine.
14      I am confident that the objections that he has made, the
15   communications that he's requested for me to make, and the
16   arguments, I have made.  I believe that he believes they should
17   be made by him, and I've instructed him as Your Honor has
18   advised him today.
19      I feel a little bit conflicted.  I think that as we go on,
20   he should have other counsel.  And he certainly must know his
21   rights to appeal and he -- because I've told him, and he knows
22   his rights under 2255, if that's what he seeks to do.  This
23   isn't the place and time to do it.  I don't know how else to
24   explain it to him.
25          THE COURT:  Are you making a motion?  I realize you're

1	in a difficult position.
2	         MR. MEJIA:  I'm in a very difficult position.  Perhaps
3	in the interest of my client, I should move to withdraw now
4	instanter.  Perhaps he should either represent himself --
5	         THE COURT:  There's not enough before me at this
6	point -- a little disagreement over posttrial strategy from a
7	lay person with an experienced criminal defense lawyer does not
8	give me pause as to the actions taken by you in behalf of
9	Mr. Brewer.  It may very well give him pause, but it is an
10	uninformed pause, if you will.
11	         MR. MEJIA:  Well --
12	         THE COURT:  It does not give the court pause as to
13	your actions.
14	    Now, having said that -- I am not being flip here.  If
15	Mr. Brewer is choosing to raise these issues now in the course
16	of this hearing, they may very well be, as I've observed, ill-
17	informed, but that doesn't change the fact that they've now been
18	raised.  So I think what I'm going to do is continue the
19	sentencing hearing and allow us to flesh out these issues.
20	    I don't think it's appropriate to do so as has been done
21	thus far.  I think, as I said, it's been ill-advised how it's
22	been done thus far.  And I recognize, Mr. Mejia, that you are
23	now in a very difficult spot.
24	    I also recognize that it is going to be difficult to
25	conclude that substitute counsel is appropriate here after you

have tried this case and litigated it pretrial, trial, and post-trial. To expect substitute counsel to come in at this hour and get up to speed and understand the nuances of this case and the record of this case, it makes little sense to the court at this date. So having said that, we will have to make a record on this apparent disagreement between client and counsel.

MR. MEJIA: Therefore, then, Judge, we'll move to continue the matter, and I will have an opportunity then to confer again with my client.

I will -- to the best I can, I will assure the court that I have been in communication with him. I've seen him. We've spent a lot of time together. I will endeavor to conclude the case on his behalf.

THE COURT: We will put a bookmark then in the hearing. I would have -- Mr. Mejia, my next question to you would have been to ask you to disaggregate your argument regarding a variance from your objections, set aside your objection to the PSR's conclusion that no variance is warranted, set that aside --

MR. MEJIA: Yes, sir.

THE COURT: -- as a single, stand-alone argument on a motion for variance, which you are ably making, and then go down through any remaining objections to the conclusions reached in the PSR.

Once we would have concluded with those objections, we would

1   have moved to that variance issue, and I would have expected to
2   then hear further argument with respect to the factors at
3   3553(a) from both you and the United States.  And I tell you
4   that so that it is clear, when you advise your client what the
5   next step in this hearing would be, you can refer to my own
6   outline, if you will, of next steps in the hearing.
7        Now, when we reconvene, we will start again from the
8   beginning, but if the first few steps follow the pattern here,
9   that will be where I go next in terms of my inquiry from
10  counsel.
11            MR. MEJIA:  I will just give Your Honor this:  It
12  appears to me that he is dissatisfied with both my motions and
13  your rulings with regard to posttrial 29 and 33 requests.
14  That's the core of where he's at.
15            THE COURT:  I understand.  I understand and that would
16  be typical for any defendant to be disappointed with the court's
17  ruling denying motions of that type.  I understand that.  That
18  does not, however, equate with a valid basis to have counsel
19  removed and replaced.
20            MR. MEJIA:  Very well.
21            THE COURT:  And so that, it seems to me, will need to
22  be the subject of attorney-client discussion outside the
23  courtroom, and so I will give you time to do that.
24       I will not set a date at this point.  I will simply enter an
25  order following today's hearing that indicates that Mr. Brewer

1   was dissatisfied with Mr. Mejia at this stage, and the court
2   found, in the interest of justice, that a continuance of the
3   hearing was in order.
4       And we will await any written motion from you.  I'm going to
5   ask that that be filed within 10 days of the entry of the order
6   following today's hearing, and I'll give the Government 10 days
7   thereafter to respond to any motion that you file, be it a
8   motion to reconvene the continued sentencing hearing or a motion
9   to take some other action with respect to representation.
10      I'll repeat what I said.  Mere disappointment by a lay
11  person in the results of actions taken by their lawyer is not
12  going to add up to -- on its own is not going to add up to
13  replacement of counsel, but if there is more to it than that, I
14  will be all ears.
15      I'm just -- this has been a long process and so I'm not
16  interested in derailing it at this point solely because of a
17  perception that's not necessarily based upon objective facts in
18  the record.  So I hope I've made myself clear on that point.  I
19  will give time though for us to flesh those issues out.
20      Anything from the United States at this point?
21      MS. MCKENZIE:  No, Your Honor.
22      THE COURT:  Anything further, Mr. Mejia?  Anything
23  with respect to the process we're going to follow now that you
24  take issue with or that you would like to address further?
25      MR. MEJIA:  Nothing more.

1      THE COURT: Then, as I said, the sentencing hearing
2 will be continued. We will enter an order giving you 10 days,
3 Mr. Mejia, to file any motion that you feel is necessary and 10
4 days' response and then we'll take it up thereafter. Thank you.
5      (Proceedings concluded at 12:01 p.m.)
6                    C E R T I F I C A T E
7   I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM
8 THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

            s/Dena Legg                    October 16, 2020
11   Certified Court Reporter No. 20042A157    Date
     Official Court Reporter