United States District Court Western District of Kentucky
Louisville Division     Case No. 3:17-cr037- D.J.H.

United States of America v. Cherosco Brewer, Defendant.

## Defendant's Renewed Motion For Compassionate Release / Sentence Reduction

Comes now defendant Cherosco Brewer, pro se, and files his above styled action and moves for relief pursuant 18 USC 3582(c)(1)(A)(i), a change in law / & circumstances, his age, and all relevant facts previously stated in the earlier filed pending pro se motions for compassionate release. Defendant requests this Court to issue an expedited ruling on this motion on or by April 15, 2022.

## Memorandum in Support of Motion.

## Statement of Facts.

This Court is aware of Defendant's criminal history and medical conditions according to the BOP. (See Exhibits 1, 2, 3) These records indicate that since being in the custody of the BOP, Defendant has contracted

FILED
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY
22 MAR 21 PM 2:53

1.

and recovered from COVID-19, suffers from hypertension, obesity with a BMI of 33.2, and an unknown heart condition. (Exhibit Id.). Every single medical condition is listed on the CDC's recognized list of comorbidities recognized to elevate an inmate's risk of becoming seriously ill from COVID-19. (See CDC Website) As indicated by the evidence of record being the sentencing transcript, Defendant is known to suffer from chronic kidney disease, as stated by this Court. (See Document 20, Pg. 40, LN.s. 18,19) Ironically, there has been no treatment conducted at all by the B.O.P. on Defendant for this terminal illness nor has any medication been given to him so he can at least provide self care. Defendant now suffers from a serious heart condition that was contracted due to the BOP's failure to provide adequate care. As previously mentioned, Defendant was given a deadly conncection of pills - Atenolol and Duloxetine - which eventually led to him being placed on a heart monitor as well as taken off the medication. Defendant's heart condition was caused by the BOP's negligence. Now Defendant has chest pains regularly, when walking to eat he gets winded, can't stand up over ten minutes, others as well as myself hear me wheezing and when Defendant's family members called the Mid-Atlantic Region Office in Maryland

2

the BOP guards ran in my cell during the recent national lockdown on 2/1/22, handcuffed my cell-mate and me, took us out into the cold in what we wore to bed, took us to security, strip search us and upon bringing us back said to me "I'm sure you know what this is about?" Defendant asked the officer to take him to medical and was told "you can put in a coport or get your people to call." The BOP guards demolished our cell for no reason except for retaliation for Defendant's family calling the Regional Office and inquiring about getting Defendant medical assistance for his heart condition. Medical waited eight (8) days to bring Defendant's heart medication although during that lockdown time span they delivered other inmates' medication daily. Defendant is forty eight (48) years old and is in bad shape and my health is rapidly deteriorating. Medical asked Defendant to do a heel then a toe walk test but due to my obesity and body pain they could not be performed. Defendant was told he has a L4-5 nerve root irritation for sure from her observation and a S1 nerve problem. Defendant's serious heart condition and other illnesses were BOP and COVID-19 induced prior to the vaccination being available. Now Defendant suffers from the fear of having a heart

attack and kidney failure being that BOP has not
provided adequate care for their created heart
condition and none at all for the chronic kidney
disease. (See Exhibits:3A) Defendant has also
been suffering from edema in both legs below the
knees. Although discussing it and showing my legs
to medical and telling her how painful it is as
well as the fact that there is a family history
of diabetes, she never prescribed compression socks
for Defendant. Medical told Defendant to sleep
with his feet elevated until the fluid goes away."

## Change in Circumstances.

On or about February 14, 2022, Defendant received
documents from a family member, Kristen Brasher.
The documents are enclosed as (Exhibit 4) which is
filed in this court as (Document 163, Page 8 of 21, Para. 30).
which states: Chapter Four Enhancements... and the
defendant has at least three prior convictions for a serious
drug offense (... Case Numbers 97-CR-2549; 04-CR-2823; and,
05-CR-611). Ironically case number 97-CR-2549 was
never finalized because Defendant pled under an
Alford Plea. (Exhibits 6,7 ) Defendants plea was not
final because the Court of Appeals remanded the

4

case due to an ineffective assistance of counsel claim. (Exhibit 8 ) Defendant was not aware of the fact that that was an <u>Alford Plea</u> in case number 97-CR-2549 until 2/14/22. This fact was never mentioned to me by any attorney or this Court at sentencing. Defendant states that there was no factual basis ~~so~~ established on or off the record to support any claim that Defendant entered the plea to the trafficking offense rather than the "Receiving Stolen Property o/300" other offense on the record. (Exhibit 6,7)

Minus this offense and also Case Number 04-CR-2823 which is Conspiracy to Trafficking in a Controlled Substance in the First Degree, (Exhibit 9 )no ACCA. This Court sentenced Defendant after the passage of the 12/21/18 First Step Act, therefore, a "conspiracy" offense does not qualify categorically for armed career offender status or career offender. The finding of these documents change the circumstances in Defendant's case in general, his status as being an armed career offender and if sentenced today minus both indictment issues stated above, the sentence would be half of the 240 months, most especially since the amount of drugs was minor and the alleged cocaine was questionable. As this Court

5

said during sentencing on 7/30/20, "In sum I find that a guideline sentence here even a low end guideline sentence, would be far greater than necessary to comply with the purposes set forth in Section 3553(a)(2). This is a mine-run case and yet the sentence called for by the guidelines here fails properly to reflect the 3553(a) considerations I have just discussed and would result, in my view, in a disproportionally harsh sanction. Now, having reached that conclusion, are the parties ready for me to state the sentence." (Sentencing Transcript, Page 40, 41). This Court also stated "I've carefully considered the history and characteristics of Mr. Brewer... he has a significant criminal history though as I mentioned, not one with convictions for significant violent conduct or substantial amounts of drugs." (Id. Page 42, Line 19-23). Defendant states with what the Court stated at sentencing this means sentencing factor 3553(a)(2) danger to the public favors relief. At sentencing the Court considered Defendant's age and health; but, that was before the BOP prescribed him a lethal concoction of pills that damaged his heart (Exhibit 1 ), weakened his immune system, made him more susceptible to contracting COVID-19 which in effect would put him at high risk of severe illness once contracting COVID-19.

6

Defendant is now forty eight (48) years old and that age category is associated with a moderate reduction in the likelihood of recidivism. This characteristic weighs slightly in favor of a reduction. (See The Effects of Aging on Recidivism Among Federal Offenders 26 (2017) Recidivism Age.pdf (regarding rearrest rate for federal offenders aged 40 to 49 at 52.8% compared to 68.1% younger than 30 years old.) This age coupled with his terminal illnesses - chronic kidney disease and a heart condition reduces that probability even more. (Exhibit 1-3) A service of 59 months of imprisonment adequately reflects the seriousness of this significant but nonviolent offense and satisfies the need to provide just punishment. It also affords adequate deterrence particularly because service of this sentence while Defendant has fearfully suffered from a combination of serious medical conditions and the psychological impact of having no control over my own course of treatment inflicts more punishment in a shorter period of time. This Court must be mindful that Defendant's history and characteristics now include an incurable and eventually fatal medical condition. All of the above facts are factors favorable to Defendant to be granted an immediate release; and, this Court should be mindful of

the fact that Defendant had been free on bond for the two state drug offenses for roughly 18 months without incident and the only reason he was arrested was because the Government wanted Defendant to go to prison. Defendant had and has respect for the law prior to being arrested on 11/11/15 to present 3/15/22 day for although he was tried, convicted and sentenced, Defendant continues to obey the law for he has not received any disciplinary infractions since entering the BOP system. Even after the unusually harsh conditions he has encountered at F.C.I. Gilmer due to the pandemic, the awful lockdowns and the retalitory practices they used to punish Defendant for trying to get medical help for his BOP induced heart condition. This factor too favors relief for Defendant therefore the 18 USC 3553(a) sentencing factors should not be abandoned by the Court like they were at sentencing. (Sentencing Tran., Page 40.) Rather they should be used to determine that an immediate release is warranted due to the combination of reasons including the change in laws. See U.S. V. McCall, 2021 U.S. App Lexis 37351 (6th Cir. 12/17/21). That Court went so far as to say that a district court abuses its discretion when it fails to consider whether

the combination of the COVID-19 pandemic, rehabilitation efforts and a nonretroactive change in sentencing laws constitute extraordinary and compelling circumstances warranting a prisoner's compassionate release. (Id.)"

In the case at bar, Defendant states and shows post sentencing ~~circumstances~~ circumstances that constitute extraordinary and compelling reasons to be granted a compassionate release and/or sentence reduction. He has produced evidence showing he had pled guilty in a case pursuant N.C. v. Alford, case number 97-cr-2549, Exhibit 4) which was remanded by the Court of Appeals after Defendant challenged its validity. Exhibit 5) That case can not be used to qualify Defendant as an Armed Career Criminal. Nothing shows that a factual basis exists for Defendant to have pled guilty for a trafficking offense rather than the receiving stolen property 8/300. The sentence was 5 years and neither offense qualifies as a predicate offense to support an ACCA enhancement. (See Alston v U.S., 2010 U.S. App Lexis 13610 (4th Cir.2010); U.S. v Phillips, 2019 US App Lexis 10724 (6th Cir 2019). U.S. v. Sanchez, 2020 Lexis 246459 (9th Cir. 2020).)

Further, in case number 04-cr-2823 was a conspieacy conviction. A conspiracy conviction cannot serve as a predicate offense to support an ACCA enhancement since

the passage of the First Step Act on 12/21/18. See U.S. v.
Mayes, 928 F. 3d 502 (6th Cir. 2019); McNeill v. U.S., 563
US 816 (2011); U.S. v. Whitley, 737 F. App'x. 147 (4th Cir.
2018).

Further this Court can sentence Defendant to home
confinement. U.S. v. Bandrow, 2020 Lexis 127031 (EDMI
7/10/20); U.S. v. Rodriguez, 2020 Lexis 154588 (EDVA 8/25/20) home
confinement restricts one's movement and can be
incorporated as a condition of supervised release.
5F1.2 / 3583(e)(2). Although said motion may not
apply pursuant a 3582(c)(1)(A) filing, but, this Court
has discretion to apply it under the "other reasons"
commentary note 1(D) of the stated statute.

Defendant remained crime free and free for 18
months after being released on bond. The governments
decision to arrest Defendant only after it was
learned that Davis v. Commonwealth, 484 S.W. 3d 288 (Ky 2016)
would cause the charges pending on him and others
so associated with those illegal pretextual traffic
stops to be dismissed. And the government knew
about Defendants history on suing law enforce-
ment. Question: "Why did the former attorney
for the Commonwealth wait that long to pursue
an indictment against Defendant then use enhance-
ments -ACCA- to harm him in federal jurisdiction?"

10

Defendant should be granted relief instanter even if this Court places Defendant on a monitor in home confinement via extended supervised release. A status not an offense is why Defendant is going through an additional hardship. Minus this status — ARMED CAREER CRIMINAL — Defendant would be almost free; and, based on the medical conditions that he suffers from and hasn't been provided adequate self care by the BOP to help himself should be reasons to warrant relief, instanter. Defendant requests a video hearing.

## CONCLUSION

This Court should not only remove the ACCA status from Defendant but should also remove Defendant from the BOP system. A second chance should not be overlooked. This 15th day of March, 2022.

Cherosco Brewer #8898-033

Cherosco Brewer, #

CERTIFICATE OF SERVICE
I served the Clerk of Court with a copy of this document to serve all parties of interest. 3/15/22

Cherosco Brewer
Gilmer, A2-218
P.O. Box 6000
Glenville, WV 26351

11.

Mr. CHEROSCO BREWER #18898-033 A2-21?



F.C.I.-Gilmer
Federal Correctional Institution
P.O. BOX 6000
Glenville, WV 26351

FILED
U.S. DISTRICT COURT CLERK
WESTERN DISTRICT OF KY
22 MAR 21 PM 2:53

HON. Judge DAVID J. HALE #ROOM 208
601 WEST Broadway
Louisville, Kentucky 40202