UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                          CRIMINAL ACTION NO. 3:17-cr-037-DJH
                            CIVIL ACTION NO.: 3:22-CV-00523-DJH


CHEROSCO BREWER                                            DEFENDANT


## RESPONSE TO MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255
### *Electronically Filed*


Defendant Cherosco Brewer moves the court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He claims several instances of ineffective assistance of counsel and prosecutorial misconduct. His arguments are without merit because he has no evidence upon which to base many of his claims, and because he was not prejudiced by his counsel's allegedly deficient performance or any alleged prosecutorial misconduct. This Court should deny his motion accordingly.


## FACTUAL BACKGROUND

Brewer was convicted by a jury in January 2019 on four counts: (1) possession of a firearm while having a prior felony convictions in violation of 18 U.S.C. Sections 922(g), 924(a)(2), and 924(e), (2) possession of marijuana with intent to distribute in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(D), (3)

possession of cocaine with intent to distribute in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C), and (4) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. Section 924(c)(1)(A). The Sixth Circuit affirmed his judgment and sentence, and his writ of certiorari was denied.

The basic facts of the case are as follows: Brewer was pulled over for excessive window tint on November 11, 2015. During this stop, a police K9 alerted on the vehicle, and officers found a loaded handgun and marijuana packaged for sale hidden inside. The car had been rented under Brewer's name since July of that year. Brewer was arrested and released on bond the next day. The following night, November 12, 2015, Brewer was again pulled over for excessive tint. This time he was driving a car registered to Yvette Allen, his girlfriend of several years. A K9 again alerted on the car, and police found several individually packaged for sale bindles of cocaine hidden inside the car.

During the pendency of his case in United States District Court, Brewer was represented by a total of five attorneys.[1] He was represented by yet another attorney for his direct appeal. At various times Brewer wrote the Court directly, attempted to file pro se pleadings, or had ex parte hearings with a magistrate judge to discuss whichever attorney represented him at the moment. *See, e.g.,* DN's 21,79, 80, 172, 177, 185, 188, 192, 194, 195, 196, 198, 237.

---

[1] Brewer's trial counsel, David Mejia, passed away on July 8, 2021, nearly two years after withdrawing as attorney for Brewer. *https://www.loubar.org/UserFiles/files/bar-briefs/2021/10-October/LBA%20BarBriefs_October21_DIGITAL.pdf* (last visited February 5, 2023).

Brewer's attorneys filed motions to suppress evidence seized during the traffic stops (DN 26 and 33); to sever (DN 38); to dismiss (DN 39); to "reconsider" all three of those motions (DN 91 and 93); another motion to dimiss (DN 94); to "reconsider" detention (DN 107) and to support and "supplement" Brewer's pro se motion (filed when he was in between counsel) "to remand to state court" (DN 87 and 80). Brewer's counsel filed multiple motions in limine regarding evidence at trial (DN 100 and 128) and responded to each of the United States' motions in limine (DN's 64, 65, 69, and 117).

After he was convicted by a jury, Brewer's counsel filed a motion for new trial (DN 158); a motion to bar consecutive punishments (DN 161); a sentencing memo and contemporaneous objections to the PSR (DN 160); a motion to reconsider the new trial motion (DN 176); another new trial motion (DN 205); a motion to issue a subpoena to LMPD for data (DN 211); a motion to appoint an expert (DN 221); another sentencing memo and set of objections to the PSR (DN 233 and 234); a supplement to the sentencing memo with another one of Brewer's pro se "pleadings" (DN 237); and of course, an appeal to the Sixth Circuit Court of Appeals.

The jury found Brewer guilty on all counts. [DN 143, 147]. The court sentenced Brewer to the statutory mandatory minimum of 180 months imprisonment on Counts 1 and 4 concurrently, plus a consecutive 60 months on Counts 2 and 3--for total sentence of 240 months imprisonment plus a five-year term of supervised release. [DN 242].

3

Brewer exhausted his direct appeals of the conviction and sentence. He now seeks to attack them collaterally using 28 U.S.C. § 2255.

## ARGUMENT

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003). To prevail on his motion, Brewer must prove "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012)).

A 2255 motion must be brought within one year of the date on which the judgment of conviction becomes "final," i.e., upon conclusion of direct review. *Clay v. United States*, 537 U.S. 522, 524 (2003); *Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004). When a defendant's files a writ of certiorari and it is denied, the conviction is "final" on the date the Supreme Court denies the writ. *See Starnes v. United States*, 18 F. App'x 288, 292 (6th Cir. 2001).

Brewer filed his 2255 motion on September 29, 2022, within one year of when the Supreme Court denied his writ of certiorari on October 4, 2021. *See* DN 302. His motion is timely.

Brewer brings multiple claims of ineffective assistance of counsel and prosecutorial misconduct, but none have merit or render his sentence or his proceedings invalid or unconstitutional. Brewer's motion should be denied.

## I. The United States did not engage in prosecutorial misconduct.

All of Brewer's prosecutorial misconduct claims fail. Brewer's suppression claims were already litigated in his direct appeal, so he cannot bring them in this 2255 motion. Likewise, his claims of vindictive and selective prosecution cannot be raised again. Finally, his unsupported assertions and undeveloped accusations do not establish misconduct or warrant vacating his sentence.

> i.    <u>Brewer cannot re-litigate substantive claims by labeling them as prosecutorial misconduct</u>

Besides claims of ineffective assistance of counsel, a defendant's claims are procedurally defaulted he does not raise them on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003).

Brewer also cannot relitigate claims that were brought and considered during his direct appeal, unless there has been an intervening change in the law or some other "extraordinary circumstance." *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

5

     ii.   <u>Brewer's claims about false or fabricated evidence are
unsupported by evidence.</u>

Brewer makes accusations that the United States presented false or

fabricated evidence to the Grand Jury. First, he claims that prosecutors committed

misconduct by not presenting evidence concerning an individual named Eric

Thompson. Brewer seems to believe this information is somehow exculpatory for

him, although he does not explain how.  Second, he claims prosecutors "lied"

to the Court about his criminal history and status as an Armed Career Criminal

under 18 U.S.C. § 924(e). Again, Brewer does no more than make bald assertions. It

should be noted that Brewer's criminal history, and findings concerning his status

under the Armed Career Criminal Act are determined by the United States

Probation Office and the Court. Brewer does not clearly state how the United States

supposedly infected this process.

Brewer bears the burden of proving his assertions by a preponderance of the

evidence. *McQueen v. United States*, 58 Fed. App'x 73, 76 (6th Cir. 2003) (per

curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. §

2255 have the burden of sustaining their contentions by a preponderance of the

evidence.").

Here, Brewer's assertions are unsupported by any evidence. Without more,

defendant does not fulfil his burden.

**II.     Brewer did not receive ineffective assistance of counsel because counsel's actions were reasonable under the circumstances and Brewer did not face any resulting prejudice.**

To prevail on a claim of ineffective assistance of counsel, Brewer must show both of the following: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced Brewer's defense. *See Strickland v. Washington*, 466 U.S. 668, 696 (1984). To show deficient performance, Brewer must show that his counsel's representation fell below what would be an objectively reasonable performance under prevailing professional norms. *Id.* at 687–88; *see Kimmelman v. Morrison*, 477 U.S. 365, 375–78 (1986). Prejudice requires a showing of a reasonable probability that, but for counsel's deficient performance, the outcome would have been different. *Strickland*, 466 U.S. at 696.  Review of counsel's performance is highly deferential, and the defendant has the high burden of overcoming the presumption that counsel's actions, under the circumstances, "might be considered sound trial strategy." *Id.* at 689; *see Davis v. Lafler*, 658 F.3d 525, 536–38 (6th Cir. 2011) (holding that defendant failed to meet this burden when he did not provide any proof that his counsel inadequately investigated the option of calling a particular witness). This presumption is meant to protect against the "distorting effects of hindsight" and restrict interference with the "constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions." *Strickland*, 446 U.S. at 689.

In this case, Brewer's counsels' performance was objectively reasonable, and Brewer cannot show that any alleged deficiency raised the probability of a different trial outcome.

> A. Brewer did not receive ineffective assistance of counsel at sentencing because counsel made objections and reasonably did not make Brewer's meritless arguments about his sentence enhancement under the Armed Career Criminal Act.

Brewer did not raise this claim in his direct appeal and can only overcome procedural default by showing cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)("Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000)("It is well settled law that failure to raise an argument at trial or on direct appeal is waived on collateral review under § 2255, absent a showing of both cause and actual prejudice.").

It was not ineffective assistance on the part of Brewer's Appellate counsel not to raise Brewer's claims regarding his prior convictions because Brewer's claims have no merit. Default aside, it was also not ineffective assistance on the part of Brewer's sentencing attorney to forego these arguments.

Brewer claims defense counsel was deficient for failing to object to the application of certain of his prior convictions to support his sentence enhancement under the Armed Career Criminal Act (ACCA).

The prior convictions at issue were the following:

1. Trafficking in Controlled Substance First Degree Cocaine in Jefferson Circuit Court Case Number 97-CR-2549 (DN 232, Final PSR ¶ 36);

2. Trafficking in Controlled Substance First Degree Cocaine and/or Conspiracy to Trafficking in a Controlled Substance First Degree in Jefferson Circuit Case Number 04-CR-2823 (DN 232, Final PSR ¶ 40); and

3. Trafficking in Controlled Substance First Degree Cocaine in Jefferson Circuit Case Number 05-CR-0611 (DN 232, Final PSR ¶ 41);

The Armed Career Criminal Act provides in relevant part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1).

In this case, counsel did make several objections to the PSR and at sentencing but did not raise the arguments Brewer raises here. *See* DN 232-1, Addendum to PSR. And *see* DN 160, DN 233, DN 234, and DN 237. However, because all of Brewer's claims lack any merit, it was not ineffective assistance for his counsel to choose not to bring them.

> 1. *Brewer's drug offenses are "serious drug offenses" within the meaning of the Armed Career Criminal Act.*

Brewer claims that his drug offenses no longer constitute predicate offenses under the ACCA in light of the First Step Act, because it enacted a new definition of "serious drug felony" for purposes of recidivist enhancements until Title 21.

The ACCA defines a "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law . . . ." *Id.* § 924(e)(2).

Brewer's argument is without merit, however, because the First Step Act's changes do not apply to the ACCA's definition of a "serious drug offense," and, therefore, do not apply to him.

The Sixth Circuit has explained, "because [First Step Act] Section 401 did not amend the definition of 'serious drug offense' in the Armed Career Criminal Act, 18 U.S.C. § 924(e), Section 401 does not affect a defendant's classification as an armed career criminal following a firearms conviction." *United States v. Brown*, No. 20-6409, 2022 WL 2135265, at *3 (6th Cir. Mar. 16, 2022); *see also United States v. Wilson*, No. 1:17-CR-60, 2019 WL 6606340, at *7 (W.D. Mich. Dec. 5, 2019) ("The term 'serious drug felony' is not used in the ACCA. . . . The First Step Act did not modify the definition of 'serious drug offense,' or any other part of the ACCA."); *United States v. Noel*, No. 08-20497, 2021 WL 289650, at *4 (E.D. Mich. Jan. 28, 2021) (holding that the First Step Act did not affect defendant's sentence that was enhanced under the ACCA).

Other circuits have held the same. *See United States v. Wims*, 836 F. App'x 793, 796 (11th Cir. 2020) (per curiam) ("[The] text is clear: § 401 of the First Step Act replaced the term 'felony drug offense' with the term 'serious drug felony' in the CSA, . . . and left untouched the definitions of the ACCA's predicate offenses.");

10

*United States v. Smith*, 798 F. App'x 472, 476 (11th Cir. 2020) (per curiam)

("Nothing indicates that Congress intended to replace the ACCA's separately

defined term. . . . [T]he rule lenity does not apply here because the statutes are not

ambiguous."); *United States v. Edwards*, 767 F. App'x 546, 546–47 (4th Cir. 2019)

(per curiam) (mem.) (holding that the First Step Acted "amended only the

Controlled Substances Act's definition of 'serious drug felony,' not the language of

the ACCA").

Because the First Step Act did not change the definition of "serious drug

offense," Brewer's three drug offenses at issue still qualify as predicate offenses for

purposes of a sentencing enhancement under the ACCA, and his counsel reasonably

did not object to their application.

> 2. *A guilty plea pursuant to North Carolina v. Alford constitutes a*
> *conviction for purposes of counting predicate offenses under the*
> *Armed Career Criminal Act.*

For purposes of applying the Sentencing Guidelines, U.S.S.G. §4A1.2

addresses this issue in defining "prior sentence" for criminal history purposes. First,

the guidelines say "prior sentence means any sentence previously imposed upon

adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*…"

U.S.S.G. §4A1.2(a)(1). The guidelines further clarify that a "conviction" is at its

heart the establishment of guilt.

> "Where a defendant has been convicted of an offense, but
> not yet sentenced, such conviction shall be counted as if it
> constituted a prior sentence under §4A1.1(c) if a sentence
> resulting from that conviction would otherwise be
> countable…

> **'Convicted of an offense,' for the purposes of this provision, means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*."**

U.S.S.G. §4A1.2(a)(4) (emphasis added)..

For purposes of the Armed Career Criminal Act, which requires three previous "convictions" for a violent felony or a serious drug offense, 18 U.S.C. § 921, defines all terms used in Chapter 44 of Title 18. In 18 U.S.C. 921(a)(20), the Gun Control Act defines crimes "punishable by imprisonment for a term exceeding one year," as used in 18 U.S.C. § 922(g)(1). This subsection also addresses the question of what is a "conviction," specifying that such "shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20).

Under the statute's choice-of-laws clause, Kentucky law controls. Kentucky law is clear that a person stands convicted of a felony for purposes of firearm possession after an establishment of guilt such as a guilty plea. *See, e.g., Grace v. Commonwealth,* 915 S.W.2d 754, 756 (Ky. App. 1996).

Because a conviction for first degree Trafficking in Controlled Substances under Kentucky law categorically qualifies as a predicate under the ACCA, the District Court did not need to evaluate Brewer's *Shepherd* documents. Accordingly, the fact of an *Alford* plea in this case has no disqualifying effect on Brewer's prior conviction. *See United States v. Mitchell,* 743 F.3d 1054, 1066-67 (6th Cir. 2014).

B. <u>Brewer did not receive ineffective assistance of counsel when his trial counsel chose not to move for a mistrial based on Stephanie Sears' unsolicited statement about prison</u>

Brewer did not raise this claim in his direct appeal and can only overcome procedural default by showing cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)("Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000)("It is well settled law that failure to raise an argument at trial or on direct appeal is waived on collateral review under § 2255, absent a showing of both cause and actual prejudice."). Even if the Court finds Brewer has good reason for default, this claim fails.

It is within a district court's sound discretion to declare a mistrial. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Jones v. Hogg*, 732 F.2d 53, 56 n. 1 (6th Cir.1984).

Brewer complains he was entitled to a mistrial after an exchange during cross-examination by the United States of Brewer's witness Stephanie Sears. Sears testified under direct examination that she had no "connection" to Cherosco Brewer. [DN 216, Trial Transcript Vol. 3, p. 179, PageID # 2039]. The United States returned to this statement at the beginning of its cross-examination of Sears:

> Q. Okay. And if I recall your testimony from yesterday
> correctly, you stated you have no connection to Cherosco Brewer?
> A. None at all.
> Q. None at all?
> A. Uh-uh.
> Q. Do you know Cherosco Brewer?
> A. I know him, but I have no connection to him.
> Q. How do you know him?

13

> A. Reading about something that he -- my cousin and him was locked up together.
> Q. I'm sorry?
> A. They was in the same penitentiary, that's all, not just --
> not saying, "Hi. How are you doing?" You know, carrying on a
> conversation, I don't know him like that.
> Q. Okay. You don't hang out with him?
> A. No.
> Q. Okay. And how did you get to court today?
> A. I drove.

DN 217, Trial Transcript Vol. 4, p.4-5, PageID # 2063-64.

Sears went on to testify that Brewer's other witness in his defense, Yvette Allen, was her friend. *Id.* It should be noted that Allen testified she had been engaged to Brewer since February 2012. [DN 217, Page ID # 2092]. She further testified that Sears is her older sister. [DN 217, PageID # 2085-86].

A failure to object usually does not constitute deficient performance, and did not in this case. *See Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). The Constitution does not guarantee that defense counsel will raise every conceivable objection, and experienced attorneys use objections tactically because objecting too much can hurt defense's case. *Id.* Because of this, "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the [prosecution]." *Id.*

Brewer's trial attorney did not object, and the examination moved away from the topic of incarceration quickly. In all likelihood, Brewer's attorney knew a motion for a mistrial would likely be denied as the Court has discretion to simply give a curative instruction to the jury. Counsel would have been reasonable in declining a curative instruction for fear of drawing more attention to the statement than

14

necessary. In addition, a theme of Brewer's defense seemed to be that law enforcement harassed and picked on him with frequent traffic stops. Brewer's counsel may have considered the fact that Brewer had at some point been in custody could just as likely support such a defense theory.

At any rate, Brewer cannot show a reasonable probability that the outcome of the trial would have been different.

### C. Brewer did not receive ineffective assistance of counsel when his counsel chose not to call and/or impeach certain witnesses.

Brewer complains that his trial counsel should have called several other witnesses—Sergeant James Adams, Regina Northington, and Shawna Thompson. Thompson, who Brewer's petition claims is his girlfriend, presumably had knowledge of a federal investigation into another individual who drove a Dodge Charger and had connections to firearms. [DN 325-1, PageID # 2986]. Brewer does not explain how testimony on this topic could have assisted his defense, much less changed the outcome of the trial.

Regina Northington, the passenger in Brewer's car during the first of the two traffic stops in this case, had given no statements to police and was not charged. Brewer states that had she been called to testify, Northington could have testified that in the preceding four to five hours that the two had been together, she did not see Brewer with a gun or drugs. [DN 325-1, PageID #2985]. Brewer's claim is unsupported, and even if true, it is hard to see how such testimony would have made a material difference in the trial. The testimony at trial was that the gun and

marijuana found in Brewer's rental car that night were well hidden inside the dash and steering column of the car. The question for the jury was not **when** those items were stored in the car that way so much as it was **who** stored them there. Testimony from an Enterprise Rental employee and records admitted at trial established Brewer had been driving that rental car for several months. [DN 215, PageID #1718-19]. Even had Northington testified to having not seen the contraband on Brewer in the four hours prior to the stop, there would still have been literally months of Brewer driving the car to account for.

Lastly, Brewer complains that his counsel should have called Sgt. Adams in order to impeach him. Adams did testify at a hearing on Brewer's motion to suppress, but Brewer is not specific about any testimony from Adams that would have assisted Brewer's defense on the merits. Brewer does not explain what he would have hoped to gain from Adams' testimony or how it would have changed the outcome of the trial.

Defense counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. A decision not to investigate a particular issue or piece of evidence must be reviewed with deference to counsel's judgments and considering all the circumstances. *Stojetz v. Ishee*, 892 F.3d 175, 197 (6th Cir. 2018). Even if counsel's decision not to investigate is "professionally

unreasonable," the actions must prejudice the defense to amount to ineffective assistance of counsel. *Id.*

Failure of counsel to perform an independent investigation into certain witnesses and evidence and relying on discovery provided by the government doesn't necessarily surmount the high burden of showing deficient performance. *See Moss v. Hofbauer*, 286 F.3d 851, 857 (6th Cir. 2002). In *Moss*, defense counsel admitted that she "did not hire an investigator, interview any witness prior to trial, or attempt to locate other people who might have observed what occurred. Instead, she limited her actions to consulting with [co-defendants'] attorneys[,] . . . visiting the scene of the crime, and reviewing the evidence that the state provided her." In addition, defendant claimed ineffective assistance of counsel on the basis that defense counsel did not make an opening statement, did not make any objections, and did not cross examine two key witnesses. The court found that none of defendant's claims constituted ineffective assistance of counsel. While the court found that defense counsel's decision not to cross examine a certain witness was an "unreasonable" strategic decision, the defendant could not show that this prejudiced him. The court also found that, as a whole, defense counsel's performance did not fail to submit the government's case to meaningful adversarial testing.

Similarly, failure to impeach a witness or cross-examine a witness on certain issues does not necessarily amount to ineffective assistance of counsel. For example, when a witness has already been sufficiently impeached, impeachment based on other undisclosed evidence is merely cumulative. *See Davis v. Booker*, 589 F.3d 302,

307–09 (6th Cir. 2009) (citing *Brown v. Smith*, 551 F.3d 424, 433–34 (6th Cir. 2008)). In *Davis*, the court found that counsel's failure to impeach a witness with the witness's prior fraud conviction did not amount to ineffective assistance of counsel because the witness's credibility had already been sufficiently impeached by evidence that he was a drug dealer and had made inconsistent statements to the police at a preliminary hearing. *Id.* at 309.

Further, failure to impeach a witness with "minor inconsistencies" in their statements does not necessarily amount to ineffective assistance of counsel. *See Peterson v. Smith*, 510 F. App'x 356, 361–62 (6th Cir. 2013). In *Peterson*, an eyewitness's initial statement to the police that the shooter in the case was wearing a dark jacket and scarf over face differed from his testimony at trial that the shooter was wearing a green leather jacket and a mask. *Id.* at 360–61. The witness also testified at that the shooter returned to the store twice before the shooting, but this had been omitted this from the witness's initial statement to the police. *Id.* at 361. The court noted that the witness did not read his witness statement before signing. *Id.* It concluded that defendant had not shown that counsel's failure to impeach the witness with these "minor inconsistencies immaterial discrepancies, or details omitted from the initial statement to police fell outside the wide range of reasonable professional assistance." *Id.* at 362.

Even when failure to impeach a witness amounts to deficient performance, the defendant still carries the burden of showing prove that this failure prejudiced him. For example, in *Poindexter v. Mitchell*, the court held that, even assuming that

counsel's performance was ineffective for not cross examining a witness about his inconsistent statements regarding whether he was standing or kneeling when the defendant shot a gun at him, the defendant did not show that this prejudiced him. 454 F.3d 564, 572 (6th Cir. 2006). There was sufficient other evidence that defendant had shot at the witness (powder burns on the witness's face and consistent testimony of another witness) that there was no reasonable probability that the outcome of the trial would have been different if counsel had cross examined the witness about these inconsistencies. *Id.*

In this case, defense counsel's decision not to call certain witnesses does not constitute ineffective of counsel. Brewer provides no evidence to support his claims that these witnesses would have provided any new or materially different evidence. Accordingly, defendant cannot show how his counsel's calling any or all of the three additional witnesses would have created a reasonable probability of a different outcome in his case. This decision not to call a particular witness is presumed to be a strategic one.

### D. Brewer's did not receive ineffective assistance of counsel when his counsel did not challenge the chain of custody or other stipulated facts

Brewer complains that his counsel was ineffective for agreeing to stipulate to the chain of custody of the drugs tested at the lab. [DN 141]. Counsel also stipulated that the firearm had traveled in interstate commerce. [DN 140]. The stipulation included specific language clarifying that Brewer did not admit to possession. A review of the complete trial shows that Brewer's counsel employed a strategy of contesting that Brewer had any connection to or knowledge of the contraband

hidden inside each vehicle. Challenging, for example, the chain of custody or identity of the cocaine, would not have advanced a defense strategy based on attacking the element of knowing possession.

The Sixth Circuit recognizes that "factual stipulations to elements of a crime are often the product of a sound trial strategy." *United States v. Monghan,* 409 Fed.Appx. 872, 877-78 (6th Cir. 2011).

Defense counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. A decision not to investigate a particular issue or piece of evidence must be reviewed with deference to counsel's judgments and considering all the circumstances. *Stojetz v. Ishee*, 892 F.3d 175, 197 (6th Cir. 2018). Even if counsel's decision not to investigate is "professionally unreasonable," the actions must prejudice the defense to amount to ineffective assistance of counsel. *Id.*

Failure of counsel to perform an independent investigation into certain witnesses and evidence and relying on discovery provided by the government doesn't necessarily surmount the high burden of showing deficient performance. *See Moss v. Hofbauer*, 286 F.3d 851, 857 (6th Cir. 2002). In *Moss*, defense counsel admitted that she "did not hire an investigator, interview any witness prior to trial, or attempt to locate other people who might have observed what occurred. Instead,

she limited her actions to consulting with [co-defendants'] attorneys[,] . . . visiting the scene of the crime, and reviewing the evidence that the state provided her." In addition, defendant claimed ineffective assistance of counsel on the basis that defense counsel did not make an opening statement, did not make any objections, and did not cross examine two key witnesses. The court found that none of defendant's claims constituted ineffective assistance of counsel. While the court found that defense counsel's decision not to cross examine a certain witness was an "unreasonable" strategic decision, the defendant could not show that this prejudiced him. The court also found that, as a whole, defense counsel's performance did not fail to submit the government's case to meaningful adversarial testing.

Brewer cannot show that counsel's stipulations amounted to deficient performance nor can he show how challenging this evidence would have been productive, much less how it would have materially affected the outcome.

E. Brewer cannot re-litigate his suppression motion or his arguments about vindictive or selective prosecution

iii.    Brewer's Fourth Amendment claims concerning the traffic stops were previously litigated.

In this case, the Sixth Circuit already addressed and rejected Brewer's suppression claims in Brewer's direct appeal. See United States v. Brewer, 858 Fed. App'x. 888, 889-91 (Mem) (6th Cir. 2021).

These issues have already been resolved, and Brewer cannot relitigate them in his 2255 motion.

iv.   Brewer cannot relitigate his claims about the government's alleged vindictive or selective prosecution.

All of Brewer's claims selective and vindictive prosecution and argument were previously discussed and rejected in the district court's order denying Brewer's motion for new trial. *See* DN 229, Opinion and Order Denying Motions.

Since he did not bring up these issues upon direct appeal, Brewer's claims are waived. See *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Matsa*, No. 2:09-CR-297, 2017 WL 4469120, at * (S.D. Ohio Oct. 6, 2017).

F. None of Brewer's other miscellaneous allegations can establish ineffective assistance of counsel as they are unsupported and contrary to the evidence in the record

Brewer's remaining "Hail Mary" arguments cannot justify vacating his conviction or sentence. He makes a number of claims, undeveloped and unsupported by any evidence, that the Court need not develop for him. He claims one attorney was on high on drugs, he claims another attorney was appointed by the Court in order to "sabotage" him. He claims he was somehow prevented from testifying on his own behalf. The record in this case is absolutely devoid of evidence supporting any of these claims. To the contrary, a review of the entire District Court record in this case shows aggressive and strategic motion practice, aggressive advocacy at trial, and repeated efforts at advancing the very arguments that seem to form the core of Mr. Brewer's own beliefs about his case and reality. A plenary review of the record, the motions, and the transcripts, make clear two things. First, that Mr. Brewer had a fundamentally fair trial and benefitted from the talents and efforts of a succession of diligent attorneys. Second, that no attorney and no degree of

aggressive (and skilled) advocacy is good enough to satisfy Cherosco Brewer, and he knows better than every single person who has argued on his behalf. This, however, is not the standard. Under the *Strickland* standard, Brewer fails.

<u>Evidentiary Hearing</u>

An evidentiary hearing is not necessary when a § 2255 petition is inadequate on its face, or although facially adequate, is conclusively refuted by the files and records of the case.  § 2255(b); *Green v. United States*, 65 F.3d 546, 548 (6th Cir. 1995); *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003) (hold hearing only to resolve factual disputes).  "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted."  *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993); *see also Myatt v. United States*, 875 F.2d 8, 11 (1st Cir. 1989) (§ 2255 petitioner required to demonstrate, by preponderance of evidence, both entitlement to § 2255 relief and to evidentiary hearing).

 For the reasons discussed, Brewer's assertions are either inadequate on their face (due to waiver or because he is barred from relitigating them) or refuted by the facts of the case. He presents no evidence to support his assertions of any alleged factual dispute. The court should deny his request for an evidentiary hearing.

<u>CONCLUSION</u>

For the foregoing reasons, Brewer's 2255 motion should be denied.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

/s/ *Erin G. McKenzie*
Assistant United States Attorney
Western District of Kentucky
717 West Broadway
Louisville, Kentucky 40202
(502) 625-7061

CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system and mailed a hard copy to the following *pro se* defendant:

Cherosco Brewer #18898-033
FCI Gilmer
P.O. Box 6000
Gilmer, WV 26351

 s/ *Erin G. McKenzie*
Erin G. McKenzie
Assistant United States Attorney